R. Craig Clark (SBN 129219)
cclark@celg.org
Alicja A. Urtnowski (SBN 321215)
aurtnowski@celg.org
**CONSUMER AND EMPLOYMENT LAWYERS**
3258 Fourth Avenue
San Diego, CA 92103
Telephone: (619) 239-1321
Facsimile: (888) 273-4554

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MOHAMED NABIL AMIN, DAWIT NEGUSSE, and ELVISSA VILLARIN as individuals, on behalf of themselves, and all persons similarly situated,

Plaintiffs,

v.

G2 SECURE STAFF, L.L.C., a Texas Limited Liability Company, MENZIES AVIATION (USA) INC., a Delaware Corporation, AIR MENZIES INTERNATIONAL (USA) INC., a Delaware Corporation; and DOES 1 to 10 inclusive,

Defendants.

CASE NO.: 3:25-cv-02019-AJB-BLM

**CLASS & REPRESENTATIVE ACTION**

**FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, RESTITUTION AND INJUNCTIVE RELIEF:**

**(1) FAILURE TO TIMELY PAY MINIMUM WAGES AND OVERTIME/ DOUBLE TIME COMPENSATION (Labor Code §§ 204, 206, 210, 212, 216, 221, 225.5, 510, 558, 1174d, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, and 1199);**

**(2) FAILURE TO PROVIDE LEGALLY COMPLIANT MEAL PERIODS OR COMPENSATION IN LIEU THEREOF (Labor Code §§ 204, 226.7 and 512);**

**(3) FAILURE TO PROVIDE LEGALLY COMPLIANT REST PERIODS OR COMPENSATION IN LIEU THEREOF (Labor Code §§ 204, 226.7 and 512);**

**(4) FAILURE TO PAY ALL WAGES OWED UPON SEPARATION**

**(Labor Code §§ 201, 202, 203, 210, 213, 227.3, 256);**

**(5) FAILURE TO PROVIDE PAID SICK LEAVE AND WRITTEN NOTICE OF THE AMOUNT OF SICK LEAVE AVAILABLE (Labor Code § 246);**

**(6) FAILURE TO FURNISH ACCURATE ITEMIZED WAGE STATEMENTS (Labor Code §§ 226 and 226.3);**

**(7) FAILURE TO MAINTAIN ACCURATE RECORDS (Labor Code §§ 226(a) and 1174);**

**(8) FAILURE TO PROVIDE COPIES OF SIGNED DOCUMENTS (Labor Code §432);**

**(9) FAILURE TO REIMBURSE FOR NECESSARY WORK EXPENSES (Labor Code §§ 2800, 2802 and 2804);**

**(10) VIOLATION OF THE UNFAIR COMPETITION LAW (Bus. & Prof. Code §§ 17200 *et seq*.);**

**(11) PRIVATE ATTORNEYS GENERAL ACT OF 2004 (Labor Code §§ 2698 *et seq*.);**

**DEMAND FOR JURY TRIAL**

Plaintiffs Mohamed Nabil Amin, Dawit Negusse, and Elvissa Villarin ("Plaintiffs") bring this civil action on behalf of themselves and all persons similarly situated, against G2 SECURE STAFF L.L.C., MENZIES AVIATION (USA) INC., AIR MENZIES INTERNATIONAL (USA) INC., and Does 1 through 10 (collectively "Defendants"), on the following grounds:

## INTRODUCTION

1. Plaintiffs bring this civil action on behalf of themselves and all other current or former non-exempt employees who were employed by Defendants in the state of California during the relevant time period ("non-exempt employees").

2. In addition, Plaintiff Amin and Villarin bring this case on behalf of themselves and all individuals currently or formerly employed by Defendants in the state of California, who had or have any job title and position which was misclassified as exempt by Defendants ("misclassified employees"). In about 2024, Defendants misclassified Plaintiff Amin as "exempt" in order to avoid requirements imposed by the Labor Code. Similarly, in about 2023, Defendants misclassified Plaintiff Villarin as "exempt" in order to avoid requirements imposed by the Labor Code. Plaintiff Amin and Villarin worked well in excess of 40 hours per week, and routinely worked through meal and rest breaks in the course of business. While misclassified as an exempt employee, Plaintiff Amin and Villarin had no authority to hire or fire employees, and were required to perform non-exempt job duties lacking managerial or discretionary character. Plaintiff Amin and Villarin's independent judgment was restricted. Their role and authority were limited to that of a team member, as opposed to leadership of other team members. Plaintiffs are informed and believe the wage/hour violations described herein occurred to other misclassified employees in California. In summary, Defendant's misclassification policies and/or practices resulted in a failure to compensate Mr. Amin and Ms. Villarin and other class members for hours worked.

3. Collectively, all non-exempt employees and misclassified employees are referred to herein as "Employees."

4. Plaintiffs, on behalf of themselves and other Employees, seek damages, civil penalties, injunctive relief and restitution, as well as reasonable attorneys' fees and litigation costs, as provided under California law.

5. All allegations in this Complaint are based upon information and belief, except those allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge. Each allegation in this Complaint has either evidentiary support or is likely to have evidentiary support after a reasonable opportunity to conduct further investigation and discovery.

## JURISDICTION AND VENUE

6. Pursuant to California Code of Civil Procedure § 410.10., pursuant to Code of Civil Procedure § 382 and California Business and Professions Code § 17203, Plaintiffs bring this action on behalf of themselves, and on behalf of all persons similarly situated, as defined herein.

7. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, codified at 28 U.S.C. § 1332(d).

8. Venue as to Defendants is proper in this jurisdictional district, pursuant to 28 U.S.C. § 1391. Defendants transact business through a number of locations throughout the county of San Diego and the state of California. The unlawful acts alleged herein have a direct effect on Plaintiffs and those similarly situated within the county of San Diego and the state of California.

9. This Court has personal jurisdiction over Defendants because each defendant conducts business in the state of California and has caused injuries in and around San Diego County, as well as throughout the state of California, by and through their acts, omissions and violations of the California Labor Code and Business and Professions Code, as alleged herein.

10. Pursuant to Rule 3.400 of the California Rules of Court, this case shall be deemed a complex action because it is filed as a class action and involves specialized case management, extensive discovery and evidence, difficult or novel issues of law and fact and is likely to require extensive post judgment supervision.

## THE PARTIES

## I. PLAINTIFFS

11. Plaintiff Mohamed Nabil Amin at all material times mentioned herein:

a. Was and is a resident of the County of San Diego;

b. Was employed by Defendants and assigned to work at multiple worksites in California from approximately June 2016 to September 2024;

c. Was assigned to work at various locations including at the  San Diego, California airport, among other locations.

d. Was compensated on an hourly basis;

e. Was not compensated for all hours worked;

f. Regularly worked more than eight hours per day;

g. Was subject to Defendants' policy and practice of editing and rounding his timekeeping records so that he did not receive compensation he was entitled to;

h. Was not compensated the appropriate overtime and/or double time rate for hours worked beyond eight hours per day and 40 hours per week;

i. Was not timely paid minimum wage and overtime compensation;

j. Was not provided with legally compliant meal periods or compensation in lieu thereof;

k. Was not provided with legally compliant rest periods or compensation in lieu thereof;

l. Was not provided an opportunity to document or report non-compliant meal and rest periods;

m. Was required to remain readily available to perform work for Defendants during meal and rest periods;

n. Was not provided with adequate paid sick leave or written notice of the amount of paid sick leave available, as required by California law;

o. Was not provided with accurate and itemized wage statements;

p. Believes his employee records were not accurately maintained by Defendants;

q. Was not reimbursed for necessary work expenses;

r. Was subject to Defendants' unlawful, unfair and fraudulent business practices;

s. Is a member of the Class and Subclasses described below;

t. Is an "aggrieved employee" as defined by Labor Code § 2699(c); and

u. Complied with the requirements outlined in Labor Code §§ 2698 *et seq*.

12. Plaintiff Dawit Negusse at all material times mentioned herein:

a. Was and is a resident of the County of San Diego;

b. Was employed by Defendants as a non-exempt hourly employee and assigned to work at multiple worksites in California since approximately October 2023;

c. Was assigned to work at various locations, including at the San Diego, California airport, among other locations;

d. Was compensated on an hourly basis;

e. Was not compensated for all hours worked;

f. Regularly worked more than eight hours per day;

g. Was subject to Defendants' policy and practice of editing and rounding his timekeeping records so that he did not receive compensation he was entitled to;

h. Was not compensated the appropriate overtime and/or double time rate for hours worked beyond eight hours per day and 40 hours per week;

i. Was not timely paid minimum wage and overtime compensation;

j. Was not provided with legally compliant meal periods or compensation in lieu thereof;

k. Was not provided with legally compliant rest periods or compensation in lieu thereof;

l. Was not provided an opportunity to document or report non-compliant meal and rest periods;

m. Was required to remain readily available to perform work for Defendants during meal and rest periods;

n. Was not provided with adequate paid sick leave or written notice of the amount of paid sick leave available, as required by California law;

o. Was not provided with accurate and itemized wage statements;

p. Believes his employee records were not accurately maintained by Defendants;

q. Was not reimbursed for necessary work expenses;

r. Was subject to Defendants' unlawful, unfair and fraudulent business practices;

s. Is a member of the Class and Subclasses described below;

t. Is an "aggrieved employee" as defined by Labor Code § 2699(c); and

u. Complied with the requirements outlined in Labor Code §§ 2698 *et seq*.

13. Plaintiff Elvissa Villarin at all material times mentioned herein:

a. Was and is a resident of the County of San Diego;

b. Has been employed by Defendants and assigned to work at the San Diego, California, airport location from approximately March 2017 to current;

c. Was assigned to work at various locations including at the San Diego, California airport, among other locations.

d. Was compensated on an hourly basis;

e. Was not compensated for all hours worked;

f. Regularly worked more than eight hours per day;

g. Was subject to Defendants' policy and practice of editing and rounding his timekeeping records so that he did not receive compensation he was entitled to;

h. Was not compensated the appropriate overtime and/or double time rate for hours worked beyond eight hours per day and 40 hours per week;

i. Was not timely paid minimum wage and overtime compensation;

j. Was not provided with legally compliant meal periods or compensation in lieu thereof;

k. Was not provided with legally compliant rest periods or compensation in lieu thereof;

l. Was not provided an opportunity to document or report non-compliant meal and rest periods;

m. Was required to remain readily available to perform work for Defendants during meal and rest periods;

n. Was not provided with adequate paid sick leave or written notice of the amount of paid sick leave available, as required by California law;

o. Was not provided with accurate and itemized wage statements;

p. Believes her employee records were not accurately maintained by Defendants;

q. Was not reimbursed for necessary work expenses;

r. Was subject to Defendants' unlawful, unfair and fraudulent business practices;

s. Is a member of the Class and Subclasses described below;

t. Is an "aggrieved employee" as defined by Labor Code § 2699(c); and

u. Complied with the requirements outlined in Labor Code §§ 2698 *et seq*.

## II. DEFENDANTS

14. Defendant G2 Secure Staff, LLC is a Texas limited liability company that does business in California. Specifically, it is in the business of airport customer services, including passenger assistance and wheelchair services, bag porter services, skycap services, security services, checkpoint customer service agents, unaccompanied minor escort services, janitorial services, cabin-cleaning, and utility services. See https://www.g2securestaff.com/

15. Defendant Menzies Aviation (USA) Inc. is a Delaware Corporation that does business globally. Specifically, it is in the business of ground services, fueling, cargo, executive services, and offline services. See https://menziesaviation.com

16. Defendant Air Menzies International (USA) Inc. is a Delaware Corporation that does business globally. Specifically, it is in the business of ground services, fueling, cargo, executive services, and offline services. See https://menziesaviation.com

17. Menzies Aviation (USA) Inc. and Air Menzies International (USA) Inc. are together referred to as "Menzies."

18. On or about August 26, 2025, Menzies acquired G2 Secure Staff, LLC. G2's operations transitioned immediately under the Menzies Aviation brand, adopting Menzies' global standards. Menzies, "the leading service partner to the world's airports and airlines, has completed its acquisition of G2 Secure Staff, an aviation service partner of choice for major airlines across the United States." "The $305m deal strengthens Menzies position as the world's largest aviation services provider, operating at 350 airports in 65 countries, powered by a team of 65,000 highly trained people. The deal is expected to boost Menzies' Group revenue by 20% to more than $3.1 billion, based on FY2024 figures." "The acquisition positions Menzies as the leading player by airports served in the U.S. – the world's largest and most dynamic market." "G2's operations will be rebranded as Menzies Aviation. Integration will begin immediately, deploying Menzies' global standards for training, safety, sustainability and technology across all new operations to ensure a seamless transition for employees, customers and partners". See https://menziesaviation.com/news/menzies aviation-doubles-u-s-footprint-with-completion-of-305m-acquisition-of-g2/. Article posted on the Menzies website on the 26th of August 2025.

19. On or about August 26, 2025, Menzies sent a Welcome Letter to all current G2 Staff Employees, informing them of their acquisition of G2 Secure Staff, LLC. Menzies further released an Employee Welcome Book and "Acquisition Q&A for Menzies & G2 employees" informing them that along with the acquisition and

integration, they are now employees of Menzies, including their "transition to Menzies uniforms."

20. Collectively, G2 Secure Staff, LLC, Menzies Aviation (USA) Inc., and Air Menzies International (USA) Inc. are referred to herein as "Defendants."

21. The true names and capacities, whether individual, corporate, subsidiary, partnership, associate, or otherwise of Does 1 through 10, are unknown to Plaintiffs, who therefore sue these defendants by such fictitious names pursuant to Code of Civil Procedure § 474. Plaintiffs will amend their complaint to allege the true names and capacities of Does 1 through 10 when they are ascertained.

22. At all times relevant to this complaint, acts alleged to have been done by Defendants are also alleged to have been done by the unascertained defendants mentioned above, and by each of their agents and employees who acted within the scope of their agency and/or employment.

23. At all times mentioned herein, each defendant acted as an agent, servant, employee, co-conspirator, alter-ego and/or joint venture of the other defendants, and in doing the things alleged herein acted within the course and scope of such agency, employment, alter-ego and/or in furtherance of the joint venture.

24. At all times mentioned herein, the acts and omissions of each of the defendants concurrently contributed to the various acts and omissions of each and every one of the other Defendants in proximately causing the wrongful conduct, harm, and damages alleged herein. Each of the Defendants approved of, condoned, or otherwise ratified each and every one of the acts or omissions complained of herein. Each defendant and Doe defendant were and are acting with the authority of each and every other defendant and are acting as agents of each and every other defendant or Doe defendant.

25. Because investigation is ongoing, Plaintiffs reserve their right to assert any and all related facts, claims and/or theories discovered after the sending of this correspondence on behalf of themselves and the current or former Employees that they seek to represent against Defendants and/or other persons that may be discovered after the sending of this correspondence. Such other persons include, but are not limited to, those persons who have acted as an agent, subsidiary, servant, employee, co-conspirator, alter-ego, and/or joint venture of Defendants as well as those persons who caused and/or concurrently contributed to the various acts and/or omissions of each and every one of the others, including Defendants in proximately causing the wrongful conduct, harm, and/or damages alleged herein or otherwise participated in and/or ratified any or all of the acts or omissions complained of herein, and those who are acting within the authority and scope of Defendants. *Atempa v. Pedrazzani,* 27 Cal.App.5th at 811-813

## FACTUAL ALLEGATIONS

26. Plaintiffs reallege and incorporate by this reference, as though fully set forth herein, all paragraphs of this Complaint.

27. Plaintiffs allege, based on information and belief, that all employees employed by Defendants in California are subject to the same and/or similar policies, practices, procedures, guidelines, and/or culture set forth herein.

28. Plaintiffs also allege that they and other current or former employees in California have suffered, and will continue to suffer, the same and/or similar violations of law described herein.

29. Plaintiffs were employed by Defendants. Throughout their employment Plaintiffs were assigned to work at multiple locations in the State of California.

30. Plaintiffs are informed and believe, and allege thereon, that Defendants employ a number of individuals who work at various worksites in the state of California.

31. During the relevant time period, Defendants routinely required employees to work more than eight (8) hours per day and/or forty (40) hours per week.

32. Plaintiffs allege that as a matter of policy and practice, Defendants do not properly compensate employees for all hours worked. Plaintiffs contend that Defendants required them to perform work on behalf of Defendants without compensation.

33. As a policy, practice, guideline, procedure, and/or culture, Defendants requires their Employees to clock in and out of their job using a finger scan device on the wall. However, the device often did not work, and Employees were required to use handwritten timesheets.

34. Employees, including Plaintiffs, were often required to work off the clock. For example, Plaintiffs assert that Defendants often required them and other Employees to clock out and continue working, depriving them proper wages for all hours worked, including overtime. For example, Employees are often forced to work off the clock because of flight delays and being understaffed. Often, Employees were required to wait for delayed flights and/or assist passengers at the airport, while being off the clock. As such, Plaintiffs and other Employees did not receive the minimum, overtime, and/or double-time compensation they are entitled to. Defendants regularly shave and/or shorten Employees' hours worked and does not compensate their employees for all time worked as required by California law.

35. In addition, Employees, including Plaintiffs, were regularly required to respond to calls and messages from their supervisors and/or managers outside of work hours without compensation for the time spent responding to calls and/or messages.

36. Employees are also required to complete various mandatory trainings and/or attend safety meetings while off the clock, without compensation.

37. Plaintiffs contend that as a policy, practice, guideline, procedure, and/or culture, Defendants regularly require Employees to work more than 8 hours per day

and/or 40 hours per week, without being paid the appropriate overtime and/or double time compensation. Because Defendants failed to appropriately pay overtime and/or double-time compensation to Employees who worked more than 8 hours per day and/or 40 hours per week, Defendants did not pay their employees in accordance with California law.

38. Moreover, Plaintiffs assert that Defendants have a policy, practice, guideline, procedure, and/or culture of automatically deducting a thirty-minute meal period from the hours worked by their Employees regardless of whether they were actually provided with an opportunity to take a thirty-minute meal period free from all work activities. Defendants thus regularly engage in work-related activities during the time that Defendants automatically deduct from their time worked.

39. Additionally, Plaintiffs allege that Defendants fails to timely pay all earned wages. For instance, the paychecks Plaintiffs and other Employees receive from Defendants do not include compensation for all hours worked and are often late, as described herein. Plaintiffs assert that despite notifying Defendants of the error, Defendants did not promptly remedy the issues by paying all wages earned and due.

40. Based on the foregoing, Plaintiffs assert that Defendants engaged in conduct that violated California law by failing to compensate them and other Employees appropriately.

41. As a policy, practice, guideline, procedure, and/or culture, Defendants regularly require their employees to work more than 5 hours per workday. However, despite regularly working more than 5 hours per workday, Employees, such as Plaintiffs, were not provided with the reasonable opportunity to take meal periods that occurred before the 5th hour of work and/or that were free from all work and work-related responsibilities during the entirety of the 30-minute meal period.

42. Additionally, even though Defendants often worked more than 10 hours in

a day, Defendants failed to provide them with a second meal period of at least thirty minutes.

43. Plaintiffs assert that the demanding work schedule assigned to Employees did not allow time for legally compliant meal periods. Moreover, Plaintiffs allege that as a policy, practice, guideline, procedure, and/or culture Defendants do not schedule any meal periods for their employees.

44. Plaintiffs assert Defendants failed to provide any relief for Employees to be able to take legally compliant breaks. In fact, Plaintiffs assert that their supervisors often instructed them and other Employees not to take breaks and/or work through meal breaks, and often yelled at Employees for taking breaks.

45. Plaintiffs contend that this is due in part to Defendant's requirement that their employees be readily available to perform their work duties during meal periods, including assisting passengers and/or customers at the airport, monitoring arrivals and departures, waiting by the gates, and transferring around the airport with a wheelchair, among other duties.

46. Plaintiffs contend that Defendants have a policy, practice, guideline, procedure, and/or culture of automatically deducting 30 minutes for a meal period regardless of whether Employees were provided with the opportunity to take a legally compliant meal period. As such, Defendants often adjusted their Employees' timesheets to reflect meal breaks, even though a compliant meal break was not taken.

47. Plaintiffs, therefore, contend that Defendants have a policy, practice, guideline, procedure, and/or culture that requires Employees to engage in their job duties for the entire duration of their work shift. As a result, Employees are not provided with legally compliant meal periods.

48. Plaintiffs also contend that Defendants require Employees to carry a personal cell phone, a radio, and/or a tablet for the entire duration of their work shift,

including during meal periods. Employees were also expected to be readily available to perform work on behalf of Defendants during meal periods, such as by responding to calls and/or messages from supervisors and/or co-workers, and monitoring flight arrivals, departures, and gates. As a result, Employees were not provided with meal periods that were free from work or interruption.

49. Overall, Employees were not provided with the opportunity to take meal periods that were free from work-related responsibilities. By imposing unbearable work schedules onto their non-exempt employees, Defendants compelled, encouraged, and/or otherwise directed their non-exempt employees to work through their meal periods.

50. Plaintiffs further contend that Defendants do not have a procedure for Employees to document non-compliant meal periods. As a result, Defendants do not compensate Employees for non-compliant meal periods.

51. In addition, Plaintiffs allege that Defendants failed to provide Plaintiffs and other Employees with suitable seating. Labor Code Section 1198, Wage Order No. 4, Section 14. Plaintiffs allege Defendants regularly did not provide Employees with any break rooms, nor a place to sit throughout the entire duration of their shifts. Defendants further did not allow Employees to sit when it did not interfere with the performance of their duties, including during breaks.

52. Based on the foregoing, Plaintiffs contend Defendants have failed to comply with their meal period obligations under California law by not providing Employees with legally compliant meal periods or compensation in lieu thereof.

53. Plaintiffs and other Employees employed by Defendants typically work more than 4 hours per workday. However, Plaintiffs allege that as a policy, practice, guideline, procedure, and/or culture, Defendants regularly fail to authorize and permit Employees to take off-duty rest periods for every four hours worked, or a major fraction thereof, in violation of California law. Plaintiffs contend they and other Employees were

denied legal rest periods largely due to Defendant's requirement that Employees are to be readily available to perform their work duties at all times, as described above. In addition, Plaintiffs allege that Defendants fail to schedule enough Employees so that Plaintiffs and other Employees could be relieved from their duties to take their meal and rest periods.

54. Plaintiffs further assert that Defendants do not have a policy, practice, guideline, procedure, and/or culture for Employees to record non-compliant rest periods and fail to compensate Employees the required rest period premium for non-compliant rest periods. Defendants' conduct thus constitutes a violation of California law.

55. Plaintiffs contend that Defendants have a policy, practice, guideline, and/or culture of not timely paying all wages owed upon discharge nor paying the required waiting time penalties. For instance, as discussed herein, Defendants failed to compensate Employees for all hours worked, failed to pay the appropriate overtime wages to Employees for hours worked in excess of eight per day and/or forty per week, and failed to pay the required meal and/or rest period premiums to Employees for non-compliant meal and/or rest periods.

56. Plaintiffs, therefore, contended that Defendants failed to pay all wages owed to former Employees who separated from Defendants within the statutory period in violation of California law.

57. Plaintiffs allege that Defendants have a policy, practice, guideline, procedure, and/or culture of failing to provide Employees with one hour of paid sick leave for every 30 hours worked in accordance with California law.

58. Plaintiffs further allege that Defendants also failed to provide Employees with paid sick days since they were unable to accrue any such paid sick days at the rate provided by law as a result of Defendants' failure to account for all time worked.

59. Plaintiffs also contend that Defendants have a policy, practice, procedure,

guideline, and/or culture of failing to provide written notice to Employees of their available sick leave, as such amounts are not included on the wage statements, nor are they provided with the information in separate writing on the designated pay date along with their wages. Accordingly, Defendants have failed to comply with California law.

60. Defendants failed to comply with Labor Code § 226 because they failed to provide Plaintiffs and other current or former Employees with legally compliant wage statements. Plaintiffs contend that Defendants failed to provide wage statements that accurately reflect the gross wages and/or net wages earned due to Defendants failure to compensate Employees for all time worked, failure to pay the appropriate overtime compensation to Employees for hours worked beyond eight hours per day and/or forty hours per week, and failure to pay premium wages to Employees for non-compliant meal and/or rest periods, as discussed herein.

61. Defendants also failed to provide wage statements that properly include the pay period information for each wage statement, the accurate rate of pay, the required available sick time, and/or the name of the legal entity that employed the Employees in violation of California law.

62. During the statutory period, Defendants thus failed to comply with the requirements outlined by California law by failing to provide legally compliant wage statements to all current or former Employees.

63. As discussed herein, Defendants have a policy, practice, guideline, procedure, and/or culture of failing to maintain accurate employee information and payroll records which accurately reflect, for example, the gross and net wages earned as well as the total hours of time worked each day by Plaintiffs and other Employees.

64. Additionally, Plaintiffs are informed and believe that Defendants fail to maintain a copy of all documents related to the hiring and/or employment of Employees, and/or fails to provide Employees with the opportunity to inspect or copy

such documents upon request in violation of California law.

65. In fact, Plaintiffs submitted a written request for a copy of their personnel files, but Defendant failed to produce the records. Instead, counsel for Defendant G2 Secure Staff responded that "G2 has not been able to locate Plaintiffs' personnel files."

66. Therefore, Plaintiffs contend that Defendants failed to comply with Labor Code §§ 226 and 1174.

67. As stated herein, Plaintiffs assert, based on information and belief, that Defendants failed to maintain a copy of all documents signed by Employees that relate to their hiring by and/or employment with Defendants, and/or failed to provide a copy of such documents to Employees who requested a copy thereof in violation of Labor Code § 432. Therefore, Plaintiffs allege that Defendants have failed to comply with California law.

68. Plaintiffs assert that as a policy, practice, guideline, and/or procedure, Defendants require Employees to wear a uniform affixed with Defendants' company logo as a condition of their employment. However, Defendants have only provided a shirt and have not provided any jacket despite the cold weather. In addition, Defendants required Plaintiffs and other Employees to wear black pants and black shoes. However, as a practice or procedure, Defendants neither provides Employees with black pants and black shoes, nor reimburses Employees for the cost of purchasing and/or maintaining the required uniform in violation of California law.

69. In addition, Employees, including Plaintiffs, are required to use their personal cell phones and/or laptops for work-related issues such as communicating with supervisors and/or co-workers and tracking flight details, such as arrivals, departures, and gate changes. However, Defendants fail to reimburse Employees for a percentage of cell phone bills nor the laptop.

70. In addition, Defendants failed to reimburse Plaintiffs and other Employees

for use of their personal vehicles and cleaning supplies.

71. Defendants have, therefore, failed to reimburse Plaintiffs and other Employees for necessary work expenses in violation of California law.

72. On April 09, 2025, December 01, 2025, and December 12, 2025, Plaintiffs Mohamed Nabil Amin, Dawit Negusse, and Elvissa Villarin submitted notices to the California Labor and Workforce Development Agency ("LWDA") and Defendants informing them of Defendants' alleged Labor Code violations pursuant to the Private Attorneys General Act of 2004 ("PAGA"). True and correct copies of all notices are attached hereto as **Exhibit 1**, **Exhibit 2**, and **Exhibit 3** and are incorporated herein by this reference.

73. To date the LWDA has not provided notice of whether it intends to investigate the alleged violations. Therefore, Plaintiffs have the right to pursue their claims under PAGA in a representative capacity pursuant to Labor Code §§ 2698 *et seq.*

74. Plaintiffs believe that additional violations may be discovered, and therefore reserve their right to allege any additional violations of the law as investigation and discovery warrants. In the event Plaintiffs discover additional violations throughout the discovery process, Plaintiffs will seek to amend this Complaint.

## CLASS DEFINITIONS

75. Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated, and therefore seek class certification under Code of Civil Procedure § 382.

76. Plaintiffs' proposed Class is defined as all current or former employees who were employed by Defendants in the state of California at any time during the period commencing on the date that is within four years prior to the filing of the initial Complaint through the present date (hereinafter the "Class Period") who suffered one or more of the violations alleged herein. To the extent that equitable tolling operates to toll

the claims by the classes against Defendants, the Class Period should be adjusted accordingly.

77. Plaintiffs will also seek to certify the following Subclasses:

a. Misclassification Subclass: All current or former employees employed by Defendants in the state of California who were misclassified as exempt;

b. Meal Period Subclass: All current or former employees employed by Defendants in the state of California who were not provided with the opportunity to take legally compliant meal periods or compensation in lieu thereof in violation of California law during the Class Period.

c. Rest Period Subclass: All current or former employees employed by Defendants in the state of California who were not authorized and permitted to take legally compliant rest periods or compensation in lieu thereof in violation of California law during the Class Period.

d. Unpaid Wages Subclass: All current or former employees employed by Defendants in the state of California who were not properly paid for all hours worked in violation of California law during the Class Period.

e. Waiting Time Penalties Subclass: All former employees employed by Defendants in the state of California who were not paid all wages due upon separation or termination of the employment relationship in violation of California law during the Class Period.

f. Paid Sick Leave Subclass: All current or former employees employed by Defendants in the state of California who were not provided with paid sick leave in violation of California law during the Class Period.

g. Wage Statement Subclass: All current or former employees

employed by Defendants in the state of California who were not provided with accurate and itemized wage statements in violation of California law during the Class Period.

h. Employment Records Subclass: All current or former employees employed by Defendants in the state of California whose information was not accurately recorded or maintained in violation of California law during the Class Period.

i. Reimbursement Subclass: All current or former employees employed by Defendants in the state of California who were not reimbursed for necessary work expenses in violation of California law during the Class Period.

j. Unfair Competition Subclass: All current or former employees employed by Defendants in the state of California who were subject to Defendants' unlawful, unfair, and fraudulent business practices in violation of California law during the Class Period.

78. Members of the Class and Subclasses are all "employees" as the term is used in the Labor Code and the IWC Wage Orders regulating wages, hours and working conditions in the state of California.

79. More precise definitions of the Class and Subclass may be determined after further investigation and discovery. Plaintiffs reserve their right to redefine them at any time prior to the Court's order on Plaintiffs' Motion for Class Certification as provided by law. (Cal. Rules of Court, rule 3.765(b).)

## CLASS ALLEGATIONS

80. Plaintiffs bring this action on behalf of themselves, and on behalf of all persons within the defined Class and Subclasses included herein.

81. This class action meets the statutory prerequisites for the maintenance of a class action, as set forth in Code of Civil Procedure § 382 and Civil Code § 1781:

a. The persons who comprise the Class and Subclasses are so numerous that the joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the Court;

b. Nearly all factual, legal, statutory, declaratory and injunctive relief issues that are raised in this Complaint are common to the Class and Subclasses and will apply uniformly to every member of the Class and/or Subclasses, and as a practical matter, will be dispositive of the interests of the other members not party to the adjudication;

c. The parties opposing the Class and Subclasses have acted or have refused to act on grounds generally applicable to the Class and Subclasses, thereby making final injunctive relief or declaratory relief appropriate with respect to the Class and Subclasses as a whole; and

d. Common questions of law and fact exist as to the members of the Class and Subclasses and predominate over any question affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

i. The interests of class members in individually controlling the prosecution or defense of separate actions;

ii. The extent and nature of any litigation concerning the controversy already commenced by or against members of the Class and Subclasses;

iii. The desirability or undesirability of concentrating the litigation

of the claims in this particular forum; and

iv. The likely difficulties in the managing of a class action.

82. The Court should permit this action to be maintained as a class action pursuant to Code of Civil Procedure § 382 and Civil Code § 1781 because:

a. Questions of law and fact common to the Class and Subclasses are substantially similar and predominate over any questions affecting only individual members;

b. A class action is superior to any other available method for the fair and efficient adjudication of class members' claims;

c. The members of the Class and Subclasses are so numerous that it is impractical to bring all class members before the Court;

d. Plaintiffs' claims are typical of the claims of the Class and Subclasses;

e. Class members will not be able to obtain effective and economic legal redress unless the action is maintained as a class action;

f. There is a community of interest in obtaining appropriate legal and equitable relief for the common law and statutory violations and other improprieties alleged, and in obtaining adequate compensation for the damages that Defendants' actions have inflicted upon the Class and Subclasses;

g. Plaintiffs can fairly and adequately protect the interests of the Class and Subclasses;

h. There is a community of interest in ensuring that the combined assets and available insurance of Defendants is sufficient to adequately compensate the class members for the injuries sustained; and

i. Defendants have acted or refused to act on grounds generally

applicable to the Class and Subclasses, thereby making final injunctive relief appropriate with respect to the Class and Subclasses as a whole.

**PAGA COLLECTIVE**

83. The proposed PAGA Collective consists of all current and former employees of Defendants in the state of California (collectively referred to herein as "Employees") during the period commencing on the date that is within one year and sixty-five days prior to the filing of the initial Complaint and through the present date (the "PAGA Period"). To the extent that equitable tolling operates to toll the claims by the PAGA Collective against Defendants, the PAGA Period should be adjusted accordingly.

84. Plaintiffs assert that all members of the PAGA Collective are "employees" as the term is used and defined in the Labor Code and the applicable Industrial Welfare Commission ("IWC") Wage Orders regulating wages and working conditions in the state of California.

85. A more precise definition of the PAGA Collective may be determined after further investigation and discovery. Plaintiffs reserve their right to redefine the PAGA Collective in accordance with California law.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**FIRST CAUSE OF ACTION**

**(By Plaintiffs Individually and on Behalf of the Class Against Defendants)**

**FAILURE TO TIMELY PAY MINIMUM AND OVERTIME /DOUBLE-TIME WAGES**

**[Labor Code §§ 204, 206, 210, 212, 216, 221, 225.5, 510, 1174d, 558, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198 and 1199 and IWC Wage Order No. 4-2001 and/or 9-2001]**

86. Plaintiffs reallege and incorporate by this reference, as though fully set forth herein, all paragraphs of this Complaint.

87. Labor Code § 204 establishes an employee's fundamental right in the state of California to be paid wages in a timely manner for their work.

88. Labor Code § 1197 requires employers to pay their employees the minimum wage as fixed by the commission and further states that payment of wages lower than the fixed minimum for all time worked is unlawful.

89. Labor Code § 1197.1 makes it unlawful for any employer or any other person acting either individually or as an officer, agent, or employee of another person, to pay an employee, or cause an employee to be paid less than the applicable minimum wage.

90. Similarly, under Labor Code § 558.1, "Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, §§ 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation." Subsection (b) further provides that "the term 'other person acting on behalf of an employer' is limited to a natural person who is an owner, director, officer, or managing agent of the

employer, and the term 'managing agent' has the same meaning as in subdivision (b) of § 3294 of the Civil Code."

91. Under Labor Code § 510 it is unlawful for an employer to employ persons for more than eight hours per day or 40 hours per week without compensating them at the rate of one and one-half or two times the employee's regular pay rate, depending on the number of hours worked. (*See also* IWC Wage Order No. 4-2001 and/or 9-2001, Subdiv. 3(A).)

92. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Labor Code § 510.

93. An employee may not waive his or her right to overtime compensation and any agreement by the employee to accept less than the statutorily required rate is unenforceable as a matter of law. (*Early v. Superior Court* (2000) 79 Cal.App.4th 1420, 1430.)

94. § 1194(a) of the Labor Code states:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

95. Plaintiffs contend that Defendants failed to pay them and other employees the required minimum wages and overtime/double time wages for all time worked.

96. During the relevant time period, Defendants had, and continue to have, a policy and practice of requiring employees to work more than eight hours per day and/or forty hours per week.

97. Plaintiffs assert that as a policy, practice, guideline, procedure, and/or culture Defendants does not properly compensate their Employees for all hours worked. Plaintiffs contend that Defendants required them and other Employees to perform work on behalf of Defendants without compensation.

98. As a policy, practice, guideline, procedure, and/or culture, Defendants require their Employees to clock in and out of their job using a finger scan device on the wall. However, the device often did not work and Employees were required to use handwritten timesheets.

99. Employees, including Plaintiffs, were often required to work off the clock. For example, Plaintiffs assert that Defendants often required them and other Employees to clock out and continue working, depriving them proper wages for all hours worked, including overtime. For example, Employees are often forced to work off the clock because of flight delays and being understaffed. Often, Employees were required to wait for delayed flights and/or assist passengers at the airport, while being off the clock. As such, Plaintiffs and other Employees did not receive the minimum, overtime, and/or double-time compensation they are entitled to. Defendants regularly shaves and/or shortens Employees' hours worked and does not compensate their employees for all time worked as required by California law.

100. In addition, Employees, including Plaintiffs, were regularly required to respond to calls and messages from their supervisors and/or managers outside of work hours without compensation for the time spent responding to calls and/or messages.

101. Employees are also required to complete various mandatory trainings and/or attend safety meetings while off the clock, without compensation.

102. Plaintiffs contend that as a policy, practice, guideline, procedure, and/or culture, Defendants regularly requires Employees to work more than 8 hours per day and/or 40 hours per week, without being paid the appropriate overtime and/or double

time compensation. Because Defendants failed to appropriately pay overtime and/or double-time compensation to Employees who worked more than 8 hours per day and/or 40 hours per week, Defendants did not pay their employees in accordance with California law.

103. Moreover, Plaintiffs assert that Defendants have a policy, practice, guideline, procedure, and/or culture of automatically deducting a thirty-minute meal period from the hours worked by their Employees regardless of whether they were actually provided with an opportunity to take a thirty-minute meal period free from all work activities. Defendants thus regularly engage in work-related activities during the time that Defendants automatically deduct from their time worked.

104. Additionally, Plaintiffs allege that Defendants fails to timely pay all earned wages. For instance, the paychecks Plaintiffs and other Employees receive from Defendants do not include compensation for all hours worked and are often late, as described herein. Plaintiffs assert that despite notifying Defendants of the error, Defendants did not promptly remedy the issues by paying all wages earned and due.

105. Based on the foregoing, Plaintiffs assert that Defendants engaged in conduct that violated California law by failing to compensate them and other Employees appropriately.

106. By virtue of Defendants' unlawful conduct explained herein, Plaintiffs and other employees have, and will continue, to suffer damages in amounts which are presently unknown, but which exceed the jurisdictional limits of this Court and which will be ascertained according to proof at trial.

107. Having received less than the legal minimum wage and applicable overtime compensation, Plaintiffs and other employees are entitled to, and seek to recover, all wages and penalties owed, including penalties available under Labor Code §§ 210, 558

and 558.1, as well as interest and reasonable attorneys' fees and costs pursuant to Labor Code §§ 218.5 and 1194 and Code of Civil Procedure § 1021.5.

108. Plaintiffs, on behalf of themselves and other members of the putative Class, request further relief as described in the prayer below.

**SECOND CAUSE OF ACTION**

**(By Plaintiffs Individually and on Behalf of the Class Against the Defendants)**

**FAILURE TO PROVIDE LEGALLY COMPLIANT MEAL PERIODS**

**[Labor Code §§ 204, 226.7, 512 and IWC Wage Order No. 4-2001 and/or 9-2001, Subdiv. 11]**

109. Plaintiffs reallege and incorporate by this reference, as though fully set forth herein, all paragraphs of this Complaint.

110. § 512(a) of the Labor Code provides:

> <u>An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes</u>, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. <u>An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes</u>, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived. (Emphasis added.)

111. Pursuant to Labor Code § 226.7(c):

> If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

112. In pertinent part, IWC Order No. 4-2001 and/or 9-2001, Subdiv. 11, states:

> (A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee.
>
> (B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.
>
> […]
>
> (D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

113. A meal period generally complies with California law if the employee has at least 30 minutes of uninterrupted time during which the employee is relieved of any and all duty and is free to leave the premises. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1036.) California law further prohibits employers from ". . . undermining [its] formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." (*Id*. at 1040.)

114. As a policy, practice, guideline, procedure, and/or culture, Defendants regularly require their employees to work more than 5 hours per workday. However, despite regularly working more than 5 hours per workday, Employees, such as Plaintiffs, were not provided with the reasonable opportunity to take meal periods that occurred before the 5th hour of work and/or that were free from all work and work-related responsibilities during the entirety of the 30-minute meal period.

115. Additionally, even though Employees often worked more than 10 hours in a day, Defendants failed to provide them with a second meal period of at least thirty minutes.

116. Plaintiffs assert that the demanding work schedule assigned to Employees did not allow time for legally compliant meal periods. Moreover, Plaintiffs allege that as a policy, practice, guideline, procedure, and/or culture Defendants do not schedule any meal periods for their employees.

117. Plaintiffs assert Defendants failed to provide any relief for Employees to be able to take legally compliant breaks. In fact, Plaintiffs assert that their supervisors often instructed them and other Employees not to take breaks and/or work through meal breaks, and often yelled at Employees for taking breaks.

118. Plaintiffs contend that this is due in part to Defendants' requirement that their employees be readily available to perform their work duties during meal periods, including assisting passengers and/or customers at the airport, monitoring arrivals and departures, waiting by the gates, and transferring around the airport with a wheelchair, among other duties.

119. Plaintiffs contend that Defendants have a policy, practice, guideline, procedure, and/or culture of automatically deducting 30 minutes for a meal period regardless of whether Employees were provided with the opportunity to take a legally compliant meal period. As such, Defendants often adjusted their Employees' timesheets to reflect meal breaks, even though a compliant meal break was not taken.

120. Plaintiffs, therefore, contend that Defendants have a policy, practice, guideline, procedure, and/or culture that requires Employees to engage in their job duties for the entire duration of their work shift. As a result, Employees are not provided with legally compliant meal periods.

121. Plaintiffs also contend that Defendants require Employees to carry a personal cell phone, a radio, and/or a tablet for the entire duration of their work shift, including during meal periods. Employees were also expected to be readily available to perform work on behalf of Defendants during meal periods, such as by responding to

calls and/or messages from supervisors and/or co-workers, and monitoring flight arrivals, departures, and gates. As a result, Employees were not provided with meal periods that were free from work or interruption.

122. Overall, Employees were not provided with the opportunity to take meal periods that were free from work-related responsibilities. By imposing unbearable work schedules onto their non-exempt employees, Defendants compelled, encouraged, and/or otherwise directed their non-exempt employees to work through their meal periods.

123. Plaintiffs further contend that Defendants do not have a procedure for Employees to document non-compliant meal periods. As a result, Defendants do not compensate Employees for non-compliant meal periods.

124. In addition, Plaintiffs allege that Defendants failed to provide Plaintiffs and other Employees with suitable seating. Labor Code Section 1198, Wage Order No. 4, Section 14. Plaintiffs allege Defendants regularly did not provide Employees with any break rooms, nor a place to sit throughout the entire duration of their shifts. Defendants further did not allow Employees to sit when it did not interfere with the performance of their duties, including during breaks.

125. Based on the foregoing, Plaintiffs contend Defendants have failed to comply with their meal period obligations under California law by not providing Employees with legally compliant meal periods or compensation in lieu thereof.

126. As a result of Defendants' unlawful conduct alleged herein, Plaintiffs and other employees have suffered, and will continue to suffer, damages in an amount which is presently unknown, but which exceeds the jurisdictional limits of this Court, and which will be ascertained according to proof at trial.

127. Pursuant to Labor Code § 226.7(c) and the relevant IWC Order No. 4-2001 and/or 9-2001, Subdiv. 11(D), Plaintiffs and other employees are entitled to, and seek, recovery of the full amount of unpaid premium wages for non-compliant meal periods.

128. Pursuant to Labor Code § 218.6, Plaintiffs and other employees are entitled and seek to recover prejudgment interest on the amount of premium wages owed.

129. Plaintiffs and other employees are entitled to and seek recovery of reasonable attorneys' fees as permitted by Labor Code § 218.5 and Code of Civil Procedure § 1021.5.

130. Plaintiffs, on behalf of themselves and other members of the putative Class, request further relief as described in the prayer below.

**THIRD CAUSE OF ACTION**

**(By Plaintiffs Individually and on Behalf of the Class Against Defendants)**

**FAILURE TO PROVIDE LEGALLY COMPLIANT REST PERIODS**

**[Labor Code §§ 204, 226.7, 512 and IWC Wage Order No. 4-2001 and/or 9-2001, Subdiv. 12]**

131. Plaintiffs reallege and incorporate by this reference, as though fully set forth herein, all paragraphs of this Complaint.

132. In pertinent part, Labor Code § 226.7 provides:

> (b) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and health.
>
> (c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for workday that the meal or rest or recovery period is not provided.

133. IWC Order No. 4-2001 and/or 9-2001, Subdiv. 12 states:

> (A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. <u>The authorized rest period</u>

> time shall be based on the total hours worked daily at the rate of ten (10) minutes of net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.
>
> (B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided. (Emphasis added.)

134. During rest periods, California law requires employers to relinquish all control over their employees and relieve their employees of all duties. (*Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 273.)

135. Plaintiffs and other Employees employed by Defendants typically work more than 4 hours per workday. However, Plaintiffs allege that as a policy, practice, guideline, procedure, and/or culture, Defendants regularly fail to authorize and permit Employees to take off-duty rest periods for every four hours worked, or a major fraction thereof, in violation of California law. Plaintiffs contend they and other Employees were denied legal rest periods largely due to Defendants' requirement that Employees are to be readily available to perform their work duties at all times, as described above. In addition, Plaintiffs allege that Defendants fails to schedule enough Employees so that Plaintiffs and other Employees could be relieved from their duties to take their meal and rest periods.

136. Plaintiffs further assert that Defendants do not have a policy, practice, guideline, procedure, and/or culture for Employees to record non-compliant rest periods and fails to compensate Employees the required rest period premium for non-compliant rest periods. Defendants' conduct thus constitutes a violation of California law.

137. In addition, Plaintiffs allege that Defendants failed to provide Plaintiffs and other Employees with suitable seating. Labor Code Section 1198, Wage Order No. 4, Section 14. Plaintiffs allege Defendants regularly did not provide Employees with any

break rooms, nor a place to sit throughout the entire duration of their shifts. Defendants further did not allow Employees to sit when it did not interfere with the performance of their duties, including during breaks.

138. According to Labor Code § 226.7(c) and IWC Order No. 4-2001 and/or 9-2001, Subdiv. 12(B), Plaintiffs and other employees are entitled to, and seek to, recover the full amount of unpaid premium wages for non-compliant rest periods.

139. Pursuant to Labor Code § 218.6, Plaintiffs and other employees are entitled to seek recovery of prejudgment interest on the amount of premium wages owed.

140. Plaintiffs and other employees are entitled to, and seek to, recover reasonable attorneys' fees and costs pursuant to Labor Code § 218.5 and Code of Civil Procedure § 1021.5.

141. Plaintiffs, on behalf of themselves and other members of the putative Class, request further relief as described in the prayer below.

**FOURTH CAUSE OF ACTION**

**(By Plaintiffs Individually and on Behalf of the Class Against Defendants)**

**FAILURE TO PAY ALL WAGES OWED UPON SEPARATION**

**[Labor Code §§ 201-203, 210, 213, 227.3, 256]**

142. Plaintiffs reallege and incorporate by this reference, as though fully set forth herein, all paragraphs of this Complaint.

143. Labor Code § 200(a) defines "wages" to include "all amounts for labor performed by employees...whether the amount is fixed or ascertained by the standard of time...commission basis, or other method of calculation." The term "labor" is further defined in subsection (b) to include "labor, work, or service whether rendered or performed under contract, subcontract, partnership...or other agreement if the labor...is performed personally by the person demanding payment."

144. Pursuant to Labor Code § 201(a), when an employer discharges an employee, all earned wages that remain unpaid at the time of discharge are due and payable to the employee immediately.

145. According to Labor Code § 202(a):

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive payment by mail if he or she so request and designates a mailing address. The date of mailing shall constitute the date of payment for purposes of the requirement to provide payment with 72 hours of the notice of quitting.

146. In pertinent part, Labor Code § 203(a) further provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with §§ 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action thereof is commenced; but the wages shall not continue for more than 30 days.

147. Plaintiffs contend that Defendants have a policy, practice, guideline, and/or culture of not timely paying all wages owed upon discharge nor paying the required waiting time penalties.

148. For instance, as discussed herein, Defendants failed to compensate Employees for all hours worked, failed to pay the appropriate overtime wages to Employees for hours worked in excess of eight per day and/or forty per week, and failed to pay the required meal and/or rest period premiums to Employees for non-compliant meal and/or rest periods.

149. Plaintiffs, therefore, contended that Defendants failed to pay all wages owed to former Employees who separated from Defendants within the statutory period

in violation of California law.

150. As a consequence of Defendants' willful and deliberate refusal to furnish such wages, affected employees are entitled to a maximum of 30 days' wages at their daily rate of pay as a waiting time penalty, pursuant to Labor Code § 203.

151. Plaintiffs and other employees are entitled to, and seek to, recover reasonable attorneys' fees and costs pursuant to Labor Code § 218.5 and Code of Civil Procedure § 1012.5.

152. Plaintiffs, on behalf of themselves and other members of the putative Class, request further relief as described in the prayer below.

**FIFTH CAUSE OF ACTION**

**(By Plaintiffs Individually and on Behalf of the Class Against Defendants)**

**FAILURE TO PROVIDE PAID SICK LEAVE AND WRITTEN NOTICE OF THE AMOUNT OF SICK LEAVE AVAILABLE**

**[Labor Code § 246]**

153. Plaintiffs reallege and incorporates by this reference, as though fully set forth herein, all paragraphs of this Complaint.

154. Under Labor Code § 246(b)(1), an employee shall accrue a minimum of one hour of paid sick leave for every 30 hours worked.

155. Labor Code § 246(b)(4) requires that an employer provide its employees with at least 24 hours or three days of paid sick leave per year.

156. Labor Code § 246(i) further requires an employer to provide employees with a written notice that sets forth the amount of paid sick leave available, or paid time off leave an employer provides in lieu of sick leave, on either the employee's itemized wage statement or in a separate writing provided on the designated pay date with the employee's payment of wages.

157. Plaintiffs allege that Defendants have a policy, practice, guideline, procedure, and/or culture of failing to provide Employees with one hour of paid sick leave for every 30 hours worked in accordance with California law.

158. Plaintiffs further allege that Defendants also failed to provide Employees with paid sick days since they were unable to accrue any such paid sick days at the rate provided by law as a result of Defendants' failure to account for all time worked.

159. Plaintiffs also contend that Defendants have a policy, practice, procedure, guideline, and/or culture of failing to provide written notice to Employees of their available sick leave, as such amounts are not included on the wage statements, nor are they provided with the information in separate writing on the designated pay date along with their wages. Accordingly, Defendants have failed to comply with California law.

160. Plaintiffs and other employees are entitled to, and seek, penalties under Labor Code § 246 and the recovery of reasonable attorneys' fees and costs pursuant to Labor Code § 218.5 and Code of Civil Procedure § 1021.5.

161. Plaintiffs, on behalf of themselves and other members of the putative Class, request further relief as described in the prayer below.

**SIXTH CAUSE OF ACTION**

**(By Plaintiffs Individually and on Behalf of the Class Against Defendants)**

**FAILURE TO FURNISH ACCURATE ITEMIZED WAGE STATEMENTS**

**[Labor Code §§ 226, 226.3 and IWC Wage Order No. 4-2001 and/or 9-2001]**

162. Plaintiffs reallege and incorporate by this reference, as though fully set forth herein, all paragraphs of this Complaint.

163. Labor Code § 226 states in pertinent part:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked

> by the employee… (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid… (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number…(8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during each period and the corresponding number of hours worked at each hourly rate by the employee…"

164. Labor Code § 226(e)(1) further provides:

> An employee suffering injury as a result of knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand ($4,000), and is entitled to an award of costs and reasonable attorneys' fees.

165. According to Labor Code § 226(h), "an employee may also bring an action for injunctive relief to ensure compliance with this section and is entitled to an award of costs and reasonable attorneys' fees."

166. An injury occurs where an employer fails to provide accurate information and the employee cannot "promptly and easily determine" the total number of hours worked or the "applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate." (Labor Code § 226(a)(9)-(e)(2)(B)(i).)

167. Labor Code § 226(e)(2)(c) explains that the phrase "promptly and easily determine" means that "a reasonable person would be able to readily ascertain the information without reference to documents or information."

168. Defendants failed to comply with Labor Code § 226 because they failed to provide Plaintiffs and other current or former Employees with legally compliant wage statements. Plaintiffs contend that Defendants failed to provide wage statements that accurately reflect the gross wages and/or net wages earned due to Defendants failure to compensate Employees for all time worked, failure to pay the appropriate overtime compensation to Employees for hours worked beyond eight hours per day and/or forty

hours per week, and failure to pay premium wages to Employees for non-compliant meal and/or rest periods, as discussed herein.

169. Defendants also failed to provide wage statements that properly include the pay period information for each wage statement, the accurate rate of pay, the required available sick time, and/or the name of the legal entity that employed the Employees in violation of California law.

170. During the statutory period, Defendants thus failed to comply with the requirements outlined by California law by failing to provide legally compliant wage statements to all current or former Employees.

171. According to Labor Code § 226(e)(1), Plaintiffs and other employees are entitled to seek, and do seek to recover, liquidated damages in the amount of $50 for the initial violation and $100 for each subsequent violation per employee, not to exceed $4,000.

172. Additionally, pursuant to Labor Code § 226(h), Plaintiffs and other employees are entitled to seek, and therefore do seek, injunctive relief in order to ensure Defendants' compliance with Labor Code § 226.

173. Plaintiffs and other employees are also entitled to, and seek recovery of, attorneys' fees and costs as provided under Labor Code §§ 218.5, 226(e)(1) and 226(h) and Code of Civil Procedure § 1021.5.

174. Plaintiffs, on behalf of themselves and other members of the putative Class, request further relief as described in the prayer below.

/ / /

/ / /

/ / /

/ / /

/ / /

**SEVENTH CAUSE OF ACTION**

**(By Plaintiffs Individually and on Behalf of the Class Against the Defendants)**

**FAILURE TO MAINTAIN ACCURATE RECORDS**

**[Labor Code § 226(a), 1174 and IWC Wage Order No. 4-2001 and/or 9-2001, Subdiv. 7]**

175. Plaintiffs reallege and incorporate by this reference, as though fully set forth herein, all paragraphs of this Complaint.

176. Pursuant to Labor Code § 226(a), an employer must keep a copy of each wage statement and record of deductions on file for at least three years.

177. § 1174(d) of the Labor Code provides:

> "[e]very person employing labor in this state shall keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by commission, but in case shall be kept on file for not less than three years. An employer shall not prohibit an employee from maintaining a personal record of hours worked, or, if paid on a piece-rate basis, piece-rate units earned." (See also IWC Wage Order 4-2001, Subdiv. 7.)

178. As discussed herein, Defendants have a policy, practice, guideline, procedure, and/or culture of failing to maintain accurate employee information and payroll records which accurately reflect, for example, the gross and net wages earned as well as the total hours of time worked each day by Plaintiffs and other Employees.

179. Additionally, Plaintiffs are informed and believe that Defendants fail to maintain a copy of all documents related to the hiring and/or employment of Employees, and/or fails to provide Employees with the opportunity to inspect or copy such documents upon request in violation of California law.

180. In fact, Plaintiffs requested in writing a copy of their employment records and personnel files. Defendant failed to produce the records. After several follow-ups with counsel for Defendant, counsel for Defendant G2 Secure Staff responded, "G2 has not been able to locate Plaintiffs' personnel files."

181. Therefore, Plaintiffs contend that Defendants failed to comply with Labor Code §§ 226 and 1174.

182. Plaintiffs and other employees have suffered, and continue to suffer, injuries and damages as a consequence of Defendants' deliberate failure to maintain accurate records in violation of California law. More specifically, as a result of Defendants' conduct, Plaintiffs and other employees were denied their legal right and protected interest in having accurate and complete payroll records available to them.

183. Plaintiffs and other employees are thus entitled to, and do seek, recovery of damages as outlined in Labor Code § 226 (e)(1).

184. As provided for in Labor Code §§ 218.5 and 226(e)(1) and Code of Civil Procedure § 1021.5, Plaintiffs and other employees are entitled to and seek to recover reasonable attorneys' fees and costs.

185. Plaintiffs, on behalf of themselves and other members of the putative Class, request further relief as described in the prayer below.

## EIGHTH CAUSE OF ACTION

**(By Plaintiffs Individually and on Behalf of the Class Against Defendants)**

**FAILURE TO PROVIDE COPIES OF SIGNED DOCUMENTS**

**[Labor Code § 432 and IWC Wage Order No. 4-2001, Subdiv. 7]**

186. Plaintiffs reallege and incorporate by this reference, as though fully set forth herein, all paragraphs of this Complaint.

187. Labor Code § 432 requires an employer to provide its employee, upon request, with copies of any and all documents signed by the employee relating to the obtaining or holding of employment. (See also IWC Wage Order NO. 4-2001, Subdiv. 7.)

188. As stated herein, Plaintiffs assert, based on information and belief, that Defendants failed to maintain a copy of all documents signed by Employees that relate to their hiring by and/or employment with Defendants, and/or failed to provide a copy of such documents to Employees who requested a copy thereof in violation of Labor Code § 432. Therefore, Plaintiffs allege that Defendants have failed to comply with California law.

189. In fact, Plaintiffs requested in writing a copy of their employment records and personnel files. Defendant failed to produce the records. After several follow-ups with counsel for Defendant G2 Secure Staff, counsel for Defendant responded, "G2 has not been able to locate Plaintiffs' personnel files."

190. Therefore, Plaintiffs allege that Defendants have failed to comply with California law.

191. Plaintiffs and other non-exempt employees are entitled to, and seek recovery of, reasonable attorneys' fees and costs as provided for under Labor Code § 218.5 and Code of Civil Procedure § 1021.5.

192. Plaintiffs, on behalf of themselves and other members of the putative Class, request further relief as described in the prayer below.

/ / /

/ / /

/ / /

/ / /

/ / /

**NINTH CAUSE OF ACTION**

**(By Plaintiffs Individually and on Behalf of the Class Against Defendants)**

**FAILURE TO REIMBURSE FOR NECESSARY WORK EXPENSES**

**[Labor Code §§ 2800, 2802, 2804 and IWC Wage Order No. 4-2001 and/or 9-2001]**

193. Plaintiffs reallege and incorporate by this reference, as though fully set forth herein, all paragraphs of this Complaint.

194. Labor Code § 2800 requires employers in all cases to indemnify employee losses caused by the employer's want of ordinary care.

195. In pertinent part, Labor Code § 2802 provides:

> (a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties…
>
> [...]
>
> (c) For purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.

196. Moreover, when an employer requires uniforms to be worn by non-exempt employees, the employer shall provide and maintain such uniforms. IWC Wage Order No. 4-2001, subdiv. 9 defines "uniform" to include apparel of distinct color or design.

197. Plaintiffs assert that as a policy, practice, guideline, and/or procedure, Defendants require Employees to wear a uniform affixed with the Defendants' company logo as a condition of their employment. However, Defendants have only provided a shirt, and have not provided any jacket despite the cold weather. In addition, Defendants required Plaintiffs and other Employees to wear black pants and black shoes. However, as a practice or procedure, Defendants neither provide Employees with black pants and black shoes, nor reimburses Employees for the cost of purchasing and/or maintaining the required uniform in violation of California law.

198. In addition, Employees, including Plaintiffs, are required to use their personal cell phones and/or laptops for work-related issues such as communicating with supervisors and/or co-workers and tracking flight details, such as arrivals, departures, and gate changes. However, Defendants fail to reimburse Employees for a percentage of cell phone bills nor the laptop.

199. In addition, Defendants failed to reimburse Plaintiffs and other Employees for use of their personal vehicles and cleaning supplies.

200. Defendants have, therefore, failed to reimburse Plaintiffs and other Employees for necessary work expenses in violation of California law.

201. Defendants have, therefore, failed to reimburse Plaintiffs and other Employees for necessary work expenses in violation of California law.

202. Plaintiffs and other current or former Defendants are entitled to, and seek, reimbursement of their necessary expenditures, plus interest, including reasonable attorneys' fees and costs pursuant to Labor Code §§ 2800 and 2802.

203. Plaintiffs and other Defendants are entitled to, and seek recovery of, reasonable attorneys' fees and costs as provided for under Labor Code § 218.5 and Code of Civil Procedure § 1021.5.

204. Plaintiffs, on behalf of themselves and other employees, request further relief as described in the below prayer.

**TENTH CAUSE OF ACTION**

**(By Plaintiffs Individually and on Behalf of the Class Against Defendants)**

**VIOLATION OF THE UNFAIR COMPETITION LAW**

**[Bus. & Prof. Code §§ 17200 *et seq*.]**

205. Plaintiffs reallege and incorporate by this reference, as though fully set forth herein, all paragraphs of this Complaint.

206. As codified in Business and Professions Code §§ 17200 *et seq*., California's Unfair Competition Law ("UCL") broadly prohibits "any unlawful, unfair or fraudulent business act or practice."

207. A cause of action may be brought under the UCL if a business practice violates some other law. The "unlawful" prong of the UCL effectively deems a violation of the underlying law a per se violation of Business and Professions Code § 17200. (*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*. (1999) 20 Cal.4th 163, 180.) Virtually any law or regulation – federal or state, statutory, or common law – can serve as a predicate for a § 17200 "unlawful" violation. (*Farmers Ins. Exch. v. Superior Court* (1992) 2 Cal.4th 377, 383.)

208. The "unfair" prong of the UCL does not, however, require a practice to be specifically proscribed by any law. (*Korea Supply Co. v. Lockheed Martin Corp*. (2003) 20 Cal.4th 1134, 1143 (internal citations omitted.).) Pursuant to the California Supreme Court, the "unfair standard" is intentionally broad to give maximum discretion to courts in prohibiting new schemes to defraud. (*Cel-Tech Commc'ns, Inc*., *supra*, 20 Cal.4th at 180-81.)

209. Under the UCL, a "fraudulent" business act or practice is one where "members of the public are likely to be deceived." (*Blakemore v. Superior Court* (2005) 129 Cal. App. 4th 36, 49.) A showing of actual deception, reasonable reliance, or damages is not required. (*Ibid.*) The fraudulent prong may be used to attack the deceptive manner in which otherwise lawful contract terms are presented to an individual. (*Boschma v. Home Loan Ctr., Inc.* (2011) 198 Cal.App.4th 230, 253.) As such, even a true statement may be unlawful under § 17200 if it is "couched in such a manner that is likely to mislead or deceive..., such as by failing to disclose other relevant information." (*Ibid*.)

210. As discussed herein, Defendants' business practices violate all three prongs of California's UCL.

Unlawful

211. Defendants violated the Labor Code by failing to properly compensate employees for all hours worked. Because Defendants' failure to adequately compensate employees clearly violates California law, their conduct is a per se violation of the UCL. *Cel-Tech Commc'ns, Inc.*, 20 Cal.4th at 180. Defendants also failed to pay premium wages to their employees for non-compliant meal and rest periods as required by California law. Plaintiffs are also informed and believe that Defendants failed to pay all wages owed to employees upon termination of the employment relationship in violation of California law. Defendants further failed to furnish itemized and accurate wage statements that accurately reflected the total hours actually worked and gross and net wages earned by employees, among other things. Therefore, Defendants have clearly engaged in unlawful business practices pursuant to Business and Professions Code §§ 17200 *et seq*.

Unfair

212. Defendants' policies and practices that fail to provide employees with minimum wages and overtime compensation for all hours worked are unfair because they prevent employees from timely receiving wages owed to them in violation of California's public policy favoring the prompt payment of wages.

213. Defendants' failure to provide employees with legally compliant meal and rest periods, or compensation in lieu thereof, is unfair because it knowingly strips employees of rights and compensation afforded to them under the Labor Code.

Fraudulent

214. Defendants' practice of providing employees with inaccurate wage statements constitutes a fraudulent business practice under the UCL because Plaintiffs

and other employees are likely to be, and actually are, deceived as to whether they were paid for all time worked.

215. Similarly, Defendants' failure to maintain accurate records also constitutes a fraudulent business practice as the intentional inaccuracies mislead employees as to their total hours worked and wages earned.

216. As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiffs and other current or former employees have suffered injury-in-fact and have lost wages rightfully owed to them.

217. Through their unlawful, unfair, and fraudulent conduct, Defendants have been unjustly enriched by receiving and continuing to receive benefits and profits at the expense of employees. Pursuant to Business and Professions Code §§ 17200 *et seq.*, Defendants should therefore be enjoined from such conduct, made to disgorge all ill-gotten gains, and restore to Plaintiffs and other employees the wages wrongfully withheld from them.

218. The unlawful, unfair, and fraudulent conduct alleged herein has continued and there is no indication that Defendants will refrain from such activity in the future. Plaintiffs believe and allege that if Defendants are not enjoined from the conduct described herein, they will continue to violate California law at the expense of employees. Accordingly, Plaintiffs request that the court issue a preliminary and permanent injunction against Defendants.

219. Plaintiffs, on behalf of themselves and other employees, request further relief as described in the prayer below.

/ / /

/ / /

/ / /

/ / /

**ELEVENTH CAUSE OF ACTION**

**(By Plaintiffs in their Representative Capacity Against All Defendants)**

**PRIVATE ATTORNEYS GENERAL ACT OF 2004**

**[Labor Code §§ 2698 *et seq.*]**

220. Plaintiffs reallege and incorporate by this reference, as though fully set forth herein, all paragraphs of this Complaint.

221. Pursuant to PAGA, any provision of the Labor Code allowing for a civil penalty to be assessed and collected by the LWDA, or any of its departments, divisions, commissions, boards, agencies, or employees, for a California Labor Code violation, may be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself, and other current or former employees. Under Labor Code § 2699(i), such civil penalties are in addition to any other relief provided for in the Labor Code and must be allocated 75% to the LWDA and 25% to the aggrieved employees.

222. Defendants employed Plaintiffs and each of the current or former employees he represents in the state of California during all, or a portion of, the statute of limitations period before Plaintiffs filed their notice with the LWDA.

223. Plaintiffs are "aggrieved employees" under PAGA, as they were employed by Defendants within the year prior to filing PAGA notice and suffered one or more violations of the Labor Code.

224. Plaintiffs have complied with the notice requirements outlined in Labor Code § 2699.3. On April 09, 2025, Plaintiffs submitted notice to the LWDA and Defendants informing them of Defendants' alleged Labor Code violations pursuant to PAGA. (See **Exhibit 1**.) On December 01, 2025, Plaintiffs submitted an Amended PAGA Notice with the LWDA and Defendants (See **Exhibit 2**). On December 12, 2025, Plaintiffs submitted a Second Amended PAGA Notice with the LWDA and Defendants (See **Exhibit 3**) The LWDA had sixty-five (65) days to provide notice of whether it

intended to investigate the alleged violations. To date, the LWDA has not provided notice of whether it intends to investigate the alleged violations. Plaintiffs thus have the right to pursue such claims in their representative capacity pursuant to Labor Code § 2699.3.

225. As set forth herein, Defendants have committed, and continue to commit, numerous violations for which the Labor Code entitles Plaintiffs, in their representative capacity, to recover, on behalf of themselves, the PAGA Collective, the state of California and the general public, civil penalties, as well as attorneys' fees and costs for Defendants' alleged Labor Code violations.

226. Plaintiffs, in their representative capacity on behalf of themselves and the PAGA Collective, are entitled to seek, and do so seek, to recover civil penalties for violations of the following Labor Code provisions in this representative action:

a. Misclassifying employees as exempt (when they should be non-exempt);

b. Failure to pay minimum and overtime wages in violation of Labor Code §§ 204, 206, 210, 212, 216, 221, 225.5, 510, 558, 1174d, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198 and 1199 and IWC Wage Order No. 4-2001 and/or 9-2001;

c. Failure to provide legally compliant meal periods or compensation in lieu thereof in violation of Labor Code §§ 204, 226.7 and 512 and IWC Wage Order No. 4-2001 and/or 9-2001;

d. Failure to provide legally compliant rest periods or compensation in lieu thereof in violation of Labor Code § 204, 226.7, 512 and IWC Wage Order No. 4-2001 and/or 9-2001;

e. Failure to pay all wages owed upon termination in violation of Labor Code §§ 201-203, 210, 213, 227.3, 256;

f. Failure to provide paid sick leave and written notice of the amount of paid sick leave available in violation of Labor Code §246;

g. Failure to timely furnish accurate itemized wage statements in violation of Labor Code §§ 226, 226.3 and IWC Wage Order No. 4-2001 and/or 9-2001;

h. Failure to maintain accurate timekeeping and payroll records in violation of Labor Code §§ 226(a), 1174 and IWC Wage Order No. 4-2001 and/or 9-2001;

i. Failure to provide copies of signed documents in violation of Labor Code §432;

j. Failure to reimburse for necessary work expenses in violation of Labor Code §§ 2800, 2802, 2804 and IWC Wage Order No. 4-2001 and/or 9-2001.

k. For reasonable attorneys' fees and costs of suit pursuant to Labor Code §§ 218.5, 266(h), 266(e)(1), 1194, 2802, Code of Civil Procedure § 1021.5, the "common fund" theory, the "substantial benefit" theory and any other applicable law, theory or doctrine;

227. For violations of Labor Code §§ 510 and 512, in addition to any other penalty provided by law, Labor Code § 558 imposes a civil penalty of $50 per pay period for each underpaid employee for the initial violation and $100 per pay period for each underpaid employee for each subsequent violation of any section of Labor Code Division 2, Part 2, Chapter 1, or any provision regulating hours and days of work in any order of the IWC. Under Labor Code § 558.1, "Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, §§ 203, 226, 226.7, 1193.6, 1194, or

2802, may be held liable as the employer for such violation." Therefore, Plaintiffs, in their representative capacity on behalf of themselves and the PAGA Collective are entitled to seek, and do seek, such civil penalties.

228. Labor Code § 1197.1 subjects an employer, or any other person acting either individually or as an officer, agent, or employee of another person, to a civil penalty of $100 for any initial violations for each underpaid employee and $250 for each underpaid employee for each subsequent violation, restitution of wages and liquidated damages payable to the employee and any applicable penalties imposed by Labor Code § 203 for paying or causing to pay an employee less than the minimum wage imposed by California law. Plaintiffs, in their representative capacity on behalf of themselves and the PAGA Collective are entitled to seek, and do seek, such civil penalties.

229. Labor Code § 226.3 imposes a civil penalty of $250 per employee per violation in an initial citation and $1,000 per employee for each violation in a subsequent citation for violations of Labor Code § 226(a). Plaintiffs and other employees in the state of California are thus entitled to seek, and do seek, the described civil penalties.

230. For violations of Labor Code § 1174 subdivisions (b), (c), and (d), Labor Code § 1174.5 imposes a civil penalty of $500. Plaintiffs, in their representative capacity on behalf of themselves and the PAGA Collective are entitled to, and therefore seek, such civil penalty.

231. In addition to any other penalty, Labor Code § 210 provides that any person who fails to pay wages as provided in §§ 201.3, 204, 204b, 204.1, 204.2, 205, 205.5, and 1197.5, shall be subject to a civil penalty of $100 for any initial violation for each failure to pay each employee and for each subsequent violation, or any willful or intentional violation, $200 for each failure to pay each employee, plus 25% of the amount

unlawfully withheld. Plaintiffs and other employees in the state of California are thus entitled to seek, and therefore do seek, the described civil penalties.

232. Labor Code § 2699(f) imposes a civil penalty of $100 per pay period, per employee for the initial violation and $200 per pay period, per employee for each subsequent violation for all Labor Code provisions for which a civil penalty is not specifically provided, including, but not limited to, Labor Code §§ 201, 202, 203, 204, 210, 226, 226(a), 226.2, 226.3, 226.7, 233, 234, 246, 246.5, 432, 510, 512, 1102.5, 1174, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2800, and/or 2802. Thus, Plaintiffs, on behalf of themselves and the PAGA Collective, seek the above-described civil penalties.

233. Pursuant to Labor Code § 2699(g)(1) an employee who prevails in a civil action brought pursuant to the PAGA shall be entitled to an award of reasonable attorneys' fees and costs. Therefore, Plaintiffs, in their representative capacity, are entitled to seek, and do so seek, attorneys' fees and costs in relation to this action.

234. Plaintiffs, in their representative capacity, on behalf of themselves and other members of the PAGA Collective are also entitled to seek, and do seek, to recover reasonable attorneys' fees as provided by Labor Code §§ 218.5, 1193.6, 1194 and Code of Civil Procedure § 1021.5.

235. Plaintiffs, on behalf of themselves and the PAGA Collective, request further relief as described in the prayer below.

**PRAYER FOR RELIEF**

Plaintiffs pray for judgment against Defendants and in favor of the above-defined Class and Subclasses as follows:

1. For an order determining that this action may be maintained as a class action with the named Plaintiffs as the class representatives;
2. For the attorneys appearing on the above caption to be named class counsel;

3. For an order determining that this action may be maintained as a representative action with the named Plaintiffs as the representatives;
4. For all wages and benefits due to Plaintiffs and other employees currently and formerly employed by Defendants pursuant to California law;
5. For all minimum wages and overtime compensation owed pursuant to Labor Code §§ 510, 1194, 1197.1, and any other applicable law;
6. For premium wages under Labor Code § 226.7 and any other applicable law;
7. For damages pursuant to Labor Code §§ 226, 226.8(c), 246, Civil Code § 3281, and any other applicable law;
8. For all liquidated damages, pursuant to Labor Code §§ 226(e), 1194.4(a), 1197.1, and/or other applicable law;
9. For civil penalties, pursuant to Labor Code §§ 210, 223, 226.3, 351, 432, 558, 1174.5, 1197.1, 2699(f) and/or other applicable law;
10. For PAGA civil penalties pursuant to Labor Code §§ 2698 *et seq*., and/or other applicable law;
11. For injunctive relief pursuant to Labor Code § 266(h), Business and Professions Code § 17203 and any other applicable law;
12. For restitution for Defendants' unfair, unlawful, and fraudulent business practices;
13. For reasonable attorneys' fees and costs of suit pursuant to Labor Code §§ 218.5, 266(h), 266(e)(1), 1194, 2802, Code of Civil Procedure § 1021.5, the "common fund" theory, the "substantial benefit" theory and any other applicable law, theory or doctrine;

14. For pre-judgment and post-judgment interest as provided by California law;
15. For appropriate equitable relief pursuant to California law; and
16. For any and all other relief the Court may deem just and proper.

Dated: February 26, 2026 **CONSUMER AND EMPLOYMENT LAWYERS**

By: /s/ Alicja Urtnowski

R. Craig Clark
Alicja A. Urtnowski
*Attorneys for Plaintiffs*

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on all issues triable to a jury.

Dated: February 26, 2026 **CONSUMER AND EMPLOYMENT LAWYERS**

By: /s/ Alicja Urtnowski

R. Craig Clark
Alicja A. Urtnowski
*Attorneys for Plaintiffs*

# EXHIBIT 1

CONSUMER & EMPLOYMENT LAWYERS

3258 Fourth Avenue
San Diego, California 92103
Phone: (619) 239-1321
Facsimile: (888) 273-4554
consumerandemploymentlawyers.com
*Formerly known as Clark Law Group*

April 9, 2025

*Transmitted via Online Upload*

California Labor and Workforce Development Agency
ATTN: PAGA Administrator
1515 Clay Street, Suite 801
Oakland, CA 94612

**RE: Mohamed Nabil Amin and Dawit Negusse v. G2 Secure Staff, L.L.C.**

Dear PAGA Administrator,

The purpose of this correspondence is to notify you that **Mohamed Nabil Amin and Dawit Negusse** ("Plaintiffs"), on behalf of themselves and all others similarly situated, intends to assert the legal rights granted to them under the Private Attorneys General Act (the "Act"), as set forth in California Labor Code ("Labor Code") §§ 2698 et seq. This correspondence includes the current facts and theories to support the violations alleged herein. This correspondence will also be sent to the agent for service of process for **G2 Secure Staff, L.L.C.** ("G2 Secure Staff") via certified mail. Therefore, this correspondence serves to satisfy the notice requirements of the Act. By uploading and sending this correspondence in the manner set forth in the Act, Plaintiffs are complying with the Act's statutory notice requirements.

**Factual Statement and Theories of Liability**

Mohamed Nabil Amin was employed by G2 Secure Staff as a non-exempt hourly employee from approximately June 2016 to September 2024. Dawit Negusse has been employed by G2 Secure Staff as a non-exempt hourly employee from approximately October 2023 to current. Throughout Plaintiffs employment, they were assigned to work at the San Diego, California airport location.

G2 Secure Staff, LLC is a Texas limited liability company that does business in California. Specifically, it is in the business of airport customer services, including passenger assistance and wheelchair services, bag porter services, skycap services, security services, checkpoint customer service agents, unaccompanied minor escort services, janitorial services, cabin-cleaning, and utility services. See https://www.g2securestaff.com/

Plaintiffs bring this case on behalf of themselves and all individuals currently or formerly employed by G2 Secure Staff in the state of California as non-exempt employees ("non-exempt employees').

In addition, Plaintiff Amin bring this case on behalf of himself and all individuals currently or formerly employed by G2 Secure Staff in the state of California, who had or have any job title and position which was misclassified as exempt by G2 Secure Staff ("misclassified employees"). In about 2024, G2 Secure Staff misclassified Plaintiff Amin as "exempt" in order to avoid requirements imposed by the Labor Code. Plaintiff Amin worked well in excess of 40 hours per week, and routinely worked through meal and rest breaks in the course of business. While misclassified as an exempt employee, Plaintiff Amin had no authority to hire or fire employees, and was required to perform non-exempt job duties lacking managerial or discretionary character. Plaintiff Amin's independent judgment was restricted. His role and authority was limited to that of a team member, as opposed to leadership of other team members. Plaintiff is informed and believes the wage/hour violations described herein occurred to other misclassified employees in California. In summary, Defendant's misclassification policies and/or practices resulted in a failure to compensate Mr. Amin and other class members for hours worked.

Collectively, all non-exempt employees and misclassified employees are referred to herein as "Employees."

Plaintiffs assert that they and other individuals currently or formerly employed by G2 Secure Staff in the state of California ("Employees"), were subject to the same and/or similar policies, practices, guidelines, procedures and/or culture described herein. Plaintiffs further assert that they and all other Employees have suffered, and will continue to suffer, the same and/or similar Labor Code violations described herein.

Any and all claims alleged in this correspondence are asserted on behalf of Plaintiffs and all other current or former Employees who were employed by G2 Secure Staff in California, during the applicable statutory period and who have suffered the same and/or similar Labor Code violations alleged herein, as well as any other violations of the PAGA arising out of their

employment with G2 Secure Staff that may be later discovered since the investigation is ongoing.

Because the investigation is ongoing, Plaintiffs reserve their right to assert any and all related facts, claims, and/or theories discovered after the sending of this correspondence on behalf of themselves and the current or former Employees that they seek to represent against G2 Secure Staff and/or other persons that may be discovered after the sending of this correspondence. Such other persons include, but are not limited to, those persons who have acted as an agent, subsidiary, servant, employee, co-conspirator, alter-ego, and/or joint venture of G2 Secure Staff, as well as those persons who caused and/or concurrently contributed to the various acts and/or omissions of each and every one of the others, including G2 Secure Staff, in proximately causing the wrongful conduct, harm, and/or damages alleged herein or otherwise participated in and/or ratified any or all of the acts or omissions complained of herein, and those who are acting within the authority and scope of G2 Secure Staff. *Atempa v. Pedrazzani*, 27 Cal.App.5th at 811-813.

**I.**G2 Secure Staff **Failed to Pay Minimum, Regular, Overtime, and/or Double Time Wages in Violation of Labor Code §§ 204, 206, 210, 212, 216, 221, 225.5, 510, 1174d, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198 and 1199 and IWC Wage Order No. 4-2001.**

Labor Code § 204 establishes the fundamental right of an employee in California to be timely paid wages for their work. Pursuant to Labor Code § 1197, an employer is prohibited from paying or causing its employees to be compensated at a rate less than the fixed minimum, as set by the commission, for all time worked. See also Labor Code § 1199 (making such conduct a misdemeanor); IWC Wage Order No. 4-2001, subdiv. 4.

Additionally, it is unlawful for an employer to employ persons for more than eight hours per day and/or forty hours per workweek without compensating them at the rate of one and one-half or two times the employee's regular pay rate, depending on the number of hours worked. Labor Code §§ 510, 1198; see also IWC Wage Order No. 4-2001, subdiv. 3(A). Pursuant to Labor Code § 1194, an employee is permitted to recover any unpaid balance of the minimum wage or overtime compensation not paid for all hours worked. Moreover, any employer who causes an employee to be paid a wage lower than that of the fixed minimum is required to pay a civil penalty. Labor Code § 1197.1; see also IWC Wage Order No. 4-2001, subdiv. 20(A).

Plaintiffs assert that as a policy, practice, guideline, procedure, and/or culture G2 Secure Staff does not properly compensate its Employees for all hours worked. Plaintiffs contend

that G2 Secure Staff required them and other Employees to perform work on behalf of G2 Secure Staff without compensation.

As a policy, practice, guideline, procedure, and/or culture, G2 Secure Staff requires its Employees to clock in and out of their job using a finger scan device on the wall. However, the device often did not work and Employees were required to use handwritten timesheets.

G2 Secure Staff Employees, including Plaintiffs, were often required to work off the clock. For example, Plaintiffs assert that G2 Secure Staff often required them and other Employees to clock out and continue working, depriving them proper wages for all hours worked, including overtime. For example, Employees are often forced to work off the clock because of flight delays and being understaffed. Often, Employees were required to wait for delayed flights and/or assist passengers at the airport, while being off the clock. As such, Plaintiffs and other Employees did not receive the minimum, overtime, and/or double-time compensation they are entitled to. G2 Secure Staff regularly shaves and/or shortens Employees' hours worked and does not compensate its employees for all time worked as required by California law.

In addition, Employees, including Plaintiffs, were regularly required to respond to calls and messages from their supervisors and/or managers outside of work hours without compensation for the time spent responding to calls and/or messages.

Employees are also required to complete various mandatory trainings and/or attend safety meetings while off the clock, without compensation.

Plaintiffs contend that as a policy, practice, guideline, procedure, and/or culture, G2 Secure Staff regularly requires Employees to work more than 8 hours per day and/or 40 hours per week, without being paid the appropriate overtime and/or double time compensation. Because G2 Secure Staff failed to appropriately pay overtime and/or double-time compensation to Employees who worked more than 8 hours per day and/or 40 hours per week, G2 Secure Staff did not pay its employees in accordance with California law.

Moreover, Plaintiffs assert that G2 Secure Staff has a policy, practice, guideline, procedure, and/or culture of automatically deducting a thirty-minute meal period from the hours worked by its Employees regardless of whether they were actually provided with an opportunity to take a thirty-minute meal period free from all work activities. G2 Secure Staff thus regularly engage in work-related activities during the time that G2 Secure Staff automatically deducts from their time worked.

Additionally, Plaintiffs allege that G2 Secure Staff fails to timely pay all earned wages. For instance, the paychecks Plaintiffs and other Employees receive from G2 Secure Staff do not include compensation for all hours worked and are often late, as described herein. Plaintiffs assert that despite notifying G2 Secure Staff of the error, G2 Secure Staff did not promptly remedy the issues by paying all wages earned and due.

Based on the foregoing, Plaintiffs assert that G2 Secure Staff engaged in conduct that violated California law by failing to compensate them and other Employees appropriately.

**II.** G2 Secure Staff **Failed to Provide Legally Compliant Meal Periods or Compensation in Lieu Thereof, in Violation of Labor Code §§ 204, 226.7 and 512 and IWC Wage Order No. 4-2001**

Labor Code § 512 states, "[a]n employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Additionally, an employer is not permitted to employ a person for a work period of more than ten hours per day without providing the employee with a second meal period of at least thirty minutes. Labor Code § 512. Meal periods of no less than 30 minutes must be provided before the end of the employee's fifth and tenth hours of work, respectively. *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1041. California law further obligates employers to completely relieve its employees of all work and work-related responsibilities during the entirety of the legally required meal periods. Id. at 1040. In order to comply with their meal period obligations, employers must also relinquish all control over its employees, and cannot impede or discourage its employees from taking uninterrupted, work-free meal periods. Id. An employee who is required to perform any work-related task at any point during his or her meal period has not received a meal period in accordance with California law. Labor Code § 226.7.

If an employer fails to provide an employee with a legally compliant meal period, the employer **must** pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that a legally compliant meal period was not provided. Labor Code § 226.7; IWC Wage Order No. 4-2001, subdiv. 11(D). Premium wages under Labor Code § 226.7 are wages due payable in accordance with the Labor Code. *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103-1114; see also Labor Code § 204.

As a policy, practice, guideline, procedure, and/or culture G2 Secure Staff regularly requires their employees to work more than 5 hours per workday. However, despite regularly working more than 5 hours per workday, Employees, such as Plaintiffs, were not provided with the reasonable opportunity to take meal periods that occurred before the 5th hour of work

and/or that were free from all work and work-related responsibilities during the entirety of the 30-minute meal period.

Additionally, even though G2 Secure Staff Employees often worked more than 10 hours in a day, G2 Secure Staff failed to provide them with a second meal period of at least thirty minutes.

Plaintiffs assert that the demanding work schedule assigned to G2 Secure Staff Employees did not allow time for legally compliant meal periods. Moreover, Plaintiffs allege that as a policy, practice, guideline, procedure, and/or culture G2 Secure Staff does not schedule any meal periods for its employees.

Plaintiffs assert G2 Secure Staff failed to provide any relief for Employees to be able to take legally compliant breaks. In fact, Plaintiffs asserts that their supervisors often instructed them and other Employees not to take breaks and/or work through meal breaks, and often yelled at Employees for taking breaks.

Plaintiffs contend that this is due in part to G2 Secure Staff's requirement that its employees be readily available to perform their work duties during meal periods, including assisting passengers and/or customers at the airport, monitoring arrivals and departures, waiting by the gates, and transferring around the airport with a wheelchair, among other duties.

Plaintiffs contend that G2 Secure Staff has a policy, practice, guideline, procedure, and/or culture of automatically deducting 30 minutes for a meal period regardless of whether Employees were provided with the opportunity to take a legally compliant meal period. As such, G2 Secure Staff often adjusted its' Employees timesheets to reflect meal breaks, even though a compliant meal break was not taken.

Plaintiffs, therefore, contend that G2 Secure Staff has a policy, practice, guideline, procedure, and/or culture that requires G2 Secure Staff Employees to engage in their job duties for the entire duration of their work shift. As a result, G2 Secure Staff Employees are not provided with legally compliant meal periods.

Plaintiffs also contend that G2 Secure Staff requires Employees to carry a personal cell phone, a radio, and/or a tablet for the entire duration of their work shift, including during meal periods. G2 Secure Staff Employees were also expected to be readily available to perform work on behalf of G2 Secure Staff during meal periods, such as by responding to calls and/or messages from supervisors and/or co-workers, and monitoring flight arrivals,

departures, and gates. As a result, G2 Secure Staff Employees were not provided with meal periods that were free from work or interruption.

Overall, G2 Secure Staff Employees were not provided with the opportunity to take meal periods that were free from work-related responsibilities. By imposing unbearable work schedules onto its non-exempt employees, G2 Secure Staff compelled, encouraged, and/or otherwise directed its non-exempt employees to work through their meal periods.

Plaintiffs further contend that G2 Secure Staff does not have a procedure for Employees to document non-compliant meal periods. As a result, G2 Secure Staff does not compensate Employees for non-compliant meal periods.

In addition, Plaintiffs allege that G2 Secure Staff failed to provide Plaintiffs and other Employees with suitable seating. Labor Code Section 1198, Wage Order No. 4, Section 14. Plaintiffs allege SMG regularly did not provide Employees with any break rooms, nor a place to sit throughout the entire duration of their shifts. SMG further did not allow Employees to sit when it did not interfere with the performance of their duties, including during breaks.

Based on the foregoing, Plaintiffs contend G2 Secure Staff has failed to comply with its meal period obligations under California law by not providing Employees with legally compliant meal periods or compensation in lieu thereof.

### **III.** G2 Secure Staff **Failed to Provide Legally Compliant Rest Periods or Compensation in Lieu Thereof in Violation of Labor Code §§ 204, 226.7, 512 and IWC Wage Order No. 4-2001**

IWC Wage Order No. 4-2001, subdiv. 12(A) requires employers to authorize and permit off-duty rest periods for every four hours worked, or a major fraction thereof. Unless an employer relieves its employees of any and all work-related duties and also relinquishes all control over how its employees spend their time during rest periods, the employer has not authorized and permitted lawful off-duty rest periods. *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 269. If an employer fails to provide an employee with an off-duty rest period in accordance with California law, the employer is required to pay an employee one additional hour of pay at the employee's regular rate of compensation for each workday in which a lawful rest period was not provided. Labor Code § 226.7; See also IWC Wage Order No. 4-2001, subdiv. 12(B). Premium wages under Labor Code § 226.7 are wages due payable in accordance with the Labor Code. Murphy, 40 Cal.4th at 1103-1114; see also Labor Code § 204.

Plaintiffs and other Employees employed by G2 Secure Staff typically work more than 4 hours per workday. However, Plaintiffs allege that as a policy, practice, guideline, procedure, and/or culture, G2 Secure Staff regularly fails to authorize and permit Employees to take off-

duty rest periods for every four hours worked, or a major fraction thereof, in violation of California law. Plaintiffs contend they and other Employees were denied legal rest periods largely due to G2 Secure Staff's requirement that Employees are to be readily available to perform their work duties at all times, as described above. In addition, Plaintiffs allege that G2 Secure Staff fails to schedule enough Employees so that Plaintiffs and other Employees could be relieved from their duties to take their meal and rest periods.

Plaintiffs further assert that G2 Secure Staff does not have a policy, practice, guideline, procedure, and/or culture for Employees to record non-compliant rest periods and fails to compensate Employees the required rest period premium for non-compliant rest periods. G2 Secure Staff's conduct thus constitutes a violation of California law.

**IV.** G2 Secure Staff **Failed to Timely Pay Wages Owed Upon Termination in Violation of Labor Code §§ 201-203, 213, 227.3, 256**

Under Labor Code § 201, when an employer discharges an employee, all wages earned and unpaid at the time of discharge are immediately due and payable. Similarly, if an employee does not have a written contract for a definite period and quits his or her employment, the employee's wages are due and payable no later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his/her intention to quit, then the employee is entitled to his/her wages at the time of quitting. Labor Code § 202(a). If an employer willfully fails to pay all wages owed to an employee in accordance with Labor Code §§ 201 and 202, the employee's wages are to continue as a penalty, equal to one day of wages at the employee's regular rate of pay, starting from the date at which such wages were due until paid or until an action is commenced. Labor Code § 203. However, the wages are not to continue for more than a period of thirty days. Id.

Plaintiffs contend that G2 Secure Staff has a policy, practice, guideline, and/or culture of not timely paying all wages owed upon discharge nor paying the required waiting time penalties. For instance, as discussed herein, G2 Secure Staff failed to compensate Employees for all hours worked, failed to pay the appropriate overtime wages to Employees for hours worked in excess of eight per day and/or forty per week, and failed to pay the required meal and/or rest period premiums to G2 Secure Staff Employees for non-compliant meal and/or rest periods.

Plaintiffs, therefore, contended that G2 Secure Staff failed to pay all wages owed to former Employees who separated from G2 Secure Staff within the statutory period in violation of California law.

**V.** G2 Secure Staff **Failed to Provide Paid Sick Days and Written Notice of the Amount of Sick Leave Available in Violation of Labor Code § 246.**

California law requires that an employer provide 24 hours (or 3 days) of paid sick leave per year for full-time employees. Labor Code § 246. Employees are to earn a minimum of 1 hour of paid leave for every 30 hours worked. Id.

Plaintiffs allege that G2 Secure Staff has a policy, practice, guideline, procedure, and/or culture of failing to provide Employees with one hour of paid sick leave for every 30 hours worked in accordance with California law.

Plaintiffs further allege that G2 Secure Staff also failed to provide Employees with paid sick days since they were unable to accrue any such paid sick days at the rate provided by law as a result of G2 Secure Staff's failure to account for all time worked.

Plaintiffs also contend that G2 Secure Staff has a policy, practice, procedure, guideline, and/or culture of failing to provide written notice to Employees of their available sick leave, as such amounts are not included on the wage statements, nor are they provided with the information in separate writing on the designated pay date along with their wages. Accordingly, G2 Secure Staff has failed to comply with California law.

**VI.** G2 Secure Staff **Failed to Furnish Legally Compliant Wage Statements in Violation of Labor Code §§ 226, 226.3 and IWC Wage Order No. 4-2001**

An employer is required to provide its employees with accurate and itemized wage statements. Labor Code § 226(a). Pursuant to Labor Code § 226(a), each wage statement must show "(1) gross wages earned, (2) total hours worked by the employee…(4) all deductions…(5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than the social security number, (8) the name and address of the legal entity that is the employer…(9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate…" See also IWC Wage Order No. 4-2001, subdiv. 7(A).

G2 Secure Staff failed to comply with Labor Code § 226 because they failed to provide Plaintiffs and other current or former Employees with legally compliant wage statements. Plaintiffs contend that G2 Secure Staff failed to provide wage statements that accurately reflect the gross wages and/or net wages earned due to G2 Secure Staff's failure to compensate Employees for all time worked, failure to pay the appropriate overtime compensation to Employees for hours worked beyond eight hours per day and/or forty hours

per week, and failure to pay premium wages to Employees for non-compliant meal and/or rest periods, as discussed herein.

G2 Secure Staff also failed to provide wage statements that properly include the pay period information for each wage statement, the accurate rate of pay, the required available sick time, and/or the name of the legal entity that employed the G2 Secure Staff's Employees in violation of California law.

During the statutory period, G2 Secure Staff thus failed to comply with the requirements outlined by California law by failing to provide legally compliant wage statements to all current or former G2 Secure Staff Employees.

**VII.** G2 Secure Staff **Failed to Maintain Accurate Payroll Records in Violation of California Labor Code §§ 226(a) and 1174 and IWC Wage Order No. 4-2001**

Labor Code § 1174 requires every employer to "keep a recording showing the names and addresses of all employees employed…" Labor Code § 1174 further requires "[e]very person employing labor in this state [to] keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily and the wages paid. Such records are to be kept according to the rules established by the commission for such purpose and must be kept on file for no less than three years. Id. An employer is further obliged under Labor Code § 226(b) to keep the information required by Labor Code § 226(a) and afford current or former employees the right to inspect or copy records pertaining to their employment. See also IWC Wage Order No. 4-2001, subdivs. 7, 19, and 20.

As discussed herein, G2 Secure Staff has a policy, practice, guideline, procedure, and/or culture of failing to maintain accurate employee information and payroll records which accurately reflect, for example, the gross and net wages earned as well as the total hours of time worked each day by Plaintiffs and other Employees.

Additionally, Plaintiffs are informed and believe that G2 Secure Staff fails to maintain a copy of all documents related to the hiring and/or employment of G2 Secure Staff Employees, and/or fails to provide Employees with the opportunity to inspect or copy such documents upon request in violation of California law.

Therefore, Plaintiffs contend that G2 Secure Staff failed to comply with Labor Code §§ 226 and 1174.

**VIII.** G2 Secure Staff **Failed to Provide Copies of Signed Documents in Violation of Labor Code § 432**

Pursuant to Labor Code § 432, an employer is obligated, upon request, to provide its employees with a copy of any and all documents signed in connection with obtaining or holding employment.

As stated herein, Plaintiffs assert, based on information and belief, that G2 Secure Staff failed to maintain a copy of all documents signed by Employees that relate to their hiring by and/or employment with G2 Secure Staff, and/or failed to provide a copy of such documents to Employees who requested a copy thereof in violation of Labor Code § 432. Therefore, Plaintiffs allege that G2 Secure Staff has failed to comply with California law.

**IX.** G2 Secure Staff **Failed to Reimburse Non-Exempt Employees for Necessary Work Expenses in Violation of Labor Code §§ 2800, 2802, 2804 and IWC Wage Order No. 4-2001**

Labor Code § 2800 states that an employer shall indemnify employee losses caused by the employer's want of ordinary care. Accordingly, pursuant to Labor Code § 2802, an employee is entitled to reimbursement from his or her employer for all expenses or losses incurred as a result of employment. Moreover, when an employer requires uniforms to be worn by non-exempt employees, the employer shall provide and maintain such uniforms. IWC Wage Order No. 4-2001, subdiv. 9 defines "uniform" to include apparel of distinct color or design.

Plaintiffs assert that as a policy, practice, guideline, and/or procedure, G2 Secure Staff requires Employees to wear a uniform affixed with the G2 Secure Staff logo as a condition of their employment. However, G2 Secure Staff has only provided a shirt, and have not provided any jacket despite the cold weather. In addition, G2 Secure Staff required Plaintiffs and other Employees to wear black pants and black shoes. However, as a practice or procedure, G2 Secure Staff neither provides Employees with black pants and black shoes, nor reimburses Employees for the cost of purchasing and/or maintaining the required uniform in violation of California law.

In addition, Employees, including Plaintiffs, are required to use their personal cell phones and/or laptops for work-related issues such as communicating with supervisors and/or co-workers and tracking flight details, such as arrivals, departures, and gate changes. However, G2 Secure Staff fails to reimburse Employees for a percentage of cell phone bills nor the laptop.

In addition, G2 Secure Staff failed to reimburse Plaintiffs and other Employees for use of their personal vehicles and cleaning supplies.

G2 Secure Staff has, therefore, failed to reimburse Plaintiffs and other Employees for necessary work expenses in violation of California law.

**X.** Plaintiffs **May be Entitled to Attorneys' Fees and Costs**

The Act provides that "any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs. Labor Code § 2699(g)(1). Therefore, in the event that Plaintiffs and/or another similar representative is successful in a civil action against G2 Secure Staff, they are entitled to an award of attorneys' fees and costs. See also Labor Code §§ 218.5, 1194, 1193.6; Code Civ. Proc. § 1021.5.

## Conclusion

As described herein, Plaintiffs contend that they constitute "aggrieved employees" as the term is defined by Labor Code § 2699(c). Plaintiffs allege that the current or former G2 Secure Staff Employees that they seek to represent also constitute "aggrieved employees" under the statute.

As discussed herein, G2 Secure Staff violated the Labor Code and the relevant IWC Wage Order and thereby deprived Plaintiffs and other current or former Employees of their statutory rights and protections afforded to them. Plaintiffs have thus satisfied the prerequisites of the Act to serve as a representative of all current or former G2 Secure Staff Employees, the general public, and the state of California in order to enforce California labor laws and to seek civil penalties for the provisions both set forth herein as well as for those which may be later discovered on behalf of themselves and all others similarly situated.

Accordingly, if the Labor and Workforce Development Agency neither acts, nor declines to intervene within sixty-five days from the date of this correspondence, Plaintiffs may elect to initiate and/or amend a civil action, on behalf of themselves and all others similarly situated, to include the persons and allegations described herein and/or those discovered after sending this correspondence, subject to Labor Code §§ 2698 et seq., as well as other related claims arising out of their employment with G2 Secure Staff.

Sincerely,
**Consumer & Employment Lawyers**
Aliya Uffnowski

R. Craig Clark
Alicja A. Urtnowski

Cc: *Via Certified Mail*

Agent for Service

G2 SECURE STAFF, L.L.C.
Registered Corporate 1505 Agent
CAPITOL CORPORATE SERVICES, INC.
LO SAECHAO
455 CAPITOL MALL COMPLEX, STE 217
SACRAMENTO, CA 95814

# EXHIBIT 2

CONSUMER & EMPLOYMENT LAWYERS

3258 Fourth Avenue
San Diego, California 92103
Phone: (619) 239-1321
Facsimile: (888) 273-4554
consumerandemploymentlawyers.com
*Formerly known as Clark Law Group*

December 1, 2025

*Transmitted via Online Upload*

California Labor and Workforce Development Agency
ATTN: PAGA Administrator
1515 Clay Street, Suite 801
Oakland, CA 94612

**RE: Mohamed Nabil Amin, Dawit Negusse, and Elvissa Villarin v. G2 Secure Staff, L.L.C.**

**Amended Notice of Labor Code Violations Pursuant to Labor Code § 2699.3**

**LWDA Case Number: LWDA-CM-1091311-25**

Dear PAGA Administrator,

Consumer and Employment Lawyers represent **Mohamed Nabil Amin, Dawit Negusse, and Elvissa Villarin** ("Plaintiffs") in the above-captioned matter. This amended PAGA Notice relates back to the Original PAGA Notice filed with the LWDA on April 09, 2025. The purpose of this Amended PAGA Letter is to inform you that Plaintiffs, on behalf of themselves and all others similarly situated, assert the legal rights granted to them under the Private Attorneys General Act (the "Act"), as set forth in California Labor Code ("Labor Code") §§ 2698 et seq. This correspondence includes the current facts and theories to support the violations alleged herein. This correspondence will also be sent to Counsel for **G2 Secure Staff, L.L.C.** ("G2 Secure Staff") via electronic mail. Therefore, this correspondence serves to satisfy the notice requirements of the Act. By uploading and sending this correspondence in the manner set forth in the Act, Plaintiffs are complying with the Act's statutory notice requirements.

/ / /

## Factual Statement and Theories of Liability

Mohamed Nabil Amin was employed by G2 Secure Staff as a non-exempt hourly employee from approximately June 2016 to September 2024. Dawit Negusse has been employed by G2 Secure Staff as a non-exempt hourly employee from approximately October 2023 to current. Elvissa Villarin has been employed by G2 Secure Staff from approximately March 2017 to current. Throughout Plaintiffs' employment, they were assigned to work at the San Diego, California, airport location.

G2 Secure Staff, LLC is a Texas limited liability company that does business in California. Specifically, it is in the business of airport customer services, including passenger assistance and wheelchair services, bag porter services, skycap services, security services, checkpoint customer service agents, unaccompanied minor escort services, janitorial services, cabin-cleaning, and utility services. See https://www.g2securestaff.com/

Plaintiffs bring this case on behalf of themselves and all individuals currently or formerly employed by G2 Secure Staff in the state of California as non-exempt employees ("non-exempt employees').

In addition, Plaintiffs Amin and Villarin bring this case on behalf of themselves and all individuals currently or formerly employed by G2 Secure Staff in the state of California, who had or have any job title and position which was misclassified as exempt by G2 Secure Staff ("misclassified employees"). In about 2024, G2 Secure Staff misclassified Plaintiff Amin as "exempt" in order to avoid requirements imposed by the Labor Code. Similarly, in about 2023, G2 Secure Staff misclassified Plaintiff Villarin as "exempt" in order to avoid requirements imposed by the Labor Code. Plaintiffs Amin and Villarin worked well in excess of 40 hours per week, and routinely worked through meal and rest breaks in the course of business. While misclassified as an exempt employee, Plaintiff Amin and Villarin had no authority to hire or fire employees, and were required to perform non-exempt job duties lacking managerial or discretionary character. Plaintiff Amin's and Villarin's independent judgment was restricted. Their role and authority was limited to that of a team member, as opposed to leadership of other team members.

Plaintiffs are informed and believe the wage/hour violations described herein occurred to other misclassified employees in California. In summary, Defendant's misclassification policies and/or practices resulted in a failure to compensate Mr. Amin, Ms. Villarin, and other class members for hours worked.

Collectively, all non-exempt employees and misclassified employees are referred to herein as "Employees."

Plaintiffs assert that they and other individuals currently or formerly employed by G2 Secure Staff in the state of California ("Employees"), were subject to the same and/or similar policies, practices, guidelines, procedures and/or culture described herein. Plaintiffs further assert that they and all other Employees have suffered, and will continue to suffer, the same and/or similar Labor Code violations described herein.

Any and all claims alleged in this correspondence are asserted on behalf of Plaintiffs and all other current or former Employees who were employed by G2 Secure Staff in California, during the applicable statutory period and who have suffered the same and/or similar Labor Code violations alleged herein, as well as any other violations of the PAGA arising out of their employment with G2 Secure Staff that may be later discovered since the investigation is ongoing.

Because the investigation is ongoing, Plaintiffs reserve their right to assert any and all related facts, claims, and/or theories discovered after the sending of this correspondence on behalf of themselves and the current or former Employees that they seek to represent against G2 Secure Staff and/or other persons that may be discovered after the sending of this correspondence. Such other persons include, but are not limited to, those persons who have acted as an agent, subsidiary, servant, employee, co-conspirator, alter-ego, and/or joint venture of G2 Secure Staff, as well as those persons who caused and/or concurrently contributed to the various acts and/or omissions of each and every one of the others, including G2 Secure Staff, in proximately causing the wrongful conduct, harm, and/or damages alleged herein or otherwise participated in and/or ratified any or all of the acts or omissions complained of herein, and those who are acting within the authority and scope of G2 Secure Staff. *Atempa v. Pedrazzani*, 27 Cal.App.5th at 811-813.

**I. G2 Secure Staff Failed to Pay Minimum, Regular, Overtime, and/or Double Time Wages in Violation of Labor Code §§ 204, 206, 210, 212, 216, 221, 225.5, 510, 1174d, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198 and 1199 and IWC Wage Order No. 4-2001.**

Labor Code § 204 establishes the fundamental right of an employee in California to be timely paid wages for their work. Pursuant to Labor Code § 1197, an employer is prohibited from paying or causing its employees to be compensated at a rate less than the fixed minimum, as set by the commission, for all time worked. See also Labor Code § 1199 (making such conduct a misdemeanor); IWC Wage Order No. 4-2001, subdiv. 4.

Additionally, it is unlawful for an employer to employ persons for more than eight hours per day and/or forty hours per workweek without compensating them at the rate of one and one-half or two times the employee's regular pay rate, depending on the number of hours

worked. Labor Code §§ 510, 1198; see also IWC Wage Order No. 4-2001, subdiv. 3(A). Pursuant to Labor Code § 1194, an employee is permitted to recover any unpaid balance of the minimum wage or overtime compensation not paid for all hours worked. Moreover, any employer who causes an employee to be paid a wage lower than that of the fixed minimum is required to pay a civil penalty. Labor Code § 1197.1; see also IWC Wage Order No. 4-2001, subdiv. 20(A).

Plaintiffs assert that as a policy, practice, guideline, procedure, and/or culture G2 Secure Staff does not properly compensate its Employees for all hours worked. Plaintiffs contend that G2 Secure Staff required them and other Employees to perform work on behalf of G2 Secure Staff without compensation.

As a policy, practice, guideline, procedure, and/or culture, G2 Secure Staff requires its Employees to clock in and out of their job using a finger scan device on the wall. However, the device often did not work and Employees were required to use handwritten timesheets.

G2 Secure Staff Employees, including Plaintiffs, were often required to work off the clock. For example, Plaintiffs assert that G2 Secure Staff often required them and other Employees to clock out and continue working, depriving them proper wages for all hours worked, including overtime. For example, Employees are often forced to work off the clock because of flight delays and being understaffed. Often, Employees were required to wait for delayed flights and/or assist passengers at the airport, while being off the clock. As such, Plaintiffs and other Employees did not receive the minimum, overtime, and/or double-time compensation they are entitled to. G2 Secure Staff regularly shaves and/or shortens Employees' hours worked and does not compensate its employees for all time worked as required by California law.

In addition, Employees, including Plaintiffs, were regularly required to respond to calls and messages from their supervisors and/or managers outside of work hours without compensation for the time spent responding to calls and/or messages.

Employees are also required to complete various mandatory trainings and/or attend safety meetings while off the clock, without compensation.

Plaintiffs contend that as a policy, practice, guideline, procedure, and/or culture, G2 Secure Staff regularly requires Employees to work more than 8 hours per day and/or 40 hours per week, without being paid the appropriate overtime and/or double time compensation. Because G2 Secure Staff failed to appropriately pay overtime and/or double-time compensation to Employees who worked more than 8 hours per day and/or 40 hours per week, G2 Secure Staff did not pay its employees in accordance with California law.

Moreover, Plaintiffs assert that G2 Secure Staff has a policy, practice, guideline, procedure, and/or culture of automatically deducting a thirty-minute meal period from the hours worked by its Employees regardless of whether they were actually provided with an opportunity to take a thirty-minute meal period free from all work activities. G2 Secure Staff thus regularly engage in work-related activities during the time that G2 Secure Staff automatically deducts from their time worked.

Additionally, Plaintiffs allege that G2 Secure Staff fails to timely pay all earned wages. For instance, the paychecks Plaintiffs and other Employees receive from G2 Secure Staff do not include compensation for all hours worked and are often late, as described herein. Plaintiffs assert that despite notifying G2 Secure Staff of the error, G2 Secure Staff did not promptly remedy the issues by paying all wages earned and due.

Based on the foregoing, Plaintiffs assert that G2 Secure Staff engaged in conduct that violated California law by failing to compensate them and other Employees appropriately.

### II. G2 Secure Staff Failed to Provide Legally Compliant Meal Periods or Compensation in Lieu Thereof, in Violation of Labor Code §§ 204, 226.7 and 512 and IWC Wage Order No. 4-2001

Labor Code § 512 states, "[a]n employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Additionally, an employer is not permitted to employ a person for a work period of more than ten hours per day without providing the employee with a second meal period of at least thirty minutes. Labor Code § 512. Meal periods of no less than 30 minutes must be provided before the end of the employee's fifth and tenth hours of work, respectively. *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1041. California law further obligates employers to completely relieve its employees of all work and work-related responsibilities during the entirety of the legally required meal periods. Id. at 1040. In order to comply with their meal period obligations, employers must also relinquish all control over its employees, and cannot impede or discourage its employees from taking uninterrupted, work-free meal periods. Id. An employee who is required to perform any work-related task at any point during his or her meal period has not received a meal period in accordance with California law. Labor Code § 226.7.

If an employer fails to provide an employee with a legally compliant meal period, the employer **must** pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that a legally compliant meal period was not provided. Labor Code § 226.7; IWC Wage Order No. 4-2001, subdiv. 11(D). Premium wages under Labor

Code § 226.7 are wages due payable in accordance with the Labor Code. *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103-1114; see also Labor Code § 204.

As a policy, practice, guideline, procedure, and/or culture G2 Secure Staff regularly requires their employees to work more than 5 hours per workday. However, despite regularly working more than 5 hours per workday, Employees, such as Plaintiffs, were not provided with the reasonable opportunity to take meal periods that occurred before the 5th hour of work and/or that were free from all work and work-related responsibilities during the entirety of the 30-minute meal period.

Additionally, even though G2 Secure Staff Employees often worked more than 10 hours in a day, G2 Secure Staff failed to provide them with a second meal period of at least thirty minutes.

Plaintiffs assert that the demanding work schedule assigned to G2 Secure Staff Employees did not allow time for legally compliant meal periods. Moreover, Plaintiffs allege that as a policy, practice, guideline, procedure, and/or culture G2 Secure Staff does not schedule any meal periods for its employees.

Plaintiffs assert G2 Secure Staff failed to provide any relief for Employees to be able to take legally compliant breaks. In fact, Plaintiffs asserts that their supervisors often instructed them and other Employees not to take breaks and/or work through meal breaks, and often yelled at Employees for taking breaks.

Plaintiffs contend that this is due in part to G2 Secure Staff's requirement that its employees be readily available to perform their work duties during meal periods, including assisting passengers and/or customers at the airport, monitoring arrivals and departures, waiting by the gates, and transferring around the airport with a wheelchair, among other duties.

Plaintiffs contend that G2 Secure Staff has a policy, practice, guideline, procedure, and/or culture of automatically deducting 30 minutes for a meal period regardless of whether Employees were provided with the opportunity to take a legally compliant meal period. As such, G2 Secure Staff often adjusted its' Employees timesheets to reflect meal breaks, even though a compliant meal break was not taken.

Plaintiffs, therefore, contend that G2 Secure Staff has a policy, practice, guideline, procedure, and/or culture that requires G2 Secure Staff Employees to engage in their job duties for the entire duration of their work shift. As a result, G2 Secure Staff Employees are not provided with legally compliant meal periods.

Plaintiffs also contend that G2 Secure Staff requires Employees to carry a personal cell phone, a radio, and/or a tablet for the entire duration of their work shift, including during meal periods. G2 Secure Staff Employees were also expected to be readily available to perform work on behalf of G2 Secure Staff during meal periods, such as by responding to calls and/or messages from supervisors and/or co-workers, and monitoring flight arrivals, departures, and gates. As a result, G2 Secure Staff Employees were not provided with meal periods that were free from work or interruption.

Overall, G2 Secure Staff Employees were not provided with the opportunity to take meal periods that were free from work-related responsibilities. By imposing unbearable work schedules onto its non-exempt employees, G2 Secure Staff compelled, encouraged, and/or otherwise directed its non-exempt employees to work through their meal periods.

Plaintiffs further contend that G2 Secure Staff does not have a procedure for Employees to document non-compliant meal periods. As a result, G2 Secure Staff does not compensate Employees for non-compliant meal periods.

In addition, Plaintiffs allege that G2 Secure Staff failed to provide Plaintiffs and other Employees with suitable seating. Labor Code Section 1198, Wage Order No. 4, Section 14. Plaintiffs allege SMG regularly did not provide Employees with any break rooms, nor a place to sit throughout the entire duration of their shifts. SMG further did not allow Employees to sit when it did not interfere with the performance of their duties, including during breaks.

Based on the foregoing, Plaintiffs contend G2 Secure Staff has failed to comply with its meal period obligations under California law by not providing Employees with legally compliant meal periods or compensation in lieu thereof.

**III. G2 Secure Staff Failed to Provide Legally Compliant Rest Periods or Compensation in Lieu Thereof in Violation of Labor Code §§ 204, 226.7, 512 and IWC Wage Order No. 4-2001**

IWC Wage Order No. 4-2001, subdiv. 12(A) requires employers to authorize and permit off-duty rest periods for every four hours worked, or a major fraction thereof. Unless an employer relieves its employees of any and all work-related duties and also relinquishes all control over how its employees spend their time during rest periods, the employer has not authorized and permitted lawful off-duty rest periods. *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 269. If an employer fails to provide an employee with an off-duty rest period in accordance with California law, the employer is required to pay an employee one additional hour of pay at the employee's regular rate of compensation for each workday in which a lawful rest period was not provided. Labor Code § 226.7; See also IWC Wage Order No.

4-2001, subdiv. 12(B). Premium wages under Labor Code § 226.7 are wages due payable in accordance with the Labor Code. Murphy, 40 Cal.4th at 1103-1114; see also Labor Code § 204.

Plaintiffs and other Employees employed by G2 Secure Staff typically work more than 4 hours per workday. However, Plaintiffs allege that as a policy, practice, guideline, procedure, and/or culture, G2 Secure Staff regularly fails to authorize and permit Employees to take off-duty rest periods for every four hours worked, or a major fraction thereof, in violation of California law. Plaintiffs contend they and other Employees were denied legal rest periods largely due to G2 Secure Staff's requirement that Employees are to be readily available to perform their work duties at all times, as described above. In addition, Plaintiffs allege that G2 Secure Staff fails to schedule enough Employees so that Plaintiffs and other Employees could be relieved from their duties to take their meal and rest periods.

Plaintiffs further assert that G2 Secure Staff does not have a policy, practice, guideline, procedure, and/or culture for Employees to record non-compliant rest periods and fails to compensate Employees the required rest period premium for non-compliant rest periods. G2 Secure Staff's conduct thus constitutes a violation of California law.

### IV. G2 Secure Staff Failed to Timely Pay Wages Owed Upon Termination in Violation of Labor Code §§ 201-203, 213, 227.3, 256

Under Labor Code § 201, when an employer discharges an employee, all wages earned and unpaid at the time of discharge are immediately due and payable. Similarly, if an employee does not have a written contract for a definite period and quits his or her employment, the employee's wages are due and payable no later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his/her intention to quit, then the employee is entitled to his/her wages at the time of quitting. Labor Code § 202(a). If an employer willfully fails to pay all wages owed to an employee in accordance with Labor Code §§ 201 and 202, the employee's wages are to continue as a penalty, equal to one day of wages at the employee's regular rate of pay, starting from the date at which such wages were due until paid or until an action is commenced. Labor Code § 203. However, the wages are not to continue for more than a period of thirty days. Id.

Plaintiffs contend that G2 Secure Staff has a policy, practice, guideline, and/or culture of not timely paying all wages owed upon discharge nor paying the required waiting time penalties. For instance, as discussed herein, G2 Secure Staff failed to compensate Employees for all hours worked, failed to pay the appropriate overtime wages to Employees for hours worked in excess of eight per day and/or forty per week, and failed to pay the

required meal and/or rest period premiums to G2 Secure Staff Employees for non-compliant meal and/or rest periods.

Plaintiffs, therefore, contended that G2 Secure Staff failed to pay all wages owed to former Employees who separated from G2 Secure Staff within the statutory period in violation of California law.

### V. G2 Secure Staff Failed to Provide Paid Sick Days and Written Notice of the Amount of Sick Leave Available in Violation of Labor Code § 246.

California law requires that an employer provide 24 hours (or 3 days) of paid sick leave per year for full-time employees. Labor Code § 246. Employees are to earn a minimum of 1 hour of paid leave for every 30 hours worked. Id.

Plaintiffs allege that G2 Secure Staff has a policy, practice, guideline, procedure, and/or culture of failing to provide Employees with one hour of paid sick leave for every 30 hours worked in accordance with California law.

Plaintiffs further allege that G2 Secure Staff also failed to provide Employees with paid sick days since they were unable to accrue any such paid sick days at the rate provided by law as a result of G2 Secure Staff's failure to account for all time worked.

Plaintiffs also contend that G2 Secure Staff has a policy, practice, procedure, guideline, and/or culture of failing to provide written notice to Employees of their available sick leave, as such amounts are not included on the wage statements, nor are they provided with the information in separate writing on the designated pay date along with their wages. Accordingly, G2 Secure Staff has failed to comply with California law.

### VI. G2 Secure Staff Failed to Furnish Legally Compliant Wage Statements in Violation of Labor Code §§ 226, 226.3 and IWC Wage Order No. 4-2001

An employer is required to provide its employees with accurate and itemized wage statements. Labor Code § 226(a). Pursuant to Labor Code § 226(a), each wage statement must show "(1) gross wages earned, (2) total hours worked by the employee…(4) all deductions…(5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than the social security number, (8) the name and address of the legal entity that is the employer…(9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate…" See also IWC Wage Order No. 4-2001, subdiv. 7(A).

G2 Secure Staff failed to comply with Labor Code § 226 because they failed to provide Plaintiffs and other current or former Employees with legally compliant wage statements. Plaintiffs contend that G2 Secure Staff failed to provide wage statements that accurately reflect the gross wages and/or net wages earned due to G2 Secure Staff's failure to compensate Employees for all time worked, failure to pay the appropriate overtime compensation to Employees for hours worked beyond eight hours per day and/or forty hours per week, and failure to pay premium wages to Employees for non-compliant meal and/or rest periods, as discussed herein.

G2 Secure Staff also failed to provide wage statements that properly include the pay period information for each wage statement, the accurate rate of pay, the required available sick time, and/or the name of the legal entity that employed the G2 Secure Staff's Employees in violation of California law.

During the statutory period, G2 Secure Staff thus failed to comply with the requirements outlined by California law by failing to provide legally compliant wage statements to all current or former G2 Secure Staff Employees.

### VII. G2 Secure Staff Failed to Maintain Accurate Payroll Records in Violation of California Labor Code §§ 226(a) and 1174 and IWC Wage Order No. 4-2001

Labor Code § 1174 requires every employer to "keep a recording showing the names and addresses of all employees employed…" Labor Code § 1174 further requires "[e]very person employing labor in this state [to] keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily and the wages paid. Such records are to be kept according to the rules established by the commission for such purpose and must be kept on file for no less than three years. Id. An employer is further obliged under Labor Code § 226(b) to keep the information required by Labor Code § 226(a) and afford current or former employees the right to inspect or copy records pertaining to their employment. See also IWC Wage Order No. 4-2001, subdivs. 7, 19, and 20.

As discussed herein, G2 Secure Staff has a policy, practice, guideline, procedure, and/or culture of failing to maintain accurate employee information and payroll records which accurately reflect, for example, the gross and net wages earned as well as the total hours of time worked each day by Plaintiffs and other Employees.

Additionally, Plaintiffs are informed and believe that G2 Secure Staff fails to maintain a copy of all documents related to the hiring and/or employment of G2 Secure Staff Employees,

and/or fails to provide Employees with the opportunity to inspect or copy such documents upon request in violation of California law.

Therefore, Plaintiffs contend that G2 Secure Staff failed to comply with Labor Code §§ 226 and 1174.

### VIII. G2 Secure Staff Failed to Provide Copies of Signed Documents in Violation of Labor Code § 432

Pursuant to Labor Code § 432, an employer is obligated, upon request, to provide its employees with a copy of any and all documents signed in connection with obtaining or holding employment.

As stated herein, Plaintiffs assert, based on information and belief, that G2 Secure Staff failed to maintain a copy of all documents signed by Employees that relate to their hiring by and/or employment with G2 Secure Staff, and/or failed to provide a copy of such documents to Employees who requested a copy thereof in violation of Labor Code § 432. Therefore, Plaintiffs allege that G2 Secure Staff has failed to comply with California law.

### IX. G2 Secure Staff Failed to Reimburse Non-Exempt Employees for Necessary Work Expenses in Violation of Labor Code §§ 2800, 2802, 2804 and IWC Wage Order No. 4-2001

Labor Code § 2800 states that an employer shall indemnify employee losses caused by the employer's want of ordinary care. Accordingly, pursuant to Labor Code § 2802, an employee is entitled to reimbursement from his or her employer for all expenses or losses incurred as a result of employment. Moreover, when an employer requires uniforms to be worn by non-exempt employees, the employer shall provide and maintain such uniforms. IWC Wage Order No. 4-2001, subdiv. 9 defines "uniform" to include apparel of distinct color or design.

Plaintiffs assert that as a policy, practice, guideline, and/or procedure, G2 Secure Staff requires Employees to wear a uniform affixed with the G2 Secure Staff logo as a condition of their employment. However, G2 Secure Staff has only provided a shirt, and have not provided any jacket despite the cold weather. In addition, G2 Secure Staff required Plaintiffs and other Employees to wear black pants and black shoes. However, as a practice or procedure, G2 Secure Staff neither provides Employees with black pants and black shoes, nor reimburses Employees for the cost of purchasing and/or maintaining the required uniform in violation of California law.

In addition, Employees, including Plaintiffs, are required to use their personal cell phones and/or laptops for work-related issues such as communicating with supervisors and/or co-workers and tracking flight details, such as arrivals, departures, and gate changes. However, G2 Secure Staff fails to reimburse Employees for a percentage of cell phone bills nor the laptop.

In addition, G2 Secure Staff failed to reimburse Plaintiffs and other Employees for use of their personal vehicles and cleaning supplies.

G2 Secure Staff has, therefore, failed to reimburse Plaintiffs and other Employees for necessary work expenses in violation of California law.

**X. Plaintiffs May be Entitled to Attorneys' Fees and Costs**

The Act provides that "any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs. Labor Code § 2699(g)(1). Therefore, in the event that Plaintiffs and/or another similar representative is successful in a civil action against G2 Secure Staff, they are entitled to an award of attorneys' fees and costs. See also Labor Code §§ 218.5, 1194, 1193.6; Code Civ. Proc. § 1021.5.

## Conclusion

As described herein, Plaintiffs contend that they constitute "aggrieved employees" as the term is defined by Labor Code § 2699(c). Plaintiffs allege that the current or former G2 Secure Staff Employees that they seek to represent also constitute "aggrieved employees" under the statute.

As discussed herein, G2 Secure Staff violated the Labor Code and the relevant IWC Wage Order and thereby deprived Plaintiffs and other current or former Employees of their statutory rights and protections afforded to them. Plaintiffs have thus satisfied the prerequisites of the Act to serve as a representative of all current or former G2 Secure Staff Employees, the general public, and the state of California in order to enforce California labor laws and to seek civil penalties for the provisions both set forth herein as well as for those which may be later discovered on behalf of themselves and all others similarly situated.

/ / /
/ / /
/ / /
/ / /

Accordingly, if the Labor and Workforce Development Agency neither acts, nor declines to intervene within sixty-five days from the date of this correspondence, Plaintiffs may elect to initiate and/or amend a civil action, on behalf of themselves and all others similarly situated, to include the persons and allegations described herein and/or those discovered after sending this correspondence, subject to Labor Code §§ 2698 et seq., as well as other related claims arising out of their employment with G2 Secure Staff.

Sincerely,
**Consumer & Employment Lawyers**

R. Craig Clark
Alicja A. Urtnowski

Cc: *Via Electronic Mail*

Counsel for G2 SECURE STAFF, L.L.C.
Kathy Gao and Sarah J. Allen
kathygao@gbgllp.com; sarahallen@gbgllp.com
**GBG LLP**
633 West 5th Street, Suite 1500
Los Angeles, CA 90071
Telephone: (213) 358-2810
Facsimile: (213) 995-6382

# EXHIBIT 3

CONSUMER & EMPLOYMENT LAWYERS

3258 Fourth Avenue
San Diego, California 92103
Phone: (619) 239-1321
Facsimile: (888) 273-4554
consumerandemploymentlawyers.com
*Formerly known as Clark Law Group*

December 12, 2025

*Transmitted via Online Upload*

California Labor and Workforce Development Agency
ATTN: PAGA Administrator
1515 Clay Street, Suite 801
Oakland, CA 94612

**RE:** **Mohamed Nabil Amin, Dawit Negusse, and Elvissa Villarin v. G2 Secure Staff, L.L.C., Menzies Aviation (USA) Inc., and Air Menzies International (USA) Inc.**

**Second Amended Notice of Labor Code Violations Pursuant to Labor Code § 2699.3**

**LWDA Case Number: LWDA-CM-1091311-25**

Dear PAGA Administrator,

Consumer and Employment Lawyers represent **Mohamed Nabil Amin, Dawit Negusse, and Elvissa Villarin** ("Plaintiffs") in the above-captioned matter. This second amended PAGA Notice relates back to the Original PAGA Notice filed with the LWDA on April 09, 2025 as well as the subsequent Amended Notice. The purpose of this Second Amended PAGA Letter is to inform you that Plaintiffs, on behalf of themselves and all others similarly situated, assert the legal rights granted to them under the Private Attorneys General Act (the "Act"), as set forth in California Labor Code ("Labor Code") §§ 2698 et seq. This correspondence includes the current facts and theories to support the violations alleged herein. This correspondence will also be sent to Counsel for **G2 Secure Staff, L.L.C.**, via electronic mail and to the agent for service of process for **Menzies Aviation (USA) Inc.,** and **Air Menzies International (USA) Inc.** via certified mail ("Defendants"). Therefore, this correspondence serves to satisfy the notice

requirements of the Act. By uploading and sending this correspondence in the manner set forth in the Act, Plaintiffs are complying with the Act's statutory notice requirements.

## Factual Statement and Theories of Liability

Mohamed Nabil Amin was employed by G2 Secure Staff as a non-exempt hourly employee from approximately June 2016 to September 2024. Dawit Negusse has been employed by Defendants as a non-exempt hourly employee from approximately October 2023 to current. Elvissa Villarin has been employed by Defendants from approximately March 2017 to current. Throughout Plaintiffs' employment, they were assigned to work at the San Diego, California, airport location.

**G2 Secure Staff, LLC** is a Texas limited liability company that does business in California. Specifically, it is in the business of airport customer services, including passenger assistance and wheelchair services, bag porter services, skycap services, security services, checkpoint customer service agents, unaccompanied minor escort services, janitorial services, cabin-cleaning, and utility services. See https://www.g2securestaff.com/

**Menzies Aviation (USA) Inc.** is a Delaware Corporation that does business globally. Specifically, it is in the business of ground services, fueling, cargo, executive services, and offline services. See https://menziesaviation.com

**Air Menzies International (USA) Inc.** is a Delaware Corporation that does business globally. Specifically, it is in the business of ground services, fueling, cargo, executive services, and offline services. See https://menziesaviation.com

**Menzies Aviation (USA) Inc.** and **Air Menzies International (USA) Inc.** are together referred to as "Menzies."

On or about August 26, 2025, Menzies acquired G2 Secure Staff, LLC. G2's operations transitioned immediately under the Menzies Aviation brand, adopting Menzies' global standards. Menzies, "the leading service partner to the world's airports and airlines, has completed its acquisition of G2 Secure Staff, an aviation service partner of choice for major airlines across the United States." "The $305m deal strengthens Menzies position as the world's largest aviation services provider, operating at 350 airports in 65 countries, powered by a team of 65,000 highly trained people. The deal is expected to boost Menzies' Group revenue by 20% to more than $3.1 billion, based on FY2024 figures." "The acquisition positions Menzies as the leading player by airports served in the U.S. – the world's largest and most dynamic market." "G2's operations will be rebranded as Menzies Aviation. Integration will begin immediately, deploying Menzies' global standards for training, safety,

sustainability and technology across all new operations to ensure a seamless transition for employees, customers and partners". See https://menziesaviation.com/news/menzies-aviation-doubles-u-s-footprint-with-completion-of-305m-acquisition-of-g2/. Article posted on the Menzies website on the 26th of August 2025.

On or about August 26, 2025, Menzies sent a Welcome Letter to all current G2 Staff Employees, informing them of their acquisition of G2 Secure Staff, LLC. Menzies further released an Employee Welcome Book and "Acquisition Q&A for Menzies & G2 employees" informing them that along with the acquisition and integration, they are now employees of Menzies, including their "transition to Menzies uniforms."

Collectively, **G2 Secure Staff, LLC, Menzies Aviation (USA) Inc., and Air Menzies International (USA) Inc.** are referred to herein as "Defendants."

Plaintiffs bring this case on behalf of themselves, and all individuals currently or formerly employed by Defendants in the state of California as non-exempt employees ("non-exempt employees').

In addition, Plaintiffs Amin and Villarin bring this case on behalf of themselves and all individuals currently or formerly employed by Defendants in the state of California, who had or have any job title and position which was misclassified as exempt by Defendants ("misclassified employees"). In about 2024, Defendants misclassified Plaintiff Amin as "exempt" in order to avoid requirements imposed by the Labor Code. Similarly, in about 2023, Defendants misclassified Plaintiff Villarin as "exempt" in order to avoid requirements imposed by the Labor Code. Plaintiffs Amin and Villarin worked well in excess of 40 hours per week, and routinely worked through meal and rest breaks in the course of business. While misclassified as an exempt employee, Plaintiff Amin and Villarin had no authority to hire or fire employees, and were required to perform non-exempt job duties lacking managerial or discretionary character. Plaintiff Amin's and Villarin's independent judgment was restricted. Their role and authority was limited to that of a team member, as opposed to leadership of other team members.

Plaintiffs are informed and believe the wage/hour violations described herein occurred to other misclassified employees in California. In summary, Defendant's misclassification policies and/or practices resulted in a failure to compensate Mr. Amin, Ms. Villarin, and other class members for hours worked.

Collectively, all non-exempt employees and misclassified employees are referred to herein as "Employees."

Plaintiffs assert that they and other individuals currently or formerly employed by Defendants in the state of California ("Employees"), were subject to the same and/or similar policies, practices, guidelines, procedures and/or culture described herein. Plaintiffs further assert that they and all other Employees have suffered, and will continue to suffer, the same and/or similar Labor Code violations described herein.

Any and all claims alleged in this correspondence are asserted on behalf of Plaintiffs and all other current or former Employees who were employed by Defendants in California, during the applicable statutory period and who have suffered the same and/or similar Labor Code violations alleged herein, as well as any other violations of the PAGA arising out of their employment with Defendants that may be later discovered since the investigation is ongoing.

Because the investigation is ongoing, Plaintiffs reserve their right to assert any and all related facts, claims, and/or theories discovered after the sending of this correspondence on behalf of themselves and the current or former Employees that they seek to represent against Defendants and/or other persons that may be discovered after the sending of this correspondence. Such other persons include, but are not limited to, those persons who have acted as an agent, subsidiary, servant, employee, co-conspirator, alter-ego, and/or joint venture of Defendants, as well as those persons who caused and/or concurrently contributed to the various acts and/or omissions of each and every one of the others, including Defendants, in proximately causing the wrongful conduct, harm, and/or damages alleged herein or otherwise participated in and/or ratified any or all of the acts or omissions complained of herein, and those who are acting within the authority and scope of Defendants. *Atempa v. Pedrazzani*, 27 Cal.App.5th at 811-813.

**I. Defendants Failed to Pay Minimum, Regular, Overtime, and/or Double Time Wages in Violation of Labor Code §§ 204, 206, 210, 212, 216, 221, 225.5, 510, 1174d, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198 and 1199 and IWC Wage Order No. 4-2001.**

Labor Code § 204 establishes the fundamental right of an employee in California to be timely paid wages for their work. Pursuant to Labor Code § 1197, an employer is prohibited from paying or causing its employees to be compensated at a rate less than the fixed minimum, as set by the commission, for all time worked. See also Labor Code § 1199 (making such conduct a misdemeanor); IWC Wage Order No. 4-2001, subdiv. 4.

Additionally, it is unlawful for an employer to employ persons for more than eight hours per day and/or forty hours per workweek without compensating them at the rate of one and one-half or two times the employee's regular pay rate, depending on the number of hours worked. Labor Code §§ 510, 1198; see also IWC Wage Order No. 4-2001, subdiv. 3(A). Pursuant

to Labor Code § 1194, an employee is permitted to recover any unpaid balance of the minimum wage or overtime compensation not paid for all hours worked. Moreover, any employer who causes an employee to be paid a wage lower than that of the fixed minimum is required to pay a civil penalty. Labor Code § 1197.1; see also IWC Wage Order No. 4-2001, subdiv. 20(A).

Plaintiffs assert that as a policy, practice, guideline, procedure, and/or culture Defendants do not properly compensate its Employees for all hours worked. Plaintiffs contend that Defendants required them and other Employees to perform work on behalf of Defendants without compensation.

As a policy, practice, guideline, procedure, and/or culture, Defendants requires its Employees to clock in and out of their job using a finger scan device on the wall. However, the device often did not work, and Employees were required to use handwritten timesheets.

Defendants' Employees, including Plaintiffs, were often required to work off the clock. For example, Plaintiffs assert that Defendants often required them and other Employees to clock out and continue working, depriving them proper wages for all hours worked, including overtime. For example, Employees are often forced to work off the clock because of flight delays and being understaffed. Often, Employees were required to wait for delayed flights and/or assist passengers at the airport, while being off the clock. As such, Plaintiffs and other Employees did not receive the minimum, overtime, and/or double-time compensation they are entitled to. Defendants regularly shave and/or shorten Employees' hours worked and do not compensate their employees for all time worked as required by California law.

In addition, Employees, including Plaintiffs, were regularly required to respond to calls and messages from their supervisors and/or managers outside of work hours without compensation for the time spent responding to calls and/or messages.

Employees are also required to complete various mandatory trainings and/or attend safety meetings while off the clock, without compensation.

Plaintiffs contend that as a policy, practice, guideline, procedure, and/or culture, Defendants regularly require Employees to work more than 8 hours per day and/or 40 hours per week, without being paid the appropriate overtime and/or double time compensation. Because Defendants failed to appropriately pay overtime and/or double-time compensation to Employees who worked more than 8 hours per day and/or 40 hours per week, Defendants did not pay their employees in accordance with California law.

Moreover, Plaintiffs assert that Defendants have a policy, practice, guideline, procedure, and/or culture of automatically deducting a thirty-minute meal period from the hours worked by its Employees regardless of whether they were actually provided with an opportunity to take a thirty-minute meal period free from all work activities. Defendants thus regularly engage in work-related activities during the time that Defendants automatically deduct from their time worked.

Additionally, Plaintiffs allege that Defendants fail to timely pay all earned wages. For instance, the paychecks Plaintiffs and other Employees receive from Defendants do not include compensation for all hours worked and are often late, as described herein. Plaintiffs assert that despite notifying Defendants of the error, Defendants did not promptly remedy the issues by paying all wages earned and due.

Based on the foregoing, Plaintiffs assert that Defendants engaged in conduct that violated California law by failing to compensate them and other Employees appropriately.

### II. Defendants Failed to Provide Legally Compliant Meal Periods or Compensation in Lieu Thereof, in Violation of Labor Code §§ 204, 226.7 and 512 and IWC Wage Order No. 4-2001

Labor Code § 512 states, "[a]n employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Additionally, an employer is not permitted to employ a person for a work period of more than ten hours per day without providing the employee with a second meal period of at least thirty minutes. Labor Code § 512. Meal periods of no less than 30 minutes must be provided before the end of the employee's fifth and tenth hours of work, respectively. *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1041. California law further obligates employers to completely relieve its employees of all work and work-related responsibilities during the entirety of the legally required meal periods. Id. at 1040. In order to comply with their meal period obligations, employers must also relinquish all control over its employees, and cannot impede or discourage its employees from taking uninterrupted, work-free meal periods. Id. An employee who is required to perform any work-related task at any point during his or her meal period has not received a meal period in accordance with California law. Labor Code § 226.7.

If an employer fails to provide an employee with a legally compliant meal period, the employer **must** pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that a legally compliant meal period was not provided. Labor Code § 226.7; IWC Wage Order No. 4-2001, subdiv. 11(D). Premium wages under Labor

Code § 226.7 are wages due payable in accordance with the Labor Code. *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103-1114; see also Labor Code § 204.

As a policy, practice, guideline, procedure, and/or culture, Defendants regularly require their employees to work more than 5 hours per workday. However, despite regularly working more than 5 hours per workday, Employees, such as Plaintiffs, were not provided with the reasonable opportunity to take meal periods that occurred before the 5th hour of work and/or that were free from all work and work-related responsibilities during the entirety of the 30-minute meal period.

Additionally, even though Defendants' Employees often worked more than 10 hours in a day, Defendants failed to provide them with a second meal period of at least thirty minutes.

Plaintiffs assert that the demanding work schedule assigned to Defendants' Employees did not allow time for legally compliant meal periods. Moreover, Plaintiffs allege that as a policy, practice, guideline, procedure, and/or culture, Defendants does not schedule any meal periods for its employees.

Plaintiffs assert Defendants failed to provide any relief for Employees to be able to take legally compliant breaks. In fact, Plaintiffs assert that their supervisors often instructed them and other Employees not to take breaks and/or work through meal breaks, and often yelled at Employees for taking breaks.

Plaintiffs contend that this is due in part to Defendants' requirement that its employees be readily available to perform their work duties during meal periods, including assisting passengers and/or customers at the airport, monitoring arrivals and departures, waiting by the gates, and transferring around the airport with a wheelchair, among other duties.

Plaintiffs contend that Defendants have a policy, practice, guideline, procedure, and/or culture of automatically deducting 30 minutes for a meal period regardless of whether Employees were provided with the opportunity to take a legally compliant meal period. As such, Defendants often adjusted their Employees' timesheets to reflect meal breaks, even though a compliant meal break was not taken.

Plaintiffs, therefore, contend that Defendants have a policy, practice, guideline, procedure, and/or culture that requires Defendants' Employees to engage in their job duties for the entire duration of their work shift. As a result, Defendants' Employees are not provided with legally compliant meal periods.

Plaintiffs also contend that Defendants require Employees to carry a personal cell phone, a radio, and/or a tablet for the entire duration of their work shift, including during meal periods. Defendants' Employees were also expected to be readily available to perform work on behalf of Defendants during meal periods, such as by responding to calls and/or messages from supervisors and/or co-workers, and monitoring flight arrivals, departures, and gates. As a result, Defendants' Employees were not provided with meal periods that were free from work or interruption.

Overall, Defendants Employees were not provided with the opportunity to take meal periods that were free from work-related responsibilities. By imposing unbearable work schedules onto its non-exempt employees, Defendants compelled, encouraged, and/or otherwise directed its non-exempt employees to work through their meal periods.

Plaintiffs further contend that Defendants do not have a procedure for Employees to document non-compliant meal periods. As a result, Defendants do not compensate Employees for non-compliant meal periods.

In addition, Plaintiffs allege that Defendants failed to provide Plaintiffs and other Employees with suitable seating. Labor Code Section 1198, Wage Order No. 4, Section 14. Plaintiffs allege SMG regularly did not provide Employees with any break rooms, nor a place to sit throughout the entire duration of their shifts. Defendants further did not allow Employees to sit when it did not interfere with the performance of their duties, including during breaks.

Based on the foregoing, Plaintiffs contend Defendants have failed to comply with their meal period obligations under California law by not providing Employees with legally compliant meal periods or compensation in lieu thereof.

**III. Defendants Failed to Provide Legally Compliant Rest Periods or Compensation in Lieu Thereof in Violation of Labor Code §§ 204, 226.7, 512 and IWC Wage Order No. 4-2001**

IWC Wage Order No. 4-2001, subdiv. 12(A) requires employers to authorize and permit off-duty rest periods for every four hours worked, or a major fraction thereof. Unless an employer relieves its employees of any and all work-related duties and also relinquishes all control over how its employees spend their time during rest periods, the employer has not authorized and permitted lawful off-duty rest periods. *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 269. If an employer fails to provide an employee with an off-duty rest period in accordance with California law, the employer is required to pay an employee one additional hour of pay at the employee’s regular rate of compensation for each workday in which a lawful rest period was not provided. Labor Code § 226.7; See also IWC Wage Order No.

4-2001, subdiv. 12(B). Premium wages under Labor Code § 226.7 are wages due payable in accordance with the Labor Code. Murphy, 40 Cal.4th at 1103-1114; see also Labor Code § 204.

Plaintiffs and other Employees employed by Defendants typically work more than 4 hours per workday. However, Plaintiffs allege that as a policy, practice, guideline, procedure, and/or culture, Defendants regularly fails to authorize and permit Employees to take off-duty rest periods for every four hours worked, or a major fraction thereof, in violation of California law. Plaintiffs contend they and other Employees were denied legal rest periods largely due to Defendant's requirement that Employees are to be readily available to perform their work duties at all times, as described above. In addition, Plaintiffs allege that Defendants fails to schedule enough Employees so that Plaintiffs and other Employees could be relieved from their duties to take their meal and rest periods.

Plaintiffs further assert that Defendants do not have a policy, practice, guideline, procedure, and/or culture for Employees to record non-compliant rest periods and fail to compensate Employees the required rest period premium for non-compliant rest periods. Defendants' conduct thus constitutes a violation of California law.

**IV. Defendants Failed to Timely Pay Wages Owed Upon Termination in Violation of Labor Code §§ 201-203, 213, 227.3, 256**

Under Labor Code § 201, when an employer discharges an employee, all wages earned and unpaid at the time of discharge are immediately due and payable. Similarly, if an employee does not have a written contract for a definite period and quits his or her employment, the employee's wages are due and payable no later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his/her intention to quit, then the employee is entitled to his/her wages at the time of quitting. Labor Code § 202(a). If an employer willfully fails to pay all wages owed to an employee in accordance with Labor Code §§ 201 and 202, the employee's wages are to continue as a penalty, equal to one day of wages at the employee's regular rate of pay, starting from the date at which such wages were due until paid or until an action is commenced. Labor Code § 203. However, the wages are not to continue for more than a period of thirty days. Id.

Plaintiffs contend that Defendants have a policy, practice, guideline, and/or culture of not timely paying all wages owed upon discharge, nor paying the required waiting time penalties. For instance, as discussed herein, Defendants failed to compensate Employees for all hours worked, failed to pay the appropriate overtime wages to Employees for hours worked in excess of eight per day and/or forty per week, and failed to pay the required meal

and/or rest period premiums to Defendants' Employees for non-compliant meal and/or rest periods.

Plaintiffs, therefore, contended that Defendants failed to pay all wages owed to former Employees who separated from Defendants within the statutory period in violation of California law.

### V. Defendants Failed to Provide Paid Sick Days and Written Notice of the Amount of Sick Leave Available in Violation of Labor Code § 246.

California law requires that an employer provide 24 hours (or 3 days) of paid sick leave per year for full-time employees. Labor Code § 246. Employees are to earn a minimum of 1 hour of paid leave for every 30 hours worked. Id.

Plaintiffs allege that Defendants has a policy, practice, guideline, procedure, and/or culture of failing to provide Employees with one hour of paid sick leave for every 30 hours worked in accordance with California law.

Plaintiffs further allege that Defendants also failed to provide Employees with paid sick days since they were unable to accrue any such paid sick days at the rate provided by law as a result of Defendants' failure to account for all time worked.

Plaintiffs also contend that Defendants have a policy, practice, procedure, guideline, and/or culture of failing to provide written notice to Employees of their available sick leave, as such amounts are not included on the wage statements, nor are they provided with the information in separate writing on the designated pay date along with their wages. Accordingly, Defendants have failed to comply with California law.

### VI. Defendants Failed to Furnish Legally Compliant Wage Statements in Violation of Labor Code §§ 226, 226.3 and IWC Wage Order No. 4-2001

An employer is required to provide its employees with accurate and itemized wage statements. Labor Code § 226(a). Pursuant to Labor Code § 226(a), each wage statement must show "(1) gross wages earned, (2) total hours worked by the employee…(4) all deductions…(5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than the social security number, (8) the name and address of the legal entity that is the employer…(9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate…" See also IWC Wage Order No. 4-2001, subdiv. 7(A).

Defendants failed to comply with Labor Code § 226 because they failed to provide Plaintiffs and other current or former Employees with legally compliant wage statements. Plaintiffs contend that Defendants failed to provide wage statements that accurately reflect the gross wages and/or net wages earned due to Defendant's failure to compensate Employees for all time worked, failure to pay the appropriate overtime compensation to Employees for hours worked beyond eight hours per day and/or forty hours per week, and failure to pay premium wages to Employees for non-compliant meal and/or rest periods, as discussed herein.

Defendants also failed to provide wage statements that properly include the pay period information for each wage statement, the accurate rate of pay, the required available sick time, and/or the name of the legal entity that employed the Defendants' Employees in violation of California law.

During the statutory period, Defendants thus failed to comply with the requirements outlined by California law by failing to provide legally compliant wage statements to all current or former Defendants' Employees.

### VII. Defendants Failed to Maintain Accurate Payroll Records in Violation of California Labor Code §§ 226(a) and 1174 and IWC Wage Order No. 4-2001

Labor Code § 1174 requires every employer to "keep a recording showing the names and addresses of all employees employed…" Labor Code § 1174 further requires "[e]very person employing labor in this state [to] keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily and the wages paid. Such records are to be kept according to the rules established by the commission for such purpose and must be kept on file for no less than three years. Id. An employer is further obliged under Labor Code § 226(b) to keep the information required by Labor Code § 226(a) and afford current or former employees the right to inspect or copy records pertaining to their employment. See also IWC Wage Order No. 4-2001, subdivs. 7, 19, and 20.

As discussed herein, Defendants have a policy, practice, guideline, procedure, and/or culture of failing to maintain accurate employee information and payroll records which accurately reflect, for example, the gross and net wages earned as well as the total hours of time worked each day by Plaintiffs and other Employees.

Additionally, Plaintiffs are informed and believe that Defendants fail to maintain a copy of all documents related to the hiring and/or employment of Defendants' Employees, and/or

fail to provide Employees with the opportunity to inspect or copy such documents upon request in violation of California law.

Therefore, Plaintiffs contend that Defendants failed to comply with Labor Code §§ 226 and 1174.

**VIII. Defendants Failed to Provide Copies of Signed Documents in Violation of Labor Code § 432**

Pursuant to Labor Code § 432, an employer is obligated, upon request, to provide its employees with a copy of any and all documents signed in connection with obtaining or holding employment.

As stated herein, Plaintiffs assert, based on information and belief, that Defendants failed to maintain a copy of all documents signed by Employees that relate to their hiring by and/or employment with Defendants, and/or failed to provide a copy of such documents to Employees who requested a copy thereof in violation of Labor Code § 432. Therefore, Plaintiffs allege that Defendants has failed to comply with California law.

**IX. Defendants Failed to Reimburse Non-Exempt Employees for Necessary Work Expenses in Violation of Labor Code §§ 2800, 2802, 2804 and IWC Wage Order No. 4-2001**

Labor Code § 2800 states that an employer shall indemnify employee losses caused by the employer's want of ordinary care. Accordingly, pursuant to Labor Code § 2802, an employee is entitled to reimbursement from his or her employer for all expenses or losses incurred as a result of employment. Moreover, when an employer requires uniforms to be worn by non-exempt employees, the employer shall provide and maintain such uniforms. IWC Wage Order No. 4-2001, subdiv. 9 defines "uniform" to include apparel of distinct color or design.

Plaintiffs assert that as a policy, practice, guideline, and/or procedure, Defendants require Employees to wear a uniform affixed with the Defendants' logo as a condition of their employment. However, Defendants have only provided a shirt, and have not provided any jacket despite the cold weather. In addition, Defendants required Plaintiffs and other Employees to wear black pants and black shoes. However, as a practice or procedure, Defendants neither provide Employees with black pants and black shoes, nor reimburse Employees for the cost of purchasing and/or maintaining the required uniform in violation of California law.

In addition, Employees, including Plaintiffs, are required to use their personal cell phones and/or laptops for work-related issues such as communicating with supervisors and/or co-

workers and tracking flight details, such as arrivals, departures, and gate changes. However, Defendants fail to reimburse Employees for a percentage of cell phone bills nor the laptop.

In addition, Defendants failed to reimburse Plaintiffs and other Employees for use of their personal vehicles and cleaning supplies.

Defendants have, therefore, failed to reimburse Plaintiffs and other Employees for necessary work expenses in violation of California law.

**X. Plaintiffs May be Entitled to Attorneys' Fees and Costs**

The Act provides that "any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs. Labor Code § 2699(g)(1). Therefore, in the event that Plaintiffs and/or another similar representative is successful in a civil action against Defendants, they are entitled to an award of attorneys' fees and costs. See also Labor Code §§ 218.5, 1194, 1193.6; Code Civ. Proc. § 1021.5.

**Conclusion**

As described herein, Plaintiffs contend that they constitute "aggrieved employees" as the term is defined by Labor Code § 2699(c). Plaintiffs allege that the current or former Defendants' Employees that they seek to represent also constitute "aggrieved employees" under the statute.

As discussed herein, Defendants violated the Labor Code and the relevant IWC Wage Order and thereby deprived Plaintiffs and other current or former Employees of their statutory rights and protections afforded to them. Plaintiffs have thus satisfied the prerequisites of the Act to serve as a representative of all current or former Defendants Employees, the general public, and the state of California in order to enforce California labor laws and to seek civil penalties for the provisions both set forth herein as well as for those which may be later discovered on behalf of themselves and all others similarly situated.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

Accordingly, if the Labor and Workforce Development Agency neither acts, nor declines to intervene within sixty-five days from the date of this correspondence, Plaintiffs may elect to initiate and/or amend a civil action, on behalf of themselves and all others similarly situated, to include the persons and allegations described herein and/or those discovered after sending this correspondence, subject to Labor Code §§ 2698 et seq., as well as other related claims arising out of their employment with Defendants.

Sincerely,
**Consumer & Employment Lawyers**

R. Craig Clark
Alicja A. Urtnowski

Cc: *Via Electronic Mail*

Counsel for G2 SECURE STAFF, L.L.C.
Kathy Gao and Sarah J. Allen
kathygao@gbgllp.com; sarahallen@gbgllp.com
**GBG LLP**
633 West 5th Street, Suite 1500
Los Angeles, CA 90071
Telephone: (213) 358-2810
Facsimile: (213) 995-6382

*Cc: Via Certified Mail*

**Menzies Aviation (USA) Inc.**
**c/o CSC - LAWYERS INCORPORATING SERVICE**
**2710 GATEWAY OAKS DRIVE STE 150N**
**SACRAMENTO, CA**

**Air Menzies International (USA) Inc.**
**c/o CSC - LAWYERS INCORPORATING SERVICE**
**2710 GATEWAY OAKS DRIVE STE 150N**
**SACRAMENTO, CA**

# CERTIFICATE OF SERVICE

I am a citizen of the United States and employed in San Diego County, California. I am over the age of eighteen years and not a party to the within entitled action. My business address is 3258 Fourth Ave. San Diego, CA 92103.

On February 26, 2026, I served a copy of the within document(s):

1. **FIRST AMENDED COMPLAINT**

[X] **BY NOTICE OF ELECTRONIC FILING**, which is a notice automatically generated by the CM/ECF system at the time the document listed above was filed with this Court, to lead counsel listed by CM/ECF as "ATTORNEY TO BE NOTICED"

KATHY H. GAO & SARAH J. ALLEN
kathygao@gbgllp.com; sarahallen@gbgllp.com
GBG Employment Defense Counsel
633 West 5th Street, Suite 1500
Los Angeles, California 90071
Attorney for Defendants

***Attorneys for Defendant***
*G2 SECURE STAFF, L.L.C.*

Executed on February 26, 2026, in San Diego, California. I declare under penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct.

/s/ Karen Martinez

Karen Martinez