UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MOHAMED NABIL AMIN, et al.,

                                Plaintiffs,

v.

G2 SECURE STAFF, L.L.C., et al.,

                                Defendants.

Case No.:  25-cv-02019-AJB-BLM

**ORDER GRANTING MOTION TO COMPEL PLAINTIFF MOHAMED NABIL AMIN'S CLAIMS TO ARBITRATION**

**(Doc. No. 32)**

Before the Court is a motion filed by Defendant G2 Secure Staff, LLC ("G2"), seeking the Court to compel the claims of Plaintiff Mohamed Nabil Amin ("Amin") to arbitration. (Doc. No. 32.) Defendants Menzies Aviation (USA) Inc. and Air Menzies International, (USA) Inc. (collectively, "Menzies") joined in the motion. (Doc. No. 43.) Amin filed an opposition (Doc. No. 41), to which G2 replied (Doc. No. 45).[1] For the reasons set forth below, the Court **GRANTS** the motion.

I.    **BACKGROUND**

A.    **Procedural Background**

The instant action is a wage-and-hour putative class action asserting that Defendants

---

[1]    The Court finds this motion suitable for determination on the papers. *See* CivLR 7.1.d.1.

25-cv-02019-AJB-BLM

G2 and Menzies (collectively, "Defendants") misclassified Plaintiffs and other employees at San Diego International Airport as "'exempt' in order to avoid requirements imposed by the Labor Code." (Doc. No. 27, First Am. Compl. ("FAC"), at ¶ 2.) Plaintiffs Amin and Dawit Negusse ("Negusse") filed the instant action in state court on June 16, 2025. (Doc. No. 1-2.) G2 removed the instant action on August 6, 2025, on the basis of diversity jurisdiction pursuant to the Class Action Fairness Act. (Doc. No. 1.) G2's answer, filed concurrently, asserts arbitration agreements as an affirmative defense. (Doc. No. 2 at 3.)

The next day, Magistrate Judge Barbara Lynn Major issued an order setting an Early Neutral Evaluation Conference ("ENE") and Case Management Conference ("CMC") for September 10, 2025. (Doc. No. 3 ("ENE Order").) As required by the ENE Order (*see id.* ¶¶ 4, 6), the parties filed a joint discovery plan and lodged confidential settlement statements with Judge Major's chambers in advance of the conferences (*see* Doc. No. 9). After holding the ENE and CMC (Doc. No. 10), Judge Major issued a scheduling order, setting deadlines regulating discovery and other pre-trial proceedings (Doc. No. 11). As required by the scheduling order (Doc. No. 11 ¶ 1), the parties filed a joint motion for a protective order (Doc. No. 13), which the Court granted (Doc. No. 15).

On October 29, 2025, the parties filed a joint motion to submit Negusse's claims to arbitration based on "the arbitration agreement that he signed in connection with his employment with Defendant." (Doc. No. 16 at 2.) The Court granted the motion the same day. (Doc. No. 17.)

On December 9, 2025, the parties filed a joint motion requesting to extend the deadline to amend the pleadings because Plaintiffs intended to add Elvissa Villarin as a named plaintiff and the California Labor and Workforce Development Agency required sixty-five days to determine whether it intended to investigate the alleged violations. (Doc. No. 18.) The Court granted the motion, extending the deadline to February 26, 2026. (Doc. No. 19.)

On February 20, 2026, G2 filed a motion to compel Amin's claims to arbitration; however, on February 26, 2026, the parties timely filed a joint motion for leave to file the

25-cv-02019-AJB-BLM

FAC (Doc. No. 25), which the Court granted, mooting the motion to compel arbitration (Doc. No. 26). Plaintiffs filed the FAC the next day. (Doc. No. 27.) In the operative complaint, Plaintiffs assert eleven causes of action against Defendants: (1) failure to timely pay minimum wages and overtime/double time compensation, (2) failure to provide legally compliant meal periods or compensation in lieu thereof, (3) failure to provide legally compliant rest periods or compensation in lieu thereof, (4) failure to pay all wages owed upon separation, (5) failure to provide paid sick leave and written notice of the amount of sick leave available, (6) failure to furnish accurate itemized wage statements, (7) failure to maintain accurate records, (8) failure to provide copies of signed documents, (9) failure to reimburse for necessary work expenses, (10) violation of California's Unfair Competition Law ("UCL"), and (11) violation of the Private Attorneys General Act of 2004 ("PAGA"). (*See generally id.*)

Two weeks later, Defendants again moved to compel arbitration, pointing to two arbitration agreements: one from 2022 when he initially applied to work for G2 and one from 2023 when he applied for a promotion. (Doc. No. 32-2 at 6–8 (2022 Arbitration Agreement), 9–13 (2023 Arbitration Agreement).) Amin challenges the validity of both. (*See generally* Doc. No. 41.)

### B.    Factual Background

Amin worked for G2 from approximately August 2022 to September 2024, although he worked for S.A.S. Services Group, Inc. ("S.A.S") at the San Diego International Airport before G2 acquired S.A.S. (Doc. No. 32-1 at 7.) Upon the acquisition, Amin applied for and accepted a position with G2.[2] (*Id.*) Defendants state that "[a]s part of the application process, Plaintiff Amin was required to (a) register for his own individual-specific account using his email address, and (b) enter a unique password in order to log into the system and submit his application for employment with G2." (Doc. No. 32-1 at 7.) Next, in the online

---

[2]    Amin reports being employed by Defendants since 2016 but also does not dispute that "his first job application to G2" was submitted in August 22. (*See, e.g.*, Doc. No. 41 at 8, 9, 19.)

application system, Amin "was first presented with an Electronic Signature Notice and Consent disclosure form that informed him that, among other things, when he types his name into a textbox in the online portal, it constitutes his electronic signature." (*Id.*) Amin "was required to indicate his agreement to electronic signatures." (*Id.*) Next, Amin was asked to enter his personal contact information, work history, and educational background. (*Id.*) Then, Amin was presented an arbitration agreement ("2022 Arbitration Agreement") which he "was required to scroll through," type his name into a textbox, and "select one of two radio buttons marked 'Accept' or 'Decline'" "in order to continue the online application process and submit his application." (*Id.* at 7–8.) Defendants assert that, "[a]ccording to G2's online application system," Amin "accessed and electronically signed the 2022 Arbitration Agreement" on August 26, 2022, "by typing his name into a textbox" and "select[ing] the radio button marked 'Accept.'" (*Id.*; *see also* Doc. No. 32-2 at 8.)

*Fig. 1:*
*Signature Page of 2022 Arbitration Agreement*

G2 AND ITS EMPLOYEES ARE SUBJECT TO A MANDATORY BINDING ARBITRATION PROGRAM TO THE EXTENT ALLOWED BY THE LAW. EMPLOYEES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT G2 IS AN "AT WILL" EMPLOYER AND THAT EMPLOYEES ARE EMPLOYED ON AN "AT WILL" BASIS.

Julie Gostic
Sr. Vice President, HR and Administration

ELECTRONIC SIGNATURE: Please type your legal name (Mohamed Amin) into the signature field below:

Enter Signature Here .                                    Mohamed Amin
                                                          Accepted

(Doc. No. 32-2 at 8)

Next, Defendants state that, on May 9, 2023, Amin went through the same process of logging into the application system, accessing an updated arbitration agreement ("2023 Arbitration Agreement"), scrolling through the entire document, and electronically signing the 2023 Arbitration Agreement in order to apply for a promotion. (Doc. Nos. 32-1 at 8–9; 45 at 7.) Amin "typed [his name] into the textbox" and "selected the radio button marked 'Accept'," which caused "the text 'Mohamed Amin' [to] appear[] next to the signature line" and the word "Accepted" to appear below his name. (Doc. No. 32-1 at 9.) Finally,

Defendants assert that "by 2023, G2's online application system was updated such that when the Arbitration Agreement is printed out, the date that Plaintiff Amin signed appears under the word 'Accepted': 'Date Signed: May 9, 2023.'" (*Id.*)

*Fig. 2:*
*Signature Page of 2023 Arbitration Agreement*



(Doc. No. 32-2 at 13)

In opposition, Amin avers "he never saw, signed, or was aware of any arbitration agreement, either during his 2022 application or his 2023 application." (Doc. No. 41 at 17.)

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2; *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015). "Generally, a court must determine two issues before deciding whether to compel arbitration: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Knapke v. PeopleConnect, Inc*, 38 F.4th 824, 831 (9th Cir. 2022) (quoting *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021)). If the two factors are met, the Court must enforce the arbitration agreement in accordance with its precise terms. *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 955 (9th Cir. 2012), *on reh'g en banc,* 718 F.3d 1052 (9th Cir. 2013).

The party seeking to compel arbitration "has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). "In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 680 (9th Cir.

25-cv-02019-AJB-BLM

2024), *cert. denied sub nom. Live Nation v. Heckman*, No. 24-1145, 2025 WL 2823733 (U.S. Oct. 6, 2025); *see also Olson v. FCA US, LLC*, 176 F.4th 612, 617 (9th Cir. 2026) ("Arbitration is a matter of contract."). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). "[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012).

## III.    DISCUSSION

G2 moves to compel arbitration of Amin's individual claims, and to dismiss Amin's putative class claims, and stay Amin's representative PAGA claim. (*See generally* Doc. No. 32-1.) Amin opposes the motion, arguing that G2 waived its right to compel arbitration by litigating inconsistently with that right and that G2 has failed to establish by a preponderance of the evidence there is a valid arbitration agreement because Amin avers he never saw, signed, or was aware of any arbitration agreement.[3] (*See generally* Doc. No. 41.) The Court addresses each issue in turn.

### A.    Whether G2 Waived Its Right to Compel Arbitration

Amin asserts that G2 waived its right to compel arbitration by (1) waiting to file the motion to compel "more than eight months after the Complaint was filed[,]" (2) "invok[ing] the judicial process" such as when G2 removed the case, filed a notice of related case, participated in drafting and filing a joint discovery plan and joint motion for protective order, and attended the ENE and CMC; and (3) "participat[ing] in discovery and discovery-related motion practice" such as responding to Amin's discovery requests, engaging in the discovery dispute process, and agreeing to extend deadlines for discovery motions. (Doc. No. 41 at 13–14.)

---

[3]    Amin does not contest that his claims fall within the Arbitration Agreement and does not raise any defenses such as unconscionability, fraud, or duress. (*See* Doc. Nos. 41; 45 at 14.)

25-cv-02019-AJB-BLM

In response, G2 asserts that it "never made an intentional decision not to move to compel arbitration." (Doc. No. 45 at 12.) Instead, G2 argues the delay was short—only six months after removal, copies of the agreements were provided "as soon as they were located," and then counsel met and conferred "multiple times in an effort to avoid unnecessary motion practice." (*Id.*) Additionally, G2 contends that its participation in litigation was limited to what was mandated by the Court through its scheduling order and chambers rules—such as filing a joint motion for protective order and participating in an informal discovery conference after responding to Amin's written discovery requests with objections. (*Id.* at 13.)

"[A] party waives its right to compel arbitration when (1) it has knowledge of the right, and (2) it acts inconsistently with that right." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 460 (9th Cir. 2023). "Under [Ninth Circuit] precedent, a party generally acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023) (citation and internal quotations omitted). "There is no concrete test to determine whether a party has engaged in acts inconsistent with its right to arbitrate; rather, we consider the totality of the parties' actions." *Hill*, 59 F.4th at 471 (citation omitted); *see also Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016) (collecting cases to map holdings on this element). "[T]he burden for establishing waiver of an arbitration agreement is the same as the burden for establishing waiver in any other contractual context." *Armstrong*, 59 F.4th at 1015.

It is undisputed that G2 had knowledge of its right to arbitrate as it cited the Arbitration Agreements as an affirmative defense in its answer and compelled Negusse's claims to arbitration earlier in this action. At issue, instead, is whether G2 acted inconsistently with that right based on the totality of the parties' actions.

The Court does not find that Defendants "actively litigate[d] the merits" of the case to support a finding a waiver. *Compare Martin*, 829 F.3d at 1126 (9th Cir. 2016) (holding

25-cv-02019-AJB-BLM

a party waived the right to arbitration litigating for seventeen months, filing a motion to dismiss "on a key merits issue," only noting a right to arbitrate nearly a year into litigating, and moving to arbitrate far later) *with Armstrong*, 59 F.4th at 1016 (rejecting waiver where defendant "never s[ought] or obtain[ed] a ruling on the merits" and sought only "limited discovery requests"). Defendants filed no substantive motions; in fact, Menzies has yet to file a responsive pleading. G2 engaged in litigation only to the extent mandated by the Court, such as filing a joint discovery statement, attending the ENE, filing a joint motion for entry of a protective order, and meeting and conferring for a discovery dispute as required by the scheduling order and the Magistrate Judge's chambers rules. In each filing, G2 asserted its intent to compel Amin's claims to arbitration. (*See* Doc. Nos. 2 at 3 (asserting arbitration as an affirmative defense in answer); 9 at 3–4, 6–8 (arguing a schedule should not issue and discovery should be stayed due to intent to compel arbitration); 13 at 2 n.1 ("reserv[ing] all rights and defenses with respect to enforcing its arbitration agreements" and asserting participation should not be construed as waiver).) The Court agrees that Amin's characterization of G2's engagement with discovery is "misleading." (*See* Doc. No. 45 at 13.) G2 responded to Amin's written discovery exclusively with objections, and the "discovery-related motion practice" was only to stay the deadline to raise a discovery dispute pending the Court's resolution of its motion to compel. (*See* Doc. No. 23.)

Additionally, the Court does not find that the delay here to qualify as "a prolonged period of time." *See, e.g.*, *Fox v. Experian Info. Sols., Inc.*, 718 F. Supp. 3d 1231, 1239 (E.D. Cal. 2024) (finding a "defendant's delay is insufficient to establish waiver" where the "defendant moved to compel arbitration within a year of the filing of plaintiff's complaint, and its motion to compel arbitration is the first substantive motion filed in this action"); *Topolewski v. Experian Data Corp.*, 736 F. Supp. 3d 818, 825 (C.D. Cal. 2024) (finding no "conduct indicating waiver" despite the defendant waiting eleven months to file); *Rissi v. T-Mobile USA, Inc.*, 762 F. Supp. 3d 959, 972 (S.D. Cal. 2025) (finding no waiver despite five-month delay).

25-cv-02019-AJB-BLM

Defendants "never wavered from the view that [they] had a right to arbitration, as evidenced by [G2] moving to compel arbitration within a year after [Amin] filed the complaint, never seeking or obtaining a ruling on the merits, and never waffling about whether to arbitrate or stay in district court." *See Armstrong*, 59 F.4th at 1016. Accordingly, based on the totality of the parties' actions, the Court finds that Defendants have not waived their right to arbitration. *See, e.g., Bracamontes v. United Rentals, Inc.*, No. 223CV02697DADCSK, 2024 WL 1884052, at *5 (E.D. Cal. Apr. 30, 2024) ("In this case, defendant moved to compel arbitration well within a year of the filing of plaintiff's complaint, and its motion to compel arbitration is the first substantive motion filed in this action. Accordingly, the court finds that defendant's brief delay in filing the pending motion is insufficient to establish a waiver of the right to arbitrate.").

**B.     Whether the Agreements Are Valid and Enforceable**

Defendants argue that both the 2022 and 2023 Arbitration Agreements are valid and enforceable. (*See generally* Doc. Nos. 32; 45.) In opposition, Amin argues Defendants failed to meet their burden because (1) Amin avers under penalty of perjury to having never seen, signed, or been made aware of the agreements, (2) there is no electronic signature on the 2022 Arbitration Agreement, (3) the metadata shows that both agreements were modified at a much later date, and (4) Defendants fail to provide sufficient evidence demonstrating the user interface. (*See generally* Doc. No. 41.)

First, Amin generally avers "he never saw, signed, or was aware of any arbitration agreement, either during his 2022 application or his 2023 application." (Doc. No. 41 at 17.) However, relying on the declaration of Christopher Elliott, G2's Director of Labor Relations, Benefits, and Human Resources Information Systems, Defendants assert that "Plaintiff could not have completed and submitted their online application for employment *without* scrolling through the Arbitration Agreements." (Doc. Nos. 45 at 7 (emphasis in original); 32-2 at 1–5, Declaration of Christopher Elliott ("Elliott Decl."), at ¶ 9 ("Plaintiff Amin was required to scroll through the Arbitration Agreement in order to continue the online application process and submit his application. In other words, an applicant

25-cv-02019-AJB-BLM

(including Plaintiff Amin) cannot complete and submit an application for employment with G2 *without* scrolling through the Arbitration Agreement.").)

Pursuant to the Uniform Electronic Transaction Act, a "signature may not be denied legal effect or enforceability solely because it is in electronic form," but rather, "[i]f a law requires a signature, an electronic signature satisfies the law." Cal. Civ. Code § 1633.7(a), (d). "An electronic record or electronic signature is attributable to a person if it was the act of the person." Cal. Civ. Code § 1633.9(a). "The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Cal. Civ. Code § 1633.9(a).

Because Amin was required (1) to create an individual-specific account using his own email address and a "unique password," (2) to consent to use of his typed name as an electronic signature, and (3) to enter his personal information into the application before being presented the Arbitration Agreement, Defendants have met their burden of authenticating Amin's signature. *See, e.g.*, *In re Axos Bank Litig.*, No. 23-CV-2266-RSH-SBC, 2024 WL 4195299, at *5 (S.D. Cal. Sept. 13, 2024) (collecting cases where electronic signature is authenticated by the defendant describing the relevant system's security measures and required steps for proceeding); *Zamudio v. Aerotek, Inc.*, 733 F. Supp. 3d 931, 939–40 (E.D. Cal. 2024) ("Courts have found that evidence of a unique, secure username and password may sufficiently authenticate a signature when that signature is a typed name input by the user."); *Campbell v. CubeSmart, L.P.*, No. 24-CV-02282-AJB-VET, 2025 WL 251429, at *5 (S.D. Cal. Jan. 21, 2025) (finding an employer met its burden by detailing the required, sequential steps for electronic onboarding of employees which included signing an arbitration agreement before the employee could move on to the next step); *Gonzalez v. Peak California Rest. Grp., LLC*, --- F. Supp. 3d ----, No. 25-CV-04068-AMO, 2026 WL 765325, at *3 (N.D. Cal. Mar. 18, 2026) (finding an employer sufficiently authenticated the employee's electronic signature on an arbitration agreement by describing the login security and signing process).

25-cv-02019-AJB-BLM

As noted by G2 (*see* Doc. No. 45 at 7), Amin's general denial of having seen or signed an arbitration agreement is insufficient to create a genuine dispute where G2's application process requires applicants to scroll through the entire agreement in order to press submit. *See, e.g.*, *Mitchell v. Lineage Logistics Servs. LLC*, 769 F. Supp. 3d 1132, 1140 (E.D. Cal. 2025) ("Plaintiff's mere statement that he 'does not recall' seeing or signing the document is insufficient to create a material question of fact in light of Defendant's evidence to the contrary, even when considering all evidence in the light most favorable to Plaintiff."); *Montes v. Thorntons LLC*, --- F. Supp. 3d ----, No. 25-CV-05895-EKL, 2026 WL 881712, at *5 (N.D. Cal. Mar. 26, 2026) ("Plaintiff's bare denials [that he did not sign an arbitration agreement] are insufficient to overcome [the defendant's] overwhelming evidence.").

Beyond his general denials, Amin only raises two specific arguments to question the validity of his electronic signature: (1) the difference in signature lines between the 2022 and 2023 Arbitration Agreements and (2) the "modification date" metadata.

With regard to the signature line, Amin asserts that the 2022 agreement "contains a dotted signature line that appears empty, no typed name in the signature field, and no date signed," which is in conflict with the agreement produced for Negusse. (Doc. No. 41 at 8.) Based on the Court's review of all the arbitration agreements submitted by all named plaintiffs in this action, pre-2023 arbitration agreements—such as the 2022 Arbitration Agreement and Villarin's 2017 arbitration agreement—have a dotted line leading to the typed name of the plaintiff, under which the word "Accepted" appears. In contrast, the 2023 arbitration agreements—such as the one at issue here and Negusse's—have no dotted line and instead reflect the typed name of the plaintiff a second time and a "date signed" field. Although Amin views the differences as supporting that he did not accept the 2022 Arbitration Agreement, Defendants proffer evidence explaining the difference as the result of a system update. (*See* Elliott Decl. ¶ 13 ("By 2023, G2's online application system was updated such that when the Arbitration Agreement is printed out, the date that Plaintiff Amin signed appears under the word 'Accepted': 'Date Signed: May 9, 2023.'").) The

11

25-cv-02019-AJB-BLM

Court finds this explanation sufficient.[4] *See, e.g.*, *Catalan v. GE United Tech., LLC*, No. 2:23-CV-01005-SPG (SHK), 2023 WL 12294391, at *4 (C.D. Cal. June 9, 2023) (finding an electronic signature sufficiently authenticated where the employer "explained why the font on the signature appears different from those in other documents signed by [the employee] on Green Leaf[, the employer's online portal]").

With regard to metadata, Amin argues that "the documentary evidence Defendant relies upon raises significant questions regarding authenticity and reliability" because G2 "initially represented that no signed arbitration agreement existed" but "later produced a document on September 12, 2025, that purportedly applied to Plaintiff, yet that version lacked the signature features present in Plaintiff Negusse's agreement" and the metadata associated with both the 2022 and 2023 Arbitration Agreements have modification dates, which Negusse's did not have. (Doc. No. 41 at 19.) In his declaration, Amin avers to having "r[u]n metadata on the document that Defendant contends is [his] arbitration agreement," and provides a true and correct copy of the "metadata report" as an exhibit. (Doc. No. 41-2 at 1–3, Declaration of Plaintiff Mohamed Nabil Amin ("Amin Decl."), at ¶ 13.)

G2 responds that the metadata issue is a "red herring" because (1) the metadata report lacks the necessary foundation, (2) the modification date of the copies of the agreements could have explanations that do not undermine their authenticity, and (3) Plaintiff Counsel failed to raise the issue of metadata during the meet-and-confer, "so Defendant had no opportunity to meaningfully respond." (Doc. No. 45 at 10–11.)

G2's third point lacks merit. Defendants were able to "meaningfully respond" in reply. Second, although G2 provides a scenario in past conditional tense where "copies *may* contain 'metadata' that reflect[] different 'creation' or 'modification' dates" (*see id.* at 10 (emphasis added)), it is not clear from the sentence construction whether G2 is

---

[4]   Although not considered in reaching its determination, the Court notes that Amin's argument that the dotted line demonstrates a lack of signature on the 2022 Arbitration Agreement implicitly acknowledges that the absence of a dotted line on the 2023 Arbitration Agreement is because it is in fact signed, undermining Amin's general denials with regard to the latter agreement.

25-cv-02019-AJB-BLM

arguing that is, in fact, the reason for the "modification date" metadata. Moreover, G2 proffers no declaration or other evidence to support this explanation. As such, the Court does not find G2's second argument persuasive. However, G2's first argument raises the issue of whether the Court can consider the metadata.

"In reviewing motions to compel arbitration[,] a court must consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 705 (9th Cir. 2024); *see also* Fed. R. Civ. P. 56(c)(1)(B) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."), 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Pursuant to the Federal Rules of Evidence, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. However, to testify as an expert, the witness must meet the more stringent criteria of Federal Rule of Evidence 702.

Because Amin used some sort of technical program or software to generate the metadata report, his opinion based thereon is not "rationally based on [his] perception," but rather on technical knowledge. *See* Fed. R. Evid. 701(a), (c). However, Amin does not provide any facts addressing how he "is qualified as an expert by knowledge, skill, experience, training, or education," how his "testimony is based on sufficient facts or data[, . . .] is the product of reliable principles and methods[, . . . and] reflects a reliable application of the principles and methods to the facts of the case." *See* Fed. R. Evid. 702. Without information about Amin's credentials or the process for running the metadata

25-cv-02019-AJB-BLM

report, the Court finds the metadata report inadmissible. Even if it were admissible, the Court finds the metadata report and the questions of modification to bear minimal weight for the same reasons. As such, the Court finds that the "modification date" metadata does not call into question the authenticity of the 2022 and 2023 Arbitration Agreements such that there is a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(c)(1)(B), 56(c)(4).

Finally, Amin argues that Defendants fail to provide evidence "demonstrating how the agreement was actually displayed to Plaintiff at the time he applied, how conspicuous it was, or whether the process required meaningful review," or "any evidence, such as screenshots, system logs, or user interface descriptions, showing that a download option was actually available to Plaintiff at the time of his applications[.]" (Doc. No. 41 at 18 (relying on *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, 66–67 (2013)).) Amin relies on *Avery* as an example of where a court rejected an arbitration agreement under "similar circumstances" because "the employer failed to demonstrate that the employee received meaningful notice of the agreement's terms" (*id.*); however, the facts of *Avery* are hardly analogous to those presented here.

In *Avery*, an employer attempted to enforce an arbitration agreement implied-in-fact through continued employment based on the employee receiving a handbook referencing the requirement. *Avery*, 218 Cal. App. 4th at 63. The employer conceded that the employee never signed an arbitration agreement or any document referencing receipt of the handbook. *Id.* The employer failed to present any evidence showing it sent or otherwise provided the employee with the handbook. *Id.* at 64. The employee, on the other hand, proffered a declaration that she did not receive an employee handbook, she never spoke with anyone about the arbitration policy, and she kept all her orientation documents, which do not include the handbook. *Id.* at 64–65. The *Avery* court found the foregoing to constitute "substantial evidence" that the employer failed to meet its evidentiary burden that the employee had notice of the arbitration agreement, as required to enforce an implied-in-fact agreement. *Id.* at 65–66.

///

25-cv-02019-AJB-BLM

In stark contrast, Defendants here have proffered evidence that Amin received both Arbitration Agreements and was required to scroll their contents to proceed with his applications. Moreover, Amin's denials do not include the same degree of specific details or other evidence that the employee in *Avery* proffered to explain how he knew he never signed or why he never signed. *Cf. Metter v. Uber Techs., Inc.*, No. 16-CV-06652-RS, 2017 WL 1374579, at *3–4 (N.D. Cal. Apr. 17, 2017) (finding no notice where the plaintiff declared the terms of service alert was blocked by the application's keypad); *Duarte v. Mission Fed. Credit Union*, No. 319CV01441AJBKSC, 2020 WL 4732058, at *3 (S.D. Cal. Aug. 14, 2020) (finding lack of mutual assent where the plaintiff declared "she never signed a document containing the arbitration provision" and "her visual impairment physically kept her from seeing or understanding the terms on the notices"). Accordingly, Defendants have sufficiently demonstrated that Amin had notice of and electronically signed both Arbitration Agreements. *See, e.g., Zamudio*, 733 F. Supp. 3d at 939–40.

### C.    Whether Amin's Claims Fall Within the Agreement's Scope

Having found Amin signed both Arbitration Agreements, the Court turns to whether the claims fall within the scope of the agreements. Defendants argue that "the entirety of Plaintiff's claims stem from his employment with G2," so all claims "fall squarely within the scope of his Arbitration Agreement." (Doc. No. 32-1 at 17.) Further, Defendants assert that the putative class claims in the first ten causes of action are barred by the class action waiver and, thus, must be dismissed. (*Id.* at 21–22.) Finally, Defendants argue that the representative PAGA claim brought on behalf of others must be stayed pending arbitration of Amin's status as an aggrieved employee. (*Id.* at 22–23.) Amin does not address any of these issues in his opposition. (*See* Doc. Nos. 41; 45 at 14.)

Both Arbitration Agreements mandate that "all legal disputes and claims between [the parties] shall be determined exclusively by final and binding arbitration[.]" (Doc. No. 32-2 at 7 (2022), 11 (2023).) Covered claims "include all claims arising from or relating to Individual's application for employment, employment (if hired), employment benefits, and termination of employment[.]" (*Id.* at 7 (2022), 11 (2023).) The 2023 Arbitration

Agreement lists as excluded "non-individual claims under PAGA for Labor Code violations that Individual claims an employee other than Individual suffered[.]" (*Id.* at 11.) Finally, both Arbitration Agreements include a class, collective, and representative action waiver, although the 2022 version has more expansive language with regard to representative actions than the 2023 version. (*Id.* at 8 (2022), 11 (2023).)

Because all eleven of Amin's causes of action assert wage-and-hour violations, the Court finds the claims arise from Amin's employment with G2. However, the representative PAGA claim is excluded from arbitration, both by the express terms of the 2023 Arbitration Agreement and by California law. *See Diaz v. Macys W. Stores, Inc.*, 101 F.4th 697, 705 (9th Cir. 2024) ("The California Supreme Court has held that the ability to bring non-individual PAGA actions cannot be waived by agreement, because such a waiver would frustrate the enforcement objectives of PAGA."). To the extent the 2022 Arbitration Agreement would attempt to compel arbitration of the representative PAGA claim in violation of California law, the severability clause would sever any unlawful aspects of the contract and permit the Court to enforce the remaining agreement. *See* Johnson v. Lowe's Home Centers, LLC, 93 F.4th 459, 464 (9th Cir. 2024) ("The rest of the contract— including Johnson's agreement to arbitrate her individual PAGA claim—remains binding and enforceable."). Based on the class action waiver, the putative class claims cannot be compelled to arbitration. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) ("Arbitration is strictly a matter of consent and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration.") (cleaned up). Rather, Amin must arbitrate his California Labor Code and UCL claims against Defendants on an individual basis. The representative PAGA claim must be stayed pending arbitration of the rest of the claims. *See* 9 U.S.C. § 3. (*See also* Doc. No. 32-2 at 8 (2022), 11 (2023) ("If a party brings an action that includes both claims subject to arbitration under this Agreement and claims that by law are not subject to arbitration, all claims that by law are not subject to arbitration and as to which Individual has standing after a claim that is subject to arbitration has been sent to arbitration shall be stayed until

25-cv-02019-AJB-BLM

the claims subject to arbitration are fully arbitrated.").)

## IV.    CONCLUSION

For the reasons discussed above, the Court hereby **ORDERS**:

1.    Defendants' motion to compel arbitration is **GRANTED**. Plaintiff Mohamed Nabil Amin must arbitrate his individual claims pursuant to the terms of the Arbitration Agreements.

2.    Plaintiff Mohamed Nabil Amin's non-PAGA, putative class claims are **DISMISSED**.

3.    The instant action is **STAYED** as to Plaintiff Mohamed Nabil Amin pending arbitration of his individual claims.

4.    Amin and Defendants must file a joint status report addressing the status of arbitration is due **no later than September 2, 2026**, with specific details including the date when the parties submitted the matter to arbitration. This joint status report may be combined with that submitted for Negusse's claims.

5.    **Every sixty days thereafter**, the parties must file joint status reports informing the Court about the status of arbitration, including specific details regarding subsequent dates, any changes to dates, and actions the parties are taking to facilitate the process.

**IT IS SO ORDERED.**

Dated:  July 2, 2026

Hon. Anthony J. Battaglia
United States District Judge

17

25-cv-02019-AJB-BLM