UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMED NABIL AMIN, et al.,<br>Plaintiffs,<br>v.<br>G2 SECURE STAFF, L.L.C., et al.,<br>Defendants. | Case No.: 25-cv-02019-AJB-BLM<br>**ORDER GRANTING MOTION TO COMPEL PLAINTIFF ELVISSA VILLARIN'S CLAIMS TO ARBITRATION**<br>**(Doc. No. 33)** |

Before the Court is a motion filed by Defendant G2 Secure Staff, LLC ("G2"), seeking the Court to compel the claims of Plaintiff Elvissa Villarin ("Villarin") to arbitration. (Doc. No. 33.) Defendants Menzies Aviation (USA) Inc. and Air Menzies International, (USA) Inc. (collectively, "Menzies") joined in the motion. (Doc. No. 43.) Villarin filed an opposition (Doc. No. 42), to which G2 replied (Doc. No. 44). For the reasons set forth below, the Court **GRANTS** the motion.

## I. BACKGROUND

### A. Procedural Background

The instant action is a wage-and-hour putative class action asserting that Defendants G2 and Menzies (collectively, "Defendants") misclassified Plaintiffs and other employees

at San Diego International Airport as "'exempt' in order to avoid requirements imposed by the Labor Code." (Doc. No. 27, First Am. Compl. ("FAC"), at ¶ 2.) Plaintiffs Mohamed Nabil Amin ("Amin") and Dawit Negusse ("Negusse") filed the instant action in state court on June 16, 2025. (Doc. No. 1-2.) G2 removed the instant action on August 6, 2025, on the basis of diversity jurisdiction pursuant to the Class Action Fairness Act. (Doc. No. 1.) G2's answer, filed concurrently, asserts arbitration agreements as an affirmative defense. (Doc. No. 2 at 3.)

On October 29, 2025, the parties filed a joint motion to submit Negusse's claims to arbitration based on "the arbitration agreement that he signed in connection with his employment with Defendant." (Doc. No. 16 at 2.) The Court granted the motion the same day. (Doc. No. 17.)

With the Court's leave, Plaintiffs filed a first amended complaint on February 26, 2026, adding Villarin as a named plaintiff. (Doc. No. 27, First Am. Compl. ("FAC").) In the operative complaint, Plaintiffs assert eleven causes of action against Defendants: (1) failure to timely pay minimum wages and overtime/double time compensation, (2) failure to provide legally compliant meal periods or compensation in lieu thereof, (3) failure to provide legally compliant rest periods or compensation in lieu thereof, (4) failure to pay all wages owed upon separation, (5) failure to provide paid sick leave and written notice of the amount of sick leave available, (6) failure to furnish accurate itemized wage statements, (7) failure to maintain accurate records, (8) failure to provide copies of signed documents, (9) failure to reimburse for necessary work expenses, (10) violation of California's Unfair Competition Law, and (11) violation of the Private Attorneys General Act of 2004 ("PAGA"). (*See generally id.*)

Two weeks later, Defendants moved to compel Villarin's individual claims to arbitration based on the arbitration agreement purportedly executed when Villarin submitted an employment application to work for G2. (Doc. Nos. 33 (motion); 33-2 at 5–9 (arbitration agreement).) Villarin challenges the validity and enforceability of the agreement. (*See generally* Doc. No. 42.)

### B. Factual Background

Villarin began working for G2 around approximately March 2017. (Doc. Nos. 33-1 at 7; 42 at 6.) Villarin asserts that she was referred to the position by a friend. (Doc. No. 42 at 6.) Instead of completing an online application, Villarin states she "completed onboarding paperwork in person using physical, paper documents, all of which she reviewed and signed by hand." (Doc. No. 42 at 6.) Villarin asserts she reviewed all of the on-boarding documentation carefully, never saw or signed an arbitration agreement, never was informed that arbitration was a condition of her employment, and never was provided such an agreement. (*Id.* at 6–7.) Because she never "saw, signed, or agreed to any arbitration agreement," Villarin argues there was no mutual assent or notice. (*Id.* at 9–12.)

Defendants state that "[a]s part of the application process, Plaintiff Villarin was required to (a) register for her own individual-specific account using her email address, and (b) enter a unique password in order to log into the system and submit her application for employment with G2." (Doc. No. 33-1 at 7.) Next, in the online application system, Villarin "was first presented with an Electronic Signature Notice and Consent disclosure form that informed her that, among other things, when she types her name into a textbox in the online application system, it constitutes her electronic signature." (*Id.*) Only once Villarin clicked to agree did the system permit her to proceed with her application. (*Id.*) Next, Villarin was prompted to enter her personal contact information, work history, and educational background. (*Id.*) Then, Villarin was present the Arbitration Agreement which she "was required to scroll through," type her name into a textbox, and "select one of two radio buttons marked 'Accept' or 'Decline'" "in order to continue the online application process and submit her application[.]" (*Id.*) Defendants assert that, "[a]ccording to G2's online application system," Villarin "accessed and electronically signed the Arbitration Agreement" on February 22, 2017, "by typing her name into a textbox" and "select[ing] the radio button marked 'Accept.'" (*Id.* at 7–8; *see also* Doc. No. 33-2 at 9.)

///

///

*Fig. 1:*
*Signature Page of Arbitration Agreement Produced Regarding Villarin*

> **ELECTRONIC SIGNATURE: Please type your name as it is listed in the document above: Elvissa Villarin**
>
> I testify that this statement is true to the best of my knowledge:
>
> Elvissa Villarin
> Accepted

(Doc. No. 33-2 at 9.) "According to G2's online application system, on February 22, 2017, Plaintiff Villarin accessed and electronically signed the Arbitration Agreement." (Doc. No. 33-2 at 1–4, Declaration of Christopher Elliott ("Elliott Decl."), at ¶ 11.)

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2; *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015). "Generally, a court must determine two issues before deciding whether to compel arbitration: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Knapke v. PeopleConnect, Inc*, 38 F.4th 824, 831 (9th Cir. 2022) (quoting *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021)). If the two factors are met, the Court must enforce the arbitration agreement in accordance with its precise terms. *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 955 (9th Cir. 2012), *on reh'g en banc,* 718 F.3d 1052 (9th Cir. 2013).

The party seeking to compel arbitration "has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). "In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 680 (9th Cir. 2024), *cert. denied sub nom. Live Nation v. Heckman*, No. 24-1145, 2025 WL 2823733 (U.S. Oct. 6, 2025); *see also Olson v. FCA US, LLC*, 176 F.4th 612, 617 (9th Cir. 2026) ("Arbitration is a matter of contract."). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687

(1996). "[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012).

## III. DISCUSSION

Defendants move to compel arbitration of Villarin's individual claim and to stay Villarin's putative class and representative PAGA claims. (*See generally* Doc. No. 33-1.) Villarin opposes the motion, arguing that Defendants fail to establish by a preponderance of the evidence there is a valid arbitration agreement and that the purported arbitration agreement is procedurally and substantively unconscionable.[1] (*See generally* Doc. No. 42.) The Court addresses each issue in turn.

### A. Whether the Arbitration Agreement Is Valid

Defendants argue the arbitration agreement is valid and enforceable. (*See generally* Doc. Nos. 33; 44.) In opposition, Villarin argues Defendants fail to meet their burden because (1) Villarin avers under penalty of perjury to having never seen, signed, or been made aware of the agreement, (2) there is no electronic signature on the agreement, (3) Defendants fail to provide sufficient evidence demonstrating the user interface, (4) the rest of Villarin's personnel file is comprised of physical, handwritten onboarding documents, and (5) there are inaccuracies within the purported application that call its reliability into question. (*See generally* Doc. No. 42.)

First, Villarin argues that "Defendant cannot meet its burden because Plaintiff has unequivocally testified that she never saw, signed, or agreed to any arbitration agreement[.]" (Doc. No. 42 at 9.) To support this assertion, Villarin explains that "she did not complete any online application and instead was referred to the position and completed only physical, paper onboarding documents in person." (*Id.*; *see also* Doc. No. 42-2, Decl. of Elvissa Villarin ("Villarin Decl."), ¶¶ 3–4 ("I was referred to this job by a friend. I did

---

[1] Villarin does not contest that her claims fall within the Arbitration Agreement. (*See* Doc. No. 42.)

not complete any online application in connection with my hiring. Instead, I completed paperwork in person using physical, paper documents. During my onboarding, all documents I completed and signed were provided to me in hard copy. I signed those documents by hand.").) However, Villarin provides neither specific details nor supporting documentation regarding the individual who referred her, when she applied, how she was able to apply in person to a high-security job, or the additional steps between applying and on-boarding, such as being interviewed and background checked. (*See generally* Doc. No. 42.)

In response, Defendants assert that Villarin's version of her hiring—that she was "'referred' by an unidentified friend"—is not credible because (1) Villarin does not "provide details or documents" to support this scenario, (2) "G2's application process is tightly controlled and prospective employees undergo a thorough background check process because they work in highly restricted zones and secure areas of the airport," and (3) "G2's payroll system cannot assign an employee identification number to someone who does not have an online application in G2's system." (Doc. No. 44 at 6.) Specifically, Christopher Elliott, G2's Director of Labor Relations, Benefits, and Human Resources Information Systems, avers that:

> Since at least February 2017, anyone who was interested in applying for a position with G2 was required to apply via G2's online application portal. This includes a prospective employee who is referred by a friend. This was G2's policy. This is because, at least in part, G2's application process is tightly controlled and prospective employees undergo a thorough background check process because they work in highly restricted zones and secure areas of the airport. Even if a prospective employee is referred by a friend, they cannot just show up to the airport and complete onboarding paperwork in person without first applying online, sitting for an interview, being given a conditional offer of employment, completing the background check, fingerprinting, and badging process, and then attending scheduled orientation. At the scheduled orientation, employees are then asked to complete onboarding documents in person, such as forms relating to payroll deductions and beneficiary designations. G2's payroll system cannot assign an employee identification number to someone who does not have an online application in G2's system.

(Doc. No. 44-1, Supplemental Declaration of Christopher Elliott ("Suppl. Elliott Decl."), at ¶¶ 2–4.) Moreover, with regard to Villarin in particular, "[a]ccording to G2's online application system, on February 22, 2017, Plaintiff Villarin accessed and electronically signed the Arbitration Agreement." (Elliott Decl. ¶ 11.) Defendants' evidence supports that Villarin could not have applied without submitting an electronic application both for security- and human resources-reasons and did in fact submit an electronic application prior to her on-boarding.

The reliability and authenticity of the application is supported by Defendants' testimony as to how the application is submitted. Specifically, Villarin was required (1) to create an individual-specific account using her own email address and a "unique password," (2) to consent to use of her typed name as an electronic signature, and (3) to enter her personal information into the application before being presented the arbitration agreement. These requirements support the authenticity of the application submitted. *See, e.g.*, *In re Axos Bank Litig.*, No. 23-CV-2266-RSH-SBC, 2024 WL 4195299, at *5 (S.D. Cal. Sept. 13, 2024) (collecting cases where electronic signature is authenticated by the defendant describing the relevant system's security measures and required steps for proceeding); *Zamudio v. Aerotek, Inc.*, 733 F. Supp. 3d 931, 939–40 (E.D. Cal. 2024) ("Courts have found that evidence of a unique, secure username and password may sufficiently authenticate a signature when that signature is a typed name input by the user."); *Campbell v. CubeSmart, L.P.*, No. 24-CV-02282-AJB-VET, 2025 WL 251429, at *5 (S.D. Cal. Jan. 21, 2025) (finding an employer met its burden by detailing the required, sequential steps for electronic onboarding of employees which included signing an arbitration agreement before the employee could move on to the next step); *Gonzalez v. Peak California Rest. Grp., LLC*, --- F. Supp. 3d ----, No. 25-CV-04068-AMO, 2026 WL 765325, at *3 (N.D. Cal. Mar. 18, 2026) (finding an employer sufficiently authenticated the employee's electronic signature on an arbitration agreement by describing the login security and signing process).

///

Second, Villarin points to three pieces of evidence to support her assertions that she applied in person and to undermine the validity of her electronic signature: (1) the dotted signature line, (2) the physical, handwritten on-boarding documents, and (3) the inaccuracies in the application.

With regard to the signature line, Villarin asserts that "the alleged agreement is neither signed nor dated" because "[t]he dotted signature line is blank." (Doc. No. 42 at 10.) Amin raised the same argument to oppose Defendants' motion to compel his claims to arbitration, arguing that the difference between the signature line in his 2022 arbitration agreement, which is the same format as Villarin's, and the signature line in his 2023 arbitration agreement demonstrates that he did not sign the 2022 agreement. (*See* Doc. No. 41 at 8.) The Court found that Defendants proffered sufficient evidence explaining that the difference was the result of a system update. (Doc. No. 51 at 11–12.) There, the Court determined, based on its own review of all the arbitration agreements submitted by all named plaintiffs in this action, that pre-2023 arbitration agreements—such as Amin's 2022 arbitration agreement and Villarin's 2017 arbitration agreement—have a dotted line leading to the typed name of the plaintiff, under which the word "Accepted" appears. (*Id.* at 11.) In contrast, the 2023 arbitration agreements—such as Negusse's and Amin's second agreement—have no dotted line and instead reflect the typed name of the plaintiff a second time and a "date signed" field. (*Id.*) Although Villarin views the dotted line as supporting that she did not accept the arbitration agreement, the Court finds that Defendants' explanation in light of the entirety of the record sufficient to authenticate Villarin's signature over her denial. *See, e.g.*, *Catalan v. GE United Tech., LLC*, No. 2:23-CV-01005-SPG (SHK), 2023 WL 12294391, at *4 (C.D. Cal. June 9, 2023) (finding an electronic signature sufficiently authenticated where the employer "explained why the font on the signature appears different from those in other documents signed by [the employee] on Green Leaf[, the employer's online portal]").

With regard to the on-boarding documentation, Villarin asserts that "[t]he purported arbitration agreement allegedly appears only within an electronic 'application' document

that differs in form from the remainder of Plaintiff's personnel file, which consists almost entirely of physical, handwritten onboarding documents corresponding to Plaintiff's March 2017 hire." (Doc. No. 42 at 11.) This evidence only supports that Villarin completed her on-boarding paperwork by hand, not that she applied in person. To find differently would collapse the application and on-boarding into a singular event, which exceeds the bounds of reasonableness in light of Defendants' evidence and of common sense considering the security restrictions involved with airports.[2]

With regard to the application's substantive accuracy, Villarin asserts that "the purported application itself also contains inaccuracies that call its reliability into question." (Doc. No. 42 at 11.) Specifically, the application "lists Plaintiff's prior employment with Japan Airlines extending from July 2017 through December 2017—dates that post-date the document and do not accurately reflect her 2015 employment with Japan Airlines." (*Id.*) Villarin does not dispute the accuracy of the rest of the application which includes very specific personal details such as her reason for leaving her position with Japan Airlines, her home address, her phone number, and her educational background. (*See* Doc. No. 33-2 at 6–7.) Considering that (1) Villarin disputes only the *year* of her employment with Japan Airlines, (2) the year listed in the application was the current year when the application was submitted, and (3) other information includes specific personal details, the Court finds that the incorrect year does not call into question the reliability of the entire application, even when the evidence is viewed in the light most favorable to Villarin.

Because Villarin's account of never submitting an electronic application is supported only by her own conclusory declaration and the notation of 2017 instead of 2015, the Court finds that, in light of the evidence submitted by Defendants, Villarin does not raise a

---

[2] Villarin also says the only other documents in her personnel file were those "bearing November 11, 2025 signatures, which Plaintiff was instructed to complete only after Defendant became aware of her claims and had to produce her personnel file." (*Id.*) It is unclear why Villarin finds it "notabl[e]" that she "reviewed and signed those 2025 documents and confirms that no arbitration agreement was included among them." (*Id.*) Villarin provides no explanation of how this undermines Defendants' evidence that she signed an arbitration agreement in February 2017.

genuine dispute of material fact that she submitted the electronic application with the arbitration agreement included. Considering Elliott's testimony that online applications are required for multiple reasons, the time stamp of Villarin's electronically signed and submitted application (Elliott Decl. ¶ 11), and Villarin's lack of specific details supporting applying in person (*see generally* Doc. No. 42), the Court finds that Defendants provide sufficient evidence to demonstrate that Villarin signed the arbitration agreement.

Having found that Villarin signed the arbitration agreement, the Court turns to Villarin's assertion that Defendants fail to demonstrate that she had notice and meaningfully engaged with the arbitration agreement. (Doc. No. 42 at 9–10.) Specifically, Villarin asserts "Defendant provides no evidence demonstrating how the alleged arbitration agreement was presented to Plaintiff at the time of her hiring in 2017—no screenshots of the interface, no system records reflecting Plaintiff's interaction with the agreement, and no evidence regarding the visibility, placement, or conspicuousness of the arbitration terms within the application process . . . [nor] any evidence that Plaintiff was required to meaningfully review the agreement[.] " (*Id.* at 10.) However, Defendants proffer evidence that Villarin received the arbitration agreement and was required to scroll its contents to proceed with her hiring. (*See* Elliott Decl. ¶ 9.) *Cf. Metter v. Uber Techs., Inc.*, No. 16-CV-06652-RS, 2017 WL 1374579, at *3–4 (N.D. Cal. Apr. 17, 2017) (finding no notice where the plaintiff declared the terms of service alert was blocked by the application's keypad); *Duarte v. Mission Fed. Credit Union*, No. 319CV01441AJBKSC, 2020 WL 4732058, at *3 (S.D. Cal. Aug. 14, 2020) (finding mutual assent where the plaintiff declared "she never signed a document containing the arbitration provision" and "her visual impairment physically kept her from seeing or understanding the terms on the notices"). Accordingly, Defendants sufficiently demonstrate that Villarin had notice of and electronically signed the arbitration agreement. *See, e.g.*, *Zamudio*, 733 F. Supp. 3d at 939–40.

**B. Whether the Agreement Is Enforceable**

Villarin further argues the arbitration agreement is unenforceable because it is permeated by procedural and substantive unconscionability. (Doc. No. 42 at 12–20.)

Defendants respond that the arbitration agreement is procedurally and substantively fair, but if any portion is found to be unconscionable, the Court may sever the unconscionable portion and enforce the remainder of the arbitration provision. (*See generally* Doc. Nos. 33-1 at 15–18; 44 at 11–13.)

"Under the Federal Arbitration Act, generally applicable contract defenses, including unconscionability, may invalidate an arbitration agreement." *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024). "Under California law, a contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *Ronderos*, 114 F.4th at 1089. "To establish this defense, the party opposing arbitration must demonstrate procedural and substantive unconscionability, but both need not be present in the same degree." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021) (citation omitted). Rather a "sliding scale is invoked," such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).

**1. Procedural Unconscionability**

"The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019). "'Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice,' while 'surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them.'" *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) (quoting *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)).

Villarin argues the arbitration agreement is procedurally unconscionable due to both oppression and surprise. (Doc. No. 42 at 13–16.) With regard to oppression, "Plaintiff allegedly had to agree to arbitration to apply for the job, with no ability to negotiate any

term and no meaningful choice other than foregoing the employment opportunity altogether." (*Id.* at 13–14.) With regard to surprise, Villarin states the "overall structure is confusing," because the arbitration agreement, which is labeled "Pre-Dispute Resolution Agreement," is preceded by the employment application and followed by a "Pre-Employment Agreement." (*Id.* at 14–15.) Because the electronic signature line is at the end of the entire document, instead of separately acknowledging arbitration, the structure "blurs whether the signature is intended to verify the truth of the application, acknowledge at-will employment, assent to background checks, agree to arbitration, or all of the above." (*Id.*) Additionally, Villarin argues that "Defendant offers no contemporaneous screenshots of the 2017 interface, no archived screen flow, no evidence showing how large or conspicuous the text appeared on screen, no proof that the arbitration language was not truncated, collapsed, or minimized within the platform, . . . no system records reflecting what Plaintiff actually viewed," and "no evidence that any download link was actually presented to Plaintiff or used by her[.]" (*Id.* at 15 (relying on *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, 66–67 (2013)).)

Defendants tacitly acknowledge the agreement is a contract of adhesion, (Doc. No. 33-1 at 15–16); however, Defendants argue that there is no surprise because "the online application process during the relevant time period required that an applicant scroll through the Arbitration Agreement, type their name into a signature box, and click the radio button marked "Accept." (Doc. No. 44 at 12.) Notably, Defendants fail to substantively respond to any of Villarin's arguments regarding oppression. (*See generally id.*)

The Court agrees with Villarin that the arbitration agreement is a contract of adhesion. *See Ronderos*, 114 F.4th at 1089 ("A contract of adhesion is a standardized contract imposed and drafted by the party of superior bargaining strength and gives the subscribing party only the opportunity to adhere to the contract or reject it.") (internal quotation marks and citation omitted). Thus, the agreement exhibits some degree of procedural unconscionability due to the presence of oppression. *See Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 915 (2015) ("[T]he adhesive nature of the contract is

sufficient to establish some degree of procedural unconscionability."); *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (2002) ("When the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present."). However, requiring Villarin "to sign the arbitration agreement as a condition of [her] employment provides for a 'fairly low level of procedural unconscionability.'" *Gonzalez v. Peak California Rest. Grp., LLC*, 831 F. Supp. 3d 871, 881 (N.D. Cal. 2026) (quoting *Alvarez v. Altamed Health Servs. Corp.*, 60 Cal. App. 5th 572, 591 (2021)).

After stating the general legal standard for procedural unconscionability, Villarin only proffers one case for support of her arguments; however, it is unclear for what proposition *Avery* would be applicable considering the facts are wholly inapposite and the court expressly stated it "d[id] not address the merits of the parties' contentions concerning the unconscionability[.]" *See Avery*, 218 Cal. App. 4th at 71. Moreover, Villarin does not provide any legal support for requiring arbitration to be presented in "a clean, distinct, separately executed agreement" in order to be procedurally conscionable. (*See* Doc. No. 42 at 13–16.)

Based on the parties' representations and the Court's independent review of the arbitration agreement, there is no surprise with regard to arbitration. Although the arbitration agreement follows the employment application, it is clearly labeled and it consists of eight paragraphs, five of which are only one to two sentences that span one to three lines. (*See generally* Doc. No. 33-2.) The arbitration agreement is followed by the six-paragraph long "Pre-Employment Agreement." (*Id.*) As Villarin concedes (Doc. No. 42 at 14), the separate sections are labeled with short headings (*see generally* Doc. No. 33-2). Considering both the arbitration agreement alone and the agreement in context with the rest of the application, this is not a prolix printed form drafted to ensure agreement without understanding or awareness. *Cf. OTO, L.L.C.*, 8 Cal. 5th at 128.

Contrary to Villarin's assertion that "the layout obscures rather than clarifies," the Court notes that right above the electronic signature line is offset and in all capital letters

the following two sentences:

> G2 AND ITS EMPLOYEES ARE SUBJECT TO A MANDATORY BINDING ARBITRATION PROGRAM TO THE EXTENT ALLOWED BY THE LAW. EMPLOYEES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT G2 IS AN "AT WILL" EMPLOYER AND THAT EMPLOYEES ARE EMPLOYED ON AN "AT WILL" BASIS.

(Doc. No. 33-2 at 8.) Even if the arbitration agreement were not as brief, clearly labeled, and comprehensible, as it is, this final paragraph put Villarin on notice that she was signing an arbitration agreement. *See, e.g.*, *Dike v. Zara USA, Inc.*, 672 F. Supp. 3d 822, 832 (N.D. Cal. 2023) ("Even if the rest of the Agreement contained prolix language or legalese, this section would have been seen by Dike and is clear: Any disputes covered by the Agreement will not go to a judge or jury, but instead to arbitration."); *Bernsley v. Barclays Bank Delaware*, 657 F. Supp. 3d 1327, 1339 (C.D. Cal. 2023) ("Although the arbitration agreement was contained in a prolix, printed form, the arbitration clause was denoted by a bold heading designating the arbitration clause and the end of the arbitration clause contained a fully capitalized, bolded disclaimer further calling attention to the arbitration clause.").

Having found some procedural unconscionability due to its adhesive nature, the Court turns next to whether there is sufficient substantive unconscionability to render the arbitration agreement unenforceable. *See Prostek v. Lincare Inc.*, 662 F. Supp. 3d 1100, 1115 (E.D. Cal. 2023) ("[I]f an employee must sign a non-negotiable employment agreement as a condition of employment but there is no other indication of oppression or surprise, then the agreement will be enforced unless the degree of substantive unconscionability is high.") (quoting *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017)); *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 494 (2024) ("[A]lthough adhesion alone generally indicates only a low degree of procedural unconscionability, the potential for overreaching in the employment context warrants close scrutiny of the contract's terms.").

///

**2. Substantive Unconscionability**

"Substantive unconscionability examines the fairness of a contract's terms." *Lim*, 8 F.4th at 1001 (quoting *OTO*, 8 Cal. 5th at 129). "[T]he standard for substantive unconscionability—the requisite degree of unfairness beyond merely a bad bargain—must be as rigorous and demanding for arbitration clauses as for any contract clause." *Valencia Holding Co.*, 61 Cal. 4th at 912. "The substantive element looks to the actual terms of the parties' agreement to ensure that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as overly harsh, unduly oppressive, so one-sided as to shock the conscience or unfairly one-sided." *Magno v. The Coll. Network, Inc.*, 1 Cal. App. 5th 277, 287–88 (2016) (internal quotation marks omitted).

Villarin challenges the arbitration agreement as substantively unconscionable on three grounds: (1) "[i]t imposes unlawful arbitral cost-sharing on the employee," (2) it "forces [the] employee to bear its own attorney's fees and discovery costs notwithstanding statutory remedies that favor workers," and (3) it "singles out the employee for fee liability if she contests arbitration and loses." (Doc. No. 42 at 16–19). The Court will address each of Plaintiff's concerns in turn.

**i. Costs of Arbitrator**

First, Villarin argues that "the agreement provides that if the governing jurisdiction prohibits the company from shifting those costs, then the employee and employer will share them," which Villarin asserts is "backwards and unlawful under California law." (Doc. No. 42 at 16.) Defendants respond that "[b]ecause Plaintiff does not live in such a jurisdiction, the Arbitration Agreement provides that the Company will pay the fees and costs of the Arbitrator." (Doc. No. 44 at 13.) Villarin raises this as the "[m]ost glaring[]" demonstration of procedural unconscionability (*id.* at 16), but it is legally her weakest argument based on the language of the arbitration agreement. The challenged provision reads that "[t]he Company will pay the fees and costs of the Arbitrator, unless prohibited by the jurisdiction in which you live or were last employed by the Company, in which case the Company and you will share the costs." (Doc. No. 33-2 at 8.) This provision is neither confusing nor

contrary to California law. The clause clearly places the cost of arbitration on Defendants as the default, except where that would be contrary to the law of the governing jurisdiction. As California does not prohibit an employer bearing the cost of arbitration, the default—Defendants bearing the cost—remains.

**ii. Attorney's Fees and Costs**

Second, Villarin argues that the provision requiring each party to bear its own costs and attorney fees "is also unlawful because it strips employees of substantive statutory rights and imposes greater financial burdens than litigation in court." (Doc. No. 42 at 17.) In response, Defendants assert that the attorney fees and costs provision, when read in conjunction with the subsequent provision regarding remedies, is not unconscionable. (Doc. No. 44 at 13.) The relevant provisions of the arbitration agreement provide: "You and the Company shall each pay for your own costs and attorney fees incurred, including costs of discovery if any. . . . The arbitrator will follow the applicable state law of the state in which the claim arose, or federal law, or both, as applicable to the claim asserted, including all possible remedies." (Doc. No. 33-2 at 8.)

"Several courts have held an arbitration provision is substantively unconscionable when it purports to deprive an employee of his or her statutory right to recover attorney fees if the employee prevails on a Labor Code claim for unpaid wages and other benefits[.]" *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 251 (2016) (collecting cases). Moreover, numerous courts have held that a provision authorizing or requiring the arbitrator to follow the applicable state law including in awarding remedies does not negate an agreement's clear, plain language requiring each party to bear their own fees and costs. *See, e.g.*, *id.* at 251–52; *Beco v. Fast Auto Loans, Inc.*, 86 Cal. App. 5th 292, 311 (2022); *Durruthy v. Charter Commc'ns, LLC*, No. 20–CV–1374–W–MSB, 2020 WL 6871048, at *10 (S.D. Cal. Nov. 23, 2020); *Zuckerman v. Charter Commc'ns, LLC*, No. 24-CV-128-WQH-BJC, 2024 WL 4871739, at *13 (S.D. Cal. Nov. 22, 2024).

Here, Plaintiff points to four specific sections of the California Labor Code that authorize recovery of reasonable attorney's fees and costs. *See* Cal. Lab. Code §§ 1194(a)

(authorizing recovery of "reasonable attorney's fees, and costs of suit," for prevailing on minimum wage and overtime claims), 226(e)(1) (authorizing "an award of costs and reasonable attorney's fees" for prevailing on a failure to furnish accurate itemized wage statement claim), 2802 (requiring an employer to indemnify an employee for "all necessary expenditures," which includes "attorney's fees incurred by the employee enforcing the rights granted by this section"), 2699(k)(1) (authorizing "an award of reasonable attorney's fees and costs" to a prevailing employee who brings suit under PAGA). Because the arbitration agreement unambiguously eliminates Villarin's right to recover reasonable attorney's fees and costs, the provision is substantively unconscionable under California law. *See, e.g.*, *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, 485 F. Supp. 3d 1168, 1188 (N.D. Cal. 2020), *aff'd sub nom. Yeomans v. World Fin. Grp. Ins. Agency, LLC.*, No. 20-16937, 2021 WL 5356537 (9th Cir. Nov. 17, 2021) ("This provision undermines the balance of the risk of fee shifting prescribed by statute and can have a substantial chilling effect on plaintiffs seeking to vindicate their rights."); *Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 431 (N.D. Cal. 2018).

**iii. Costs of Litigating Enforcement of Arbitration Agreement**

Third, Villarin argues that "the employee alone is expressly penalized for contesting arbitrability" which is "paradigmatically one-sided," "chills employees from testing whether an arbitration agreement is valid," and is "substantively unconscionable." (Doc. No. 42 at 18.) As noted by Villarin (*id.*), in a preemptive attempt "[t]o invalidate that argument, G2 represent[ed in the instant motion] that it will not seek to enforce that provision against Plaintiff and, in any event, the provision can and should be severed" (Doc. No. 33-1 at 18 n.3). The challenged provision reads: "[i]f you refuse to arbitrate a matter covered by this agreement, and if a court orders the matter to binding arbitration, you agree to pay the Company's legal costs, including attorney's fees, incurred in enforcing this agreement." (Doc. No. 33-2 at 8.)

Because this provision targets only the employee, does not take into account a situation in which some arguments made by the resisting party are successful, creates a

potential obligation to pay costs only in an arbitral setting, and could chill an employee's right to challenge the enforceability of an arbitration agreement, the provision is unconscionable under California law. *See Ramirez*, 16 Cal. 5th at 508–09; *see, e.g.*, *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 800 (2012) ("The provision is obviously not mutual and, on that basis alone, is unconscionable and unenforceable."); *Mortg. Invs. Corp. v. Icayan*, No. 05-CV-1185-IEG-JFS, 2005 WL 8173194, at *6 (S.D. Cal. July 27, 2005) ("Because bilaterality is a requirement in arbitration agreements, the above provision is unconscionable, and therefore, unenforceable under California law."); *Zuckerman*, 2024 WL 4871739, at *17; *Durruthy*, 2020 WL 6871048, at *12.

**3. Severability**

Having found two provisions of the arbitration agreement to be unconscionable, the Court turns to whether the offending provisions are severable. Defendants request the Court sever any provisions found to be unconscionable because there are no "significantly problematic provisions such that severance would be an insufficient remedy." (Doc. Nos. 33-1 at 18 n.3 (relying on *Ramirez*, 16 Cal. 5th at 513); 44-1 at 2.) Villarin argues that the arbitration agreement is permeated with unconscionability. (Doc. No. 42 at 19–20.) Specifically, Villarin asserts that "[t]he agreement contains multiple interrelated cost-and-remedy provisions that all operate in the same direction: deterring employees from asserting workplace claims and saddling them with expenses they would not bear in court." (*Id.* at 20.) "Removing them would not merely sever a collateral provision; it would require the Court to rewrite the parties' allocation of fees, costs, and remedies in order to create an enforceable contract that Defendant itself did not draft." (*Id.*)

"If a contractual clause is found unconscionable, the court may, in its discretion, choose to do one of the following: (1) refuse to enforce the contract; (2) sever any unconscionable clause; or (3) limit the application of any clause to avoid unconscionable results." *Ramirez*, 16 Cal. 5th at 513; *see also* Cal. Civ. Code § 1670.5(a). "Though the 'statute appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement,' it 'also

appears to contemplate the latter course only when an agreement is 'permeated' by unconscionability.'" *Ramirez*, 16 Cal. 5th at 513 (quoting *Armendariz*, 24 Cal. 4th at 122); *see also Ronderos*, 114 F.4th at 1099 ("California law provides, as a general rule, that unlawful contractual provisions should be severed and the remainder of the contract enforced.").

Here, the offending provisions solely involve the attorney's fees and costs for the agreement's enforcement and for pursuing arbitration, severance of which would "not disturb the aim of the parties' agreement." *See Icayan*, 2005 WL 8173194, at *7. Considering that the offending provisions are not "the central purpose of the contract" and "can be extirpated from the contract by means of severance," severance is appropriate. *See Armendariz*, 24 Cal. 4th at 124; *see also Serpa v. California Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 710 (2013), *as modified* (Apr. 26, 2013) (finding the unconscionable attorney fees provision severable because "the arbitration agreement [wa]s not otherwise permeated by unconscionability" and "the offending provision [was] plainly collateral to the main purpose of the contract").

**C. Whether Villarin's Claims Fall Within the Agreement's Scope**

Having found that a valid and enforceable arbitration agreement exists, the Court turns to whether the claims fall within the scope of the agreement. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) ("Arbitration is strictly a matter of consent and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration.") (cleaned up).

Defendants argue that "the entirety of Plaintiff's claims stem from her employment with G2," so all claims "fall squarely within the scope of her Arbitration Agreement." (Doc. No. 33-1 at 14.) Further, Defendants assert that Villarin "must arbitrate her claims on an individual basis because neither she nor G2 consented to arbitration on a class or representative basis." (*Id.* at 18.) Thus, Defendants argue that both the class claims and the representative PAGA claim brought on behalf of others must be stayed pending arbitration. (*Id.* at 19–20.) Villarin does not address any of these issues in her opposition. (*See generally*

Doc. No. 42.)

The scope of the arbitration agreement covers any "dispute [that] arises between you and the Company, (or its officers, directors, employees, representatives, successors, assigns or agents in their capacity as such) regarding your employment[.]" (Doc. No. 33-2 at 8.) "The agreement to arbitrate disputes does not prevent employees from seeking relief with a state or federal administrative agency, such as the Equal Employment Opportunity Commission." (*Id.*)

Because all eleven of Villarin's causes of action assert wage-and-hour violations, the Court finds the claims arise from Villarin's employment with G2. However, the representative PAGA claim is excluded from arbitration by California law. *See Diaz v. Macys W. Stores, Inc.*, 101 F.4th 697, 705 (9th Cir. 2024) ("The California Supreme Court has held that the ability to bring non-individual PAGA actions cannot be waived by agreement, because such a waiver would frustrate the enforcement objectives of PAGA."). Because the parties do not expressly consent to arbitrate class claims, the putative class claims cannot be compelled to arbitration. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010) ("[C]lass-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator."). Accordingly, the representative PAGA claim and the class claims must be stayed pending arbitration of the rest of Villarin's individual claims. *See* 9 U.S.C. § 3.

## IV. CONCLUSION

For the reasons discussed above, the Court hereby **ORDERS**:

1. The following provisions severed from the arbitration agreement:

- "You and the Company shall each pay for your own costs and attorney fees incurred, including costs of discovery if any."
- "If you refuse to arbitrate a matter covered by this agreement, and if a court orders the matter to binding arbitration, you agree to pay the Company's legal costs, including attorney's fees, incurred in enforcing this agreement."

2. Defendants' motion to compel arbitration is **GRANTED**. Plaintiff Elvissa Villarin must arbitrate her individual claims pursuant to the terms of the arbitration agreement.

3. The instant action is **STAYED** as to Plaintiff Elvissa Villarin pending arbitration of her individual claims. Because the action is now stayed as to every named plaintiff, the Clerk of Court is directed to stay the entire action.

4. Plaintiff Elvissa Villarin and Defendants must file a joint status report addressing the status of arbitration is due **no later than November 2, 2026**, with specific details including the date when the parties submitted the matter to arbitration. This joint status report may be combined with that submitted for Negusse's and Amin's claims.

5. **Every sixty days thereafter**, the parties must file joint status reports informing the Court about the status of arbitration, including specific details regarding subsequent dates, any changes to dates, and actions the parties are taking to facilitate the process.

**IT IS SO ORDERED.**

Dated: August 24, 2026

Hon. Anthony J. Battaglia
United States District Judge